No. 23-1590 & No. 23-1591

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

## THE PUBLIC INTEREST LEGAL FOUNDATION,

Appellee/Cross-Appellant,

v.

## AL SCHMIDT, in his official capacity as SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, and JONATHAN M. MARKS, in his official capacity as DEPUTY SECRETARY FOR ELECTIONS AND COMMISSIONS,

Appellants/Cross-Appellees.

_____

## Appeal From Final Order Entered by U.S. District Court for the Middle District of Pennsylvania in Case No. 1:19-CV-622

_____

_____

## FIRST-STEP BRIEF OF APPELLANTS/CROSS-APPELLEES AND APPENDIX VOLUME I (APPX001-071)

_____

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Attorneys for Appellants/Cross-Appellees

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS ...........................3

STATEMENT OF THE CASE ........................................................................4

    I.     Relevant Facts ........................................................................4

        A.     Preliminary Analysis of the Software Error ...........................4

        B.     Query of the SURE System .....................................................5

        C.     Request Under the NVRA and Response .................................6

        D.     Privileged Advice in Anticipation of Litigation .....................7

    II.    Procedural History .................................................................8

        A.     PILF'S Complaint ...................................................................8

        B.     Ruling on Motion To Dismiss ................................................8

        C.     Department's Initial Production of Information to PILF .......10

        D.     Ruling on Summary Judgment Motions .................................10

        E.     Department's Supplemental Production of Information to
             PILF .....................................................................................13

        F.     Clarification and Reconsideration .........................................13

    III.   Rulings Presented for Review ...............................................14

SUMMARY OF ARGUMENT ......................................................................16

ARGUMENT ...................................................................................19

I.  PILF Suffered No Harm and Therefore Lacks Standing..................19

    A.  Scope and Standard of Review...............................................19

    B.  PILF Did Not Suffer Informational or Other Injury ..............19

II. The NVRA Does Not Require Disclosure of Identities of
    Addressees on Letters Advising of a Software Error in the Motor
    Voter Process. ....................................................................................25

    A.  Scope and Standard of Review...............................................25

    B.  The NVRA's text, structure and purpose make plain that the
        public disclosure provision applies to mandated list
        maintenance..........................................................................26

    C.  The district court erred in interpreting the public disclosure
        provision as permitting access to records relating to the
        software error.......................................................................32

    D.  The public disclosure provision does not apply to the
        records sought by PILF .........................................................36

III. The District Court Erred in Requiring Identification of Addressees on
     Letters Who Either Canceled Their Registrations or Did Not
     Respond. ...........................................................................................37

    A.  Scope and Standard of Review...............................................37

    B.  PILF is not entitled to the information it seeks......................37

        1.  The NVRA bars disclosure of identities of persons
            who declined to register to vote ...................................38

        2.  The DPPA prohibits disclosure of personal
            information obtained from driver license records........38

3.     The names and addresses of letter recipients are uniquely sensitive and not subject to disclosure ..........40

CONCLUSION ..................................................................................................43

# TABLE OF AUTHORITIES

## CASES

*Abramski v. United States,* 134 S. Ct. 2259 (2014)..............................26

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998)...................................31

*Am. Civ. Rts. Union v. Philadelphia City Comm'rs*, 872 F.3d 175
(3d Cir. 2017) ...................................................................29

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)...................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................25

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014)....................22, 23

*Campaign Legal Ctr. v. Scott*, 49 F.4th 931 (5th Cir. 2022)...............17, 23, 24, 25

*Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210 (3d Cir. 2015) ...............25, 37

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989)......................................33

*Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d
71 (3d Cir. 1998) ...........................................................23

*In re Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560 (Pa. 2018) .....43

*Greater Birmingham Ministries v. Merrill*, No. 2:22cv205, 2022 WL 5027180
(M.D. Ala. Oct. 4, 2022), *appeal docketed*, No. 22-13708 (11th Cir.
Nov. 2, 2022)...................................................................36

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999)......................................26

*Judicial Watch v. Lamone*, No. 17-2006, 2018 WL 2564720 (D. Md.
June 4, 2018) .............................................................34, 35

*Kelly v. RealPage, Inc.*, 47 F.4th 202 (3d Cir. 2022)......................................20, 23

*League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018)........................................41

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)...................................................20

*Maracich v. Spears*, 570 U.S. 48 (2013)..............................................................38

*National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479 (1998) ...............................................................................................................31

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015) .....................19

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)..............35, 40

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ......34, 40

*Pub. Int. Legal Found., v. Bennett*, No. 18-0981, 2019 WL 1116193 (S.D. Tex. Feb. 6, 2019)....................................................................35

*Pub. Int. Legal Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2019 WL 1112228 (S.D. Tex. Mar. 11, 2019) ...............................................................35

*Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449 (M.D. Pa. 2019)................................................................................................3, 8, 23

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections,* 996 F.3d 257 (4th Cir. 2021) ......................................................................11, 40, 41, 42

*Raines v. Byrd*, 521 U.S. 811 (1997)...................................................................19

*Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143 (Pa. 2017) ..............43

*Reno v. Condon*, 528 U.S. 141 (2000) .................................................................38

*Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208 (1974)............22

*Senne v. Village of Palatine, Illinois*, 695 F.3d 597 (7th Cir. 2012)....................39

*Siegler v. Best Buy Co. of Minn., Inc.* 519 F. App'x 604 (11th Cir. 2013)...........39

v

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ......................................................22

*Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) ..................19, 22, 23

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).......................................................20

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)...... 16, 17, 19, 20, 21, 23, 25

*Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020)..............21

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)...............35, 40

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)...................................................................................................31

*Welker v. Clarke*, 239 F.3d 596 (3d Cir. 2001)....................................................27

*Wesberry v. Sanders*, 376 U.S. 1 (1964) .............................................................16

### STATUTES

U.S. Const. art. III, § 2 ........................................................................................1

1 U.S.C. § 1 ..........................................................................................................34

18 U.S.C. § 2721 ....................................................................................................9

18 U.S.C. § 2721(a)..............................................................................................38

18 U.S.C. § 2721(b)..............................................................................................39

18 U.S.C. § 2722(a)..............................................................................................39

18 U.S.C. § 2725(3)...............................................................................................38

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

52 U.S.C. § 10307 .................................................................................................41

52 U.S.C. § 20501 ......................................................27, 31

52 U.S.C. § 20501(a)(3) ...............................................41

52 U.S.C. § 20501(b)(1) ...............................................41

52 U.S.C. § 20503(a) ....................................................27

52 U.S.C. § 20504(c)(2) ................................................27

52 U.S.C. § 20504(c)(2)(C) ...........................................27

52 U.S.C. § 20505(a) ....................................................27

52 U.S.C. § 20507 .......................................................34

52 U.S.C. § 20507(a)(3) ...............................................28

52 U.S.C. § 20507(a)(4) .................................28, 30, 31, 32

52 U.S.C. § 20507(b) ...............................................28, 31

52 U.S.C. § 20507(b)(1) .............................................29, 30

52 U.S.C. § 20507(b)(2) ................................................30

52 U.S.C. § 20507(c) ...........................................28, 29, 30, 31

52 U.S.C. § 20507(c)(2)(A) ...........................................29

52 U.S.C. § 20507(d) ...........................................28, 29, 30, 31

52 U.S.C. § 20507(i) ..............................................1, 30, 31, 32

52 U.S.C. § 20507(i)(1)............................. 6, 16, 26, 33, 35, 38,

52 U.S.C. § 20507(i)(2)................................................26, 27

52 U.S.C. § 20508(b)..................................................27

52 U.S.C. § 20510(b)................................................................................1

52 U.S.C. § 20701 ..................................................................................35

52 U.S.C. § 20703 ..................................................................................35

52 U.S.C. § 20704 ..................................................................................35

Pa. Const. art. I § 1 .................................................................................43

25 Pa. C.S.A. § 1203(a)...........................................................................6

25 Pa. C.S.A. § 1203(h)...........................................................................6

25 Pa. C.S.A. § 1203(i) ............................................................................6

25 Pa. C.S.A. § 1901 ...........................................................................6, 32

Fed. R. Civ. P. 12(b)(6) .........................................................................10

## **MISCELLANEOUS**

Antonin Scalia and Bryan Garner, *Reading Law: The Interpretation of
    Legal Texts* (2012) ...........................................................................33

## STATEMENT OF JURISDICTION

While this action involves a claim under 52 U.S.C. § 20507(i) and 52 U.S.C. § 20510(b) that would otherwise give the district court federal jurisdiction under 28 U.S.C. § 1331, Appellee Public Interest Legal Foundation (hereinafter "PILF") lacks standing to assert a claim and therefore there is no basis for the exercise of federal jurisdiction under U.S. Const. art. III, § 2.

Appellants Al Schmidt, Secretary of the Commonwealth of Pennsylvania, and Jonathan M. Marks, Deputy Secretary for Elections and Commissions, (referred to collectively hereinafter as "Department" or "Department of State"), filed a timely notice of appeal on March 29, 2023 from the district court's final order disposing of all claims issued on February 28, 2023.

But for PILF's lack of standing, this Court would have jurisdiction over this appeal under 28 U.S.C. § 1291.

**<u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>**

I.   **Whether PILF lacks standing under Article III to sue under the NVRA because it suffered no downstream consequence from not having the records sought and its claimed interest in the records is a general interest in reviewing compliance with election laws?**

This issue was raised in the Department's motion to dismiss PILF's

Complaint, Appx065, ECF 12, 14 (pp.14-16), 16 (p.15),[1] and was ruled upon in the

Memorandum and Order dated December 13, 2019, Appx020.

II.   **Whether the public disclosure provision in the NVRA is limited to removal programs mandated by the statute and therefore does not require disclosure of information relating to a special investigation of a software error in the Motor Voter process?**

This issue was raised in the Department's motion to dismiss PILF's

Complaint, Appx065, ECF 12, 14 (pp.6-11), 16 (pp.1-9), and was ruled upon in the

Memorandum and Order dated December 13, 2019, Appx007-014.

III.   **Whether, if the records are within the scope of the public access provision, they are protected from disclosure by the NVRA, the Driver's Privacy Protection Act, and registrants' privacy interests?**

This issue was raised in the Department's motion for summary judgment,

Appx067-068, ECF 62, 64 (pp.11-15), 74 (pp.6-9), and motions for clarification and

reconsideration, Appx069-070, ECF 88, 89 (pp.2-5), 91, 92 (pp.8-11), 122 (pp.2-7),

125 (pp.8-13), and was ruled upon in the Memorandum and Order dated March 31,

2022, Appx032-045, and the Order dated February 28, 2023, Appx053-058.

---

[1] References to "Appx" are to the Joint Appendix filed herewith.

# STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.

PILF brought an identical action against the Department in the Middle District at No. 18-CV-463 on February 26, 2018. That action was dismissed on February 26, 2019 due to PILF's failure to provide the pre-litigation notice required by the NVRA. *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457-58 (M.D. Pa. 2019).

The Department is not aware of any other case or proceeding that is related to this action.

## STATEMENT OF THE CASE

## I.    Relevant Facts

### A.    Preliminary Analysis of the Software Error

In the middle of 2017, the Department of State became aware of a software error at the Pennsylvania Department of Transportation ("PennDOT") that enabled non-citizens to inadvertently register to vote when applying for a driver's license. The problem was fixed before the end of 2017. Appx092 (Marks Aff. ¶¶ 7-8).

While the error was being remedied, the Department of State collaborated with PennDOT officials to understand how many individuals may have been led to register to vote because of the software error. Appx093 (Marks Aff. ¶ 12). The officials compared the PennDOT driver license database with the voter registration database—the Statewide Uniform Registry of Electors ("SURE")—in an effort to identify how many registered electors had an "INS indicator" in their driver license records. Appx093-094 (Marks Aff. ¶¶ 12-13). INS indicators denote naturalization, immigration and visitor status as of a certain point in time. The presence of an INS indicator in a driver license record is not conclusive evidence that a person is a non-citizen and therefore ineligible to vote. An INS indicator in a driver record may signal that a driver was at some point in time a non-citizen, but does not mean that the driver is currently a non-citizen or was a non-citizen at the time he or she registered to vote. Driver records of naturalized citizens who are eligible to vote

may include an INS indicator.  *Id.*  PILF concedes that an INS indicator in a driver record does not mean that the driver is not a U.S. citizen.  Appx083 (J. Christian Adams Dep Tr. at 112 ("[Y]ou could have a naturalized citizen with an INS indicator.")).

Because INS indicators are not proof of non-citizenship, the preliminary matching of the SURE and PennDOT databases proved unhelpful.  The comparison identified a large group of persons whose driver records include INS indicators but yielded no reliable information as to how many non-citizens inadvertently registered to vote.  Nor did the analysis identify any non-citizens who were then on the voting rolls.  No voter registrations were canceled based on the preliminary analysis. Appx093-094 (Marks Aff. ¶¶ 13-14).

## B.     Query of the SURE System

In the fall of 2017, the Department of State also ran a query in the SURE system to identify registrations that were canceled due to non-citizenship.  The analysis yielded 1,160 records where a registration was marked by county election officials as canceled due to non-citizenship.  Appx092-093 (Marks Aff. ¶¶ 9-10); Appx076-077 (Marks Hearing Testimony).

Again, this data was preliminary and required validation by county election officials because, in Pennsylvania, voter registration is delegated to counties and

only county officials are authorized to cancel a registration. 25 Pa. C.S.A. § 1203(a), (h), (i); 25 Pa. C.S.A. § 1901; *see also* Appx091 (Marks Aff. ¶ 6).

As with the database comparison referenced above, no voter registrations were canceled as a result of the query of the SURE database. Appx092-093 (Marks Aff. ¶¶ 9-10).

### C.    Request Under the NVRA and Response

On October 23, 2017, PILF sent a request to Deputy Secretary Jonathan M. Marks pursuant to the public disclosure provision in the NVRA, 52 U.S.C. § 20507(i)(1),[2] seeking: (1) documents received from any official information source regarding registrants identified as potentially not satisfying the citizenship requirements; (2) requests by registered voters, legal counsel, relatives and others to cancel voter registrations due to non-U.S. citizenship; (3) communications from jury selection officials relating to persons who claimed to be non-U.S. citizens to avoid

---

[2]  That section states in relevant part:

> Each state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1).

jury service; and (4) communications with prosecutors and law enforcement agencies regarding any of these subjects.  Appx073-075.

PILF followed up by letter on December 4, 2017, adding that it was seeking the "official 'review' of voter data compared against PennDOT's database . . . to identify voters with matching driver profiles containing noncitizen designations. . . ."  Appx064, ECF 1 (Compl. ¶ 82).

On December 20, 2017, Deputy Secretary Marks responded by letter denying PILF's request.  Appx079-080.  He explained the Department's view that the NVRA public disclosure provision authorized access only to records relating to removal programs mandated by the NVRA, *i.e.,* programs for removing the names of persons who died or changed residence.  He went on to say that, even if the NVRA were interpreted as applying to removal programs aimed at non-citizens, the Commonwealth had no such program and therefore no records to produce.  *Id.*

### D.  Privileged Advice in Anticipation of Litigation

In anticipation of litigation concerning the software error, the Department sought legal advice from both internal and outside counsel in late-2017.  Outside counsel engaged an expert to perform a privileged review of data derived from the PennDOT driver license database and the SURE system for the purpose of facilitating legal advice.  Appx094 (Marks Aff. ¶¶ 15-17).

Based on that privileged analysis and legal advice received from its counsel, on June 12, 2018, the Department sent letters to over 11,000 active and inactive registered electors advising them of the software error and voter qualifications in Pennsylvania and asking them to certify that they met the qualifications or to cancel their registrations. Appx094-095 (Marks Aff. ¶¶ 18, 20-21); Appx105-123 (Letters to Registrants). More than 1,900 recipients confirmed they were eligible to vote and 215 canceled their registrations using a generic form that gave no reason for the cancelation. Appx127. The remaining letters generated no response or were returned as undeliverable. *Id.*

## II. **Procedural History**

### A. **PILF's Complaint**

PILF commenced this action in the district court on April 10, 2019 alleging that the Department violated the NVRA by failing to produce the records it requested. Appx064, ECF 1.[3]

### B. **Ruling on Motion To Dismiss**

The Department filed a motion to dismiss on May 8, 2019, contending that the public disclosure provision applies only to programs required by the NVRA and

---

[3] This is the second action PILF brought under the NVRA. PILF filed an identical action at No. 18-CV-463 on February 26, 2018. That action was dismissed on February 26, 2019 due to PILF's failure to provide the pre-litigation notice required by the NVRA. 370 F. Supp. 3d at 456-58.

therefore only to programs for removing the names of registrants who died or changed residence. The Department also argued, *inter alia*, that the records sought by PILF—the results of comparison of the PennDOT database with the SURE database—are protected from disclosure by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, which prohibits states from disclosing personal information from a driver license record. Appx065, ECF 12, 14, 16.

The Honorable Christopher C. Connor granted the Department's motion, in part, and denied the motion, in part, on December 13, 2019. Appx001-023. The district court ruled, "[a]s a matter of first impression in our circuit," that the NVRA public access provision is not limited to records relating to registrant deaths or changes in residence, but also applies to systems designed to identify registrants who are ineligible to vote due to non-citizenship. Appx009-014. Further, the district court ruled that "glitch-related records and derivative lists created during the Commonwealth's investigation are protected by the DPPA to the extent they include personal information obtained by the DMV in connection with a motor vehicle record." Appx017. The district court wrote: "[A] compilation of driver's license numbers—with or without INS indicators—is protected from redisclosure under the DPPA unless subject to an exception," and ruled that no exception applies here. Appx018-019.

## C. Department's Initial Production of Information to PILF

As a result of the 12(b)(6) ruling, the Department produced to PILF more than 2,200 pages responsive to specific categories in its NVRA request. Appx143. The production included: a list of the 1,160 records in the SURE system indicating cancelation of voter registration due to non-citizenship (with personal identifiers redacted); the form letter sent to registrants in June 2018 advising them of the software error and asking them to confirm their eligibility or cancel their registrations (again, without personal identifying information); communications with county officials concerning the form letter; and a summary of the responses received. The Department also produced to PILF copies of records received from county election offices relating to cancelation requests based on non-citizenship, including cancelation requests received from registrants and related correspondence. Further, the Department confirmed that it had no communications with jury officials concerning non-citizens on the voting rolls during the two-year retention period in the NVRA and no communications with law enforcement agencies concerning non-citizens on the voting rolls. *Id.*

## D. Ruling on Summary Judgment Motions

PILF continued to press for production of the Department's privileged work product and expert analysis of the PennDOT and SURE databases and the identities

of persons who received the June 12, 2018 letter warning of the PennDOT software error.

Following discovery, both parties filed motions for summary judgment which were decided by Memorandum and Order dated March 31, 2022. Appx024-051.

The district court ruled that PILF is entitled to records related to registrants identified as potentially not satisfying the citizenship requirement but is not entitled to records that are protected by the DPPA, that implicate registrants' privacy interests, or that constitute attorney work product. Appx032-045. With respect to the DPPA, the district court ruled that the Department may properly withhold "personal information obtained from DMV motor vehicle records and information derived from that personal information." Appx036. With respect to privacy, the district court ruled that private personal information may be redacted from records disclosed under the NVRA consistent with the reasoning and protocol in another case brought by PILF against election officials in North Carolina, *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021). The information that may be redacted includes: (1) Social Security numbers; (2) "identities and personal information of those subject to criminal investigations," and (3) "personal information of citizens initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated." Appx037.

The district court further ruled that records relating to comparison of the SURE and PennDOT databases are protected from disclosure by the attorney work product doctrine and, therefore, not required to be disclosed. Appx038-043. The district court concluded that the Department of State "developed the noncitizen matching analysis with the assistance of its expert as a means of responding to heightened scrutiny of the kind that would be imposed through the civil justice system," and "[h]ence, the work-product doctrine shields the records produced in conjunction with the noncitizen matching analysis from disclosure." Appx041-043.

The district court also concluded that PILF is entitled to the names of the 1,160 persons whose registrations were canceled where the reason was listed in the SURE system as non-citizen (*i.e.*, the results of the query of the SURE database) and the voting histories for each. Appx.043-045. In addition, the district court ruled that PILF is entitled to letters from jury selection officials that pre-date the two-year statutory retention period if retained by the Department. Appx045-046.

Finally, the district court denied PILF's request for a permanent injunction compelling the Department to comply with future disclosure requests under the NVRA. Appx047-048. The district court found that "the precise scope of NVRA's disclosure provision is largely untested in the courts of the Third Circuit," the disputes between the parties are "an unfortunate consequence of the dearth of applicable case law," and the Department acted in "good-faith." Appx048.

### E. Department's Supplemental Production of Information to PILF

Pursuant to the district court's ruling, the Department produced more than 2,100 additional documents in November 2022, including: (1) the names of the 93 persons who received the June 12, 2018 letter and whose voter registrations were canceled by a county where the reason for the cancelation is listed in SURE as non-citizen; (2) vote histories for those individuals; (3) the names of all 1,363 persons whose voter registrations were canceled through October 2022 where the reason for the cancelation by a county is listed in the SURE system as non-citizen (this includes the 93 persons above); (4) vote histories for those individuals; and (5) documents in the SURE system relating to these cancelations, including correspondence between county election officials and registrants requesting cancelation of their registrations. The Department cautioned PILF that the citizenship status of any particular individual would need to be independently verified with county officials who are charged with maintaining the voter rolls and who entered the data in the SURE system that was being produced. Appx070, ECF 123 (Defs.' Mot. To Strike Mot. for Order To Show Cause, Ex. A).

### F. Clarification and Reconsideration

The Department subsequently sought clarification as to whether the identities of all letter recipients were required to be disclosed and whether the district court's work product ruling protected against disclosure of the information compiled and

given to the Department's expert.[4]  Appx069-070, ECF 88, 89, 91, 93, 122, 125.  By Order dated February 28, 2023, the district court ruled that: (1) the Department is not obligated to disclose to PILF the compendium of records that outside counsel confidentially provided to the consulting expert engaged by counsel; and (2) the Department is required to produce the names and addresses of persons to whom the June 12, 2018 letter was addressed who either did not respond or canceled their voter registrations on a general cancelation form without a reason or whose letters were returned as undeliverable (*i.e.*, all letter addressees other than those persons who affirmed their eligibility to vote in response to the letters).  Appx053-058.

## III.  **Rulings Presented for Review**

The Department timely filed a notice of appeal on March 29, 2023.  Appx059-060.  The Department challenges the district court's decision that PILF has standing to bring this action by virtue of denial of its request for records under the NVRA, Appx020,  and that the public disclosure provision in the NVRA applies to records unrelated to list maintenance activities mandated by the statute, including the identities of persons who received letters advising them of the software error, Appx007-014.  The Department also challenges the district court's ruling requiring

---

[4]  The motion for clarification also sought confirmation that the entirety of the SURE database was not required to be produced under the NVRA.  In response, PILF confirmed that it is not seeking the entire SURE database.  Appx069, ECF 90.

the Department to disclose the names and addresses of persons who received letters notifying them of the software error.  Appx032-038, 056.

PILF filed a notice of cross-appeal on March 30, 2023.  Appx061-062.

## SUMMARY OF ARGUMENT

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

The right to vote is the most fundamental and cherished of rights in our democracy. Only eligible persons should be permitted to exercise this fundamental right. But no eligible voter should be targeted or exposed to harassment for exercising the right to vote. This appeal is intended to prevent just such harm.

Unless corrected, the decision below will result in public disclosure of the names of thousands of Pennsylvania registered voters whose eligibility to vote has not been disproven. There has never been a finding or determination that any of these registrants is a non-citizen and there is no conclusive way for Department officials to verify citizenship with information available to them. Nonetheless, PILF is attempting to use the public disclosure provision in the NVRA, 52 U.S.C. § 20507(i)(1), to compel disclosure of the identities of these persons who have never been confirmed to be non-citizens. Its claim is jurisdictionally defective and statutorily baseless.

As an initial matter, PILF lacks standing to sue under the NVRA and as a result there is no federal jurisdiction. The Supreme Court made clear in *TransUnion*

*LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), that "[a]n asserted information injury that causes no adverse effects cannot satisfy Article III." (Citation and internal quotation marks omitted.) Under *TransUnion*, denial of information pursuant to a statute does not give rise to federal jurisdiction unless the plaintiff can show that he suffered concrete harm as a result of failing to receive the information. *Id.* (citation omitted). PILF suffered no such harm, but the district court (without the benefit of *TransUnion*) overlooked the lack of harm and ruled that denial of PILF's NVRA request is itself sufficient to confer standing. This legal error requires reversal and dismissal of this action for lack of jurisdiction. The Fifth Circuit dismissed a similar claim for records under the NVRA brought by an uninjured civic organization like PILF in *Campaign Legal Ctr. v. Scott*, 49 F.4th 931 (5th Cir. 2022).

Beyond the jurisdictional defect, PILF's claim fails under the NVRA. The NVRA public disclosure provision applies only to specific programs and activities mandated by the statute and imposes no obligation on states to disclose records relating to the investigation of a software error—an exceptional circumstance not contemplated by Congress or addressed by the NVRA. Further, disclosure of the names and addresses of persons potentially affected by the error would be inconsistent with the NVRA to the extent the statute protects the identities of persons who declined to register to vote. Disclosure would also violate the DPPA which prohibits dissemination of information obtained from a driver's record and threatens

to expose eligible voters on the list to harassment and abuse. The district court erred in ruling that PILF has a right to access the names and addresses of persons who received notice of the software error and this decision should likewise be reversed.

The Department has already provided thousands of records to PILF, including information relating to persons who were removed from the voter rolls because they self-reported as non-citizens, as well as non-privileged information relating to actions taken to address the software error. PILF is not entitled to any additional information and lacks standing to bring a claim under the NVRA. The judgment below should be reversed, and the case remanded with direction to dismiss the action for lack of jurisdiction or, in the alternative, to enter judgment in favor of the Department.

# **ARGUMENT**

## I.  **PILF Suffered No Harm and Therefore Lacks Standing.**

### A.  **Scope and Standard of Review**

Threshold questions of law presented by an Article III standing challenge are subject to plenary de novo review.  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015).

### B.  **PILF Did Not Suffer Informational or Other Injury**

"No concrete harm, no standing."  *TransUnion*, 141 S. Ct. at 2200.  PILF has not suffered concrete or particularized harm as a result of its inability to access information relating to the software error and therefore lacks standing to sue under the NVRA.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)).  The lack of standing deprives this Court of subject matter jurisdiction and requires dismissal.

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"  *TransUnion*, 141 S. Ct. at 2203.  To satisfy the "case-or-controversy" requirement, a plaintiff must have "standing to sue."  *Raines*, 521 U.S. at 818 (citation omitted).  A plaintiff must show that he: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To be concrete, the injury must be "real and not abstract." *Spokeo*, 578 U.S. at 340 (internal quotation marks omitted). An alleged injury is "particularized" if it has "affect[ed] the plaintiff in a personal and individual way." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. "The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Id.* at 338 (internal quotation marks and citations omitted). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue . . . over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205 (emphasis in original).

A plaintiff like PILF claiming failure to receive information allegedly required by statute—so-called "informational injury"—must show that lack of access to the information led to "adverse effects" or other "downstream consequences" and that the information has a nexus to the interest the statute is intended to protect. *Kelly v. RealPage, Inc.*, 47 F.4th 202, 214 (3d Cir. 2022). "An

asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

PILF lacks standing because it suffered no adverse effect from inability to access information concerning the software error. PILF does not and cannot claim that it needs the information to participate in any electoral or other process. Nor does PILF claim standing on behalf of any Pennsylvania voter or resident affected by the error in the Motor Voter system. PILF is a law firm from Indianapolis, Indiana and self-described "public interest organization" that requests records under the NVRA for itself. Appx064, ECF 1 (Compl. ¶¶ 5, 132-33). Critically, PILF does not claim to have suffered any "downstream consequences" from failing to receive the information. Its sole motive in requesting the records is a general interest in "gather[ing] and disseminat[ing] information about compliance by state and local officials with federal election statutes. . .," *id.* ¶ 132, and "ensur[ing] that voter rolls . . . are free from ineligible residents. . .," *id.* ¶ 5. Such generalized interest in the conduct of government does not confer Article III standing. *See*, *e.g.*, *TransUnion*, 141 S. Ct. at 2206-07 (uninjured plaintiff "merely seeking to ensure a defendant's compliance with regulatory law" lacks standing) (internal quotation marks omitted); *Lujan*, 504 U.S. at 576-77 ("public interest in proper administration of the laws" is inadequate basis on which to grant standing); *Schlesinger v. Reservists Comm. To*

*Stop the War*, 418 U.S. 208, 227 (1974) ("generalized interest" in enforcing the law "is too abstract to constitute a 'case or controversy' appropriate for judicial resolution").

Nor is it sufficient for PILF to claim that denial of access conflicts with its "organizational mission" which is to "produce[] written reports" using information compiled through NVRA requests. Appx064, ECF 1 (Compl. ¶¶ 133-34). It is well settled that mere interest in an issue is not enough for standing. *See Simon*, 426 U.S. at 40 ("[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III.") (citations omitted); *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' . . ."). Further, an organization cannot manufacture standing to sue by choosing to devote resources to advocate its own agenda. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 288 (3d Cir. 2014) ("[A] nonprofit entity cannot create standing in a lawsuit in which it has no direct economic interest by having its representatives attend meetings regarding the issue . . . or by making expenditures to 'educate' the public on what it regards as the factual or legal basis for its agenda."). PILF's "mission" does not confer standing.

The district court misapprehended the demands of Article III in ruling that PILF suffered "informational injury" simply because it requested records under the NVRA and spent time and money trying to obtain the records. Appx020.[5] An organization cannot "manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit." *Blunt*, 767 F.3d at 288 (quoting *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 79 (3d Cir. 1998)). Moreover, as detailed above, interest in an issue and lack of access to information allegedly required by statute do not by themselves qualify as concrete injury for purposes of Article III. *TransUnion*, 141 S. Ct. at 2213-14; *Simon*, 426 U.S. at 40. Instead, to establish informational injury, PILF must show that it suffered concrete harm as a result of being denied access to information to which it claims to be entitled and the harm is related to the interest Congress sought to protect. *Kelly*, 47 F.4th 202 at 214.[6] PILF suffered no such harm.

The Fifth Circuit dismissed a similar NVRA claim for lack of standing in *Campaign Legal Ctr. v. Scott*, 49 F.4th 931 (5th Cir. 2022). That case involved a

---

[5] In ruling on the Department's challenge to standing at Appx020, the district court adopted and incorporated its analysis in its opinion in the first action filed by PILF, 370 F. Supp. 3d at 454-56.

[6] Unlike PILF, the plaintiffs in *Kelly* were directly affected by lack of access to the sources of information in their credit reports because, without the information, they were unable to correct the reports and repair their credit ratings. 47 F.4th at 214. PILF alleges no concrete harm directly related to the purpose of the NVRA.

request by several civic organizations for information relating to registrants identified by the Texas Secretary of State as potential non-citizens. The organizations brought suit under the NVRA, claiming that the Secretary violated the NVRA by withholding the information. *Id.* at 934. After a hearing, the district court ruled that the Secretary was required to produce information regarding the voters identified as potential non-citizens. *Id.* at 934-35. The Fifth Circuit reversed and held that the civic organizations lacked standing to bring their claim under the NVRA. *Id.* at 939.

In *Campaign Legal Ctr.*, as in this case, the organizations failed to identify any consequences from lack of access to the registrants' personal information. *Id.* at 937. To the extent the organizations claimed an interest in the "visibility" of the Secretary's process, the Court held this was an "alleged injur[y] to *the public* and *affected Texas voters* writ large" and therefore not a particularized harm to the plaintiff organizations. *Id.* at 936-37. The Court also rejected the organizations' argument that denial of the opportunity to identify ineligible registrants sufficed as harm, finding the loss of such an opportunity "a speculative rather than concrete grievance." *Id.* The Court added that the facts that the plaintiffs were not Texas voters and could not claim organizational standing on behalf of any voters whose data was mishandled "reinforced" the lack of concrete harm. *Id.* The Court concluded that, even if the plaintiffs "might at some future date seek to vindicate the

specific interests of third party voters whom they (and their counsel) do not represent," any such interest is "speculative and a far cry from concrete injury to [p]laintiffs themselves." *Id.* at 938-39. The organizations' inability to show concrete harm beyond the alleged statutory violation deprived them of standing and required dismissal of their NVRA claim. *Id.* at 939.

Like the organizations in *Campaign Legal Ctr.*, PILF does not represent any Pennsylvania voter and has not suffered any downstream consequence or adverse effect within the NVRA from lack of access to information concerning the software error. As a result, PILF lacks standing to bring a claim under the NVRA. Because Article III requires "a real controversy with real impact on real persons," *TransUnion*, 141 S. Ct. at 2203 (citation and internal quotation marks omitted), and there is no such controversy here, there is no federal jurisdiction and this action must be dismissed.

## II. The NVRA Does Not Require Disclosure of Identities of Addressees on Letters Advising of a Software Error in the Motor Voter Process.

### A. Scope and Standard of Review

The standard of review on appeal from grant or denial of a motion to dismiss is plenary. *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015). A complaint is properly dismissed for failure to state a claim where the plaintiff fails to plead factual content allowing the court to draw the reasonable inference that the defendant is liable on the claim alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.** **The NVRA's text, structure and purpose make plain that the public disclosure provision applies to mandated list maintenance.**

The NVRA is not an all-purpose right-to-know law permitting access to any state records relating to voters or elections. Instead, it confers a statutorily limited right to inspect specific records relating to programs and activities mandated by the statute. The records at issue here do not relate to any such program or activity and therefore are not subject to public inspection under the NVRA.

As in any case of statutory construction, the analysis begins with the language of the statute. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). The language is interpreted with reference to the statutory context and its structure, history and purpose. *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (citation and internal quotation marks omitted).

The public access provision appears as subsection (i) in Section 20507 of the NVRA which is titled "Requirements with respect to administration of voter registration." The disclosure provision, subsection (i)(1), directs that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. . . ." 52 U.S.C. § 20507(i)(1). Records relating to "a declination to register to vote or to the identity of a voter registration agency" are not required to be disclosed. *Id.* Subsection (i)(2) clarifies that the records required to be maintained "shall include

lists of the names and addresses of all persons" to whom change of address notices were sent and "information concerning whether or not each such person responded to the notice . . . ." 52 U.S.C. § 20507(i)(2).

The reference in subsection (i)(1) to programs and activities correlates with the NVRA's central objective which is to expand opportunities for voter registration and ensure that voters cannot be removed from the voter rolls without a proper reason. 52 U.S.C. § 20501; *Welker v. Clarke*, 239 F.3d 596, 599 (3d Cir. 2001) ("The NVRA . . . require[ed] the implementation of 'fail-safe' voting procedures to ensure voters would not be removed from registration rolls due to clerical errors or the voter's own failure to re-register at a new address.") (citations omitted). To achieve these goals, the NVRA mandates that states implement simplified procedures for voter registration by mail, at government offices and when applying for a driver's license. 52 U.S.C. § 20503(a). The NVRA further mandates that voter registration application forms shall identify voter eligibility requirements and contain an attestation that the applicant meets each requirement. 52 U.S.C. §§ 20504(c)(2)(C), 20508(b). States are prohibited from imposing additional registration requirements or requiring additional information from registrants when they apply to register to vote. 52 U.S.C. §§ 20504(c)(2), 20505(a); *see also Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 16 (2013) ("NVRA forbids States

to demand that an applicant submit additional information beyond that required by the Federal Form").

In furtherance of the legislative goal of maintaining accurate and current voter rolls, the NVRA expressly limits the circumstances in which states may remove registered voters from official voter lists. This prohibition in Section 20507(a)(3) directs that "each State shall . . . provide that the name of a registrant may not be removed from the official list of eligible voters except" at the request of the registrant, by reason of criminal conviction or mental incapacity, or pursuant to a "general program" for removing names of voters rendered ineligible by reason of death or change in residence. 52 U.S.C. § 20507(a)(3), (a)(4). It says nothing about the removal of individuals who are potentially not U.S. citizens.

The NVRA places an affirmative obligation on states to develop programs to remove the names of voters who have died or changed residence. 52 U.S.C. § 20507(a)(4), (b), (c), (d). Specifically, "each State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of–(A) the death of the registrant; or (B) a change in the residence of the registrant in accordance with subsections (b), (c), and (d)." 52 U.S.C. § 20507(a)(4). The parameters of such programs—referred to

as "list maintenance"—are also closely regulated by the NVRA.[7]  Among other

things, the NVRA provides that voter removals based on change of address may only

be made based on information supplied by the U.S. Postal Service, 52 U.S.C. §

20507(c), (d), and that any such program, must be completed not later than 90 days

prior to the date of a primary or general election for federal office, 52 U.S.C. §

20507(c)(2)(A).[8]  Further, the statute directs that "[a]ny State program or activity to

protect the integrity of the electoral process by ensuring the maintenance of an

---

[7]   The Federal Election Commission's contemporaneous guidance to the states supports the construction that Section 20507(i) concerns list maintenance activities. The FEC guide describes the states' responsibilities pursuant to Section 20507(i) under the heading "The Accountability of List Maintenance Activities."  *See Implementing the NVRA of 1993 Requirements Issues Approaches and Examples*, pp. 5-15 to 5-16, available at https://www.eac.gov/sites/default/files/eac_assets/1/1/Implementing%20the%20NVRA%20of%201993%20Requirements%20Issues%20Approaches%20and%20Examples%20Jan%201%201994.pdf (last visited September 6, 2023).  The guide describes the statutory obligation to make available records relating to address confirmation mailings and notes, "[a]s a matter of prudence, though not as a requirement of the Act, States might also want to retain for the same time period all records of removals from the voter registration list—the date and the reason." *Id.* at p. 5-16.

[8]   Not all ineligibility is treated the same in the NVRA.  This Court held that, even though the NVRA recognizes that states may remove convicted felons from the voter rolls, the NVRA imposes no obligation on states to implement programs to remove felons. *American Civ. Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 177-78 (3d Cir. 2017) ("*ACRU*").  After considering the purpose of the NVRA, the legislative history and the statutory text, the Court concluded that the NVRA only imposes "an affirmative obligation on states to make 'reasonable efforts'" to remove the names of voters who died or moved away. *Id.* at 182.

accurate and current voter registration roll. . . shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act . . . ."  52 U.S.C. § 20507(b)(1).

Significantly, the right of public inspection appears in the same section of the NVRA that creates the obligation to purge voter lists by reason of death or change of residence and uses the same terminology.  *Compare* 52 U.S.C. § 20507(a)(4) ("each State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or change in residence) *and* 52 U.S.C. § 20507(b)(2) ("Any state program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll . . . shall not result in the removal of the name of any person . . . by reason of the person's failure to vote . . . .") *and* 52 U.S.C. § 20507(c) (describing elements of voter removal programs under § 20507(a)(4)) *and* 52 U.S.C. § 20507(d) (restrictions on removal due to change in residence) *with* 52 U.S.C. § 20507(i) ("Each State shall . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, . . .").

The established canon of construction requires that the similar language in these neighboring subsections must be given the same meaning.  *National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998) ("[S]imilar

language contained within the same section of a statute must be accorded a consistent meaning."). Therefore, the right to public inspection of "programs" in Section 20507(i) must necessarily refer to the "programs" to purge voters who died or moved which are required by Section 20507(a)(4) and described in Sections 20507(b), (c) and (d). Further, the heading of subsection (i)—"Public disclosure of voter registration activities"—and placement of the provision in the section of the statute regulating how registrants may be removed from the voter rolls support reading the public access provision to require access only to records relating to programs and activities mandated by the statute. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (citations and internal quotation marks omitted); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (statutory meaning "is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear. . . ."). Further, this interpretation comports with the NVRA's findings and purpose which are to promote the exercise of the right to vote and ensure that registrants are not improperly removed from the voter rolls. 52 U.S.C. § 20501.

The NVRA's plain text, together with its structure and purpose, thus demonstrate that only records relating to list maintenance programs mandated by

Section 20507(a)(4) are required to be made available for public access under Section 20507(i). In Pennsylvania, such programs are codified at 25 Pa. C.S.A. § 1901, which was adopted in response to the NVRA and which sets forth the manner and circumstances in which a voter's registration may be canceled due to death or change in residence. Pennsylvania has no other mandated list maintenance programs. The NVRA does not permit and Pennsylvania does not have a program for systemically targeting and removing suspected non-citizens from the voter rolls. PILF concedes as much. Appx064, ECF 1 (Compl. ¶ 30). Because the NVRA grants no right of public access to records unrelated to programs mandated by the statute, PILF has no claim under the NVRA for information relating to the software error. Its Complaint should have been dismissed for failure to state a claim.

**C.** **The district court erred in interpreting the public disclosure provision as permitting access to records relating to the software error.**

The district court concluded that the NVRA public disclosure provision is not limited to list maintenance programs required by the NVRA, but rather applies to all records relating to eligibility to vote. Appx007-014. Its interpretation is not faithful to the text of the disclosure provision or rest of the NVRA.

The district court reasoned that the public access provision is not limited to mandated list maintenance because it does not identify the mandatory removal programs by name and because the only information specifically excepted from

disclosure are declinations to register and registering agencies. Appx010-011. This construction violates the established canon that "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (citation omitted). Subsection (i) does not stand alone as the district court construed it, but rather must be read and applied in connection with the rest of Section 20507 which directs when states can remove voters from the voting rolls and dictates parameters for mandatory programs to cull the voting rolls of persons who died or moved away. The district court's construction of subsection (i) as conferring a right of access to any voter-related record ignores the subsections that come before it and therefore violates the whole text canon. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167-69 (2012) ("whole text canon" requires consideration of "the entire text, in view of its structure and of the physical and logical relation of its many parts").[9]

---

[9] The district court's analysis is further flawed in that it focuses on an abbreviated reading of subsection (i)(1). The district court characterized the subsection as follows: "The Disclosure Provision requires disclosure of 'all' records concerning 'programs and activities' designed to ensure accurate and current voter lists." Appx010. The section actually provides that states shall make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 52 U.S.C. § 20507(i)(1).

The district court further erred in reasoning that Congress must have intended the public disclosure provision to reach beyond mandated removals because subsection (a)(4) requiring removal of deceased voters and voters who moved uses the singular "program" whereas subsection (i) uses the plural "programs and activities," thereby suggesting an *indefinite* number of programs *and* activities." Appx011-012. This is not a "crucial lexical distinction" as the district court found, Appx012, but rather a distinction without a difference. The Statutory Construction Act directs that, when construing a statute, words importing the plural include the singular and vice versa. 1 U.S.C. § 1. It is of no significance that subsections in Section 20507 use the singular and plural of the word "program." This is especially true given the rest of Section 20507 which dictates removal programs states must implement.

The district court also drew support for its construction from other cases where documents unrelated to registrant death and change in residence were disclosed under the NVRA. Appx013-014. However, the documents at issue in those cases involved voter registration programs that are also required by the NVRA. None of those cases endorse a right of access to records unrelated to programs and activities mandated by the NVRA. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012) (rejected voter registration applications are subject to public inspection); *Judicial Watch v. Lamone*, No. 17-2006, 2018 WL 2564720, at

*14 (D. Md. June 4, 2018) (holding that voter registration database contains records within scope of public disclosure provision); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1341-44 (N.D. Ga. 2016) (records relating to process of determining voter registration applications within scope of public disclosure provision); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723-24 (S.D. Miss. 2014) (voter roll required to be disclosed).[10]

Beyond its flawed reasoning, the district court's interpretation of the NVRA is objectively unreasonable. Under its view, the public would be permitted wholesale access to *any* state record relating to registered voters or their eligibility to vote. If this were so, the public would have a *broader* right to voter records than the Attorney General who is entrusted with enforcing the NVRA. The Attorney General has the right under the NVRA to inspect "all records and papers . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," but is prohibited from disclosing those records and papers other than to Congress or a governmental agency or in the presentation of any case or proceeding before any court. *See* 52 U.S.C. §§ 20701, 20703, 20704. The district

---

[10]   The district court also cited *Pub. Int. Legal Found. v. Bennett*, No. 18-0981, 2019 WL 1116193, at *4 (S.D. Tex. Feb. 6, 2019), *report and recommendation adopted sub nom. Pub. Int. Legal Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2019 WL 1112228 (S.D. Tex. Mar. 11, 2019), but the decision in that case did not resolve any challenge to the scope of the statute. Instead, the court observed that "it may be that the four categories of documents sought . . . go beyond what is provided for in 20507(i)(1)" but "Defendant has not made that plausibility argument." *Id.* at *4.

court's construction of the public inspection provision is infinitely broader and would permit any member of the public to inspect any record relating to voters or elections without any restriction on redisclosure or use. This is patently unreasonable and runs counter to the NVRA's finding and purpose which are to promote the exercise of the right to vote and to dispel discriminatory and unfair procedures, 52 U.S.C. § 20501, and cannot be what Congress intended.

### D. The public disclosure provision does not apply to the records sought by PILF.

Simply stated, the NVRA public disclosure provision requires that records relating to statutorily mandated programs must be made available for public inspection. Because the records sought by PILF do not relate to Pennsylvania's mandated list maintenance programs, PILF has no right to inspect those records and fails to state a claim under the NVRA.[11]

---

[11] The scope of the NVRA public disclosure provision, and specifically whether the provision applies to records relating to removal of convicted felons from the voter rolls, is the subject of an appeal pending in the U.S. Court of Appeals for the Eleventh Circuit. *See Greater Birmingham Ministries v. Merrill*, No. 2:22cv205, 2022 WL 5027180 (M.D. Ala. Oct. 4, 2022), *appeal docketed*, No. 22-13708 (11th Cir. Nov. 2, 2022).

## III. The District Court Erred in Requiring Identification of Addressees on Letters Who Either Canceled Their Registrations or Did Not Respond.

### A. Scope and Standard of Review

This Court exercises plenary review over a district court's grant of summary judgment. *Chavarriaga*, 806 F.3d at 218. A court may grant a motion for summary judgment if, after considering all probative material of record, with inferences drawn in favor of the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*

### B. PILF is not entitled to the information it seeks.

Even if PILF were able to show a concrete injury and to establish a statutory right to records relating to the software error, the Department of State cannot be compelled to disclose the names and addresses of persons who canceled their registrations without a reason or did not respond to letters advising of the software error or whose letters were returned as undeliverable because the information is protected by the NVRA and the DPPA.[12]

---

[12] As noted above, the Department has already produced to PILF the names of persons whose registrations were canceled and where the county gave non-citizen as the reason for the cancelation. The persons at issue here are those persons who either did not respond to the letters, who canceled their voter registrations without giving a reason, or whose letters were returned as undeliverable. These persons have *not* been determined to be non-citizens.

1. **The NVRA bars disclosure of identities of persons who declined to register to vote.**

By Order dated February 23, 2023, the district court directed that the names and addresses of persons who responded to the June 2018 letter by canceling their voter registrations are required to be disclosed to PILF in response to its NVRA request. Appx056. The NVRA, however, prohibits disclosure of "records [that] relate to a declination to register to vote. . . ." 52 U.S.C. § 20507(i)(1). Accordingly, the Department cannot be compelled under the NVRA to disclose the identities of registrants who voluntarily canceled their registrations.

2. **The DPPA prohibits disclosure of personal information obtained from driver license records.**

The DPPA prohibits states from disclosing a driver's personal information without the driver's consent. *Maracich v. Spears*, 570 U.S. 48, 57 (2013) (citing *Reno v. Condon*, 528 U.S. 141, 144 (2000)). Specifically, the DPPA prevents state representatives from disclosing "personal information . . . obtained by the department [of motor vehicles] in connection with a motor vehicle record. . . ." 18 U.S.C. § 2721(a). "Personal information" is defined for purposes of the statute as "information that identifies an individual, including . . . name[ and] address . . ." 18 U.S.C. § 2725(3).

The district court correctly recognized in ruling on the Department's motion to dismiss that "glitch-related records and derivative lists created during the

[Department's] investigation" are exempted from disclosure under the DPPA "to the extent they include personal information obtained by the DMV in connection with a motor vehicle record," Appx017, but inconsistently changed course in its summary judgment ruling and directed that the names and addresses of registrants who received letters based on the noncitizen matching analysis using the DMV records are required to be disclosed, Appx043. This was error. Personal information obtained or derived from motor vehicle records remains protected by the DPPA. 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."); *see also Siegler v. Best Buy Co. of Minn., Inc.*, 519 F. App'x 604, 605 (11th Cir. 2013) ("A plain reading of the DPPA makes clear that the Act was intended to prohibit . . . the disclosure or redisclosure of information *originating* from state department of motor vehicles ('DMV') records."); *Senne v. Village of Palatine, Illinois*, 695 F.3d 597, 609 (7th Cir. 2012) (placing parking citation with personal information derived from DMV record on driver's windshield violated DPPA).

Accordingly, derivative lists created during the Commonwealth's privileged investigation, including the names and addresses of persons to whom letters were addressed, are themselves protected by the DPPA and the Department cannot be compelled to disclose this information.

### 3. The names and addresses of letter recipients are uniquely sensitive and not subject to disclosure.

Courts that have considered the issue have held that uniquely sensitive information is not required to be disclosed under the NVRA. *See, e.g., N.C. State Bd. of Elections*, 996 F.3d at 268 (remanding with direction to develop system of redaction that protects persons subject to criminal investigations and sensitive personal information, including identities of persons flagged as potential noncitizens but later exonerated); *Long*, 682 F.3d at 339 ("uniquely sensitive information," including Social Security numbers, appropriately redacted); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) (telephone numbers do not "fall under the disclosure requirement"); *True the Vote*, 43 F. Supp. 3d at 736 (Social Security numbers and birthdates must be redacted).

The information that PILF seeks—the names and addresses of persons to whom letters were addressed advising them of the software error—is uniquely sensitive and particularly susceptible to abuse. PILF publishes reports that identify by name persons on the voter rolls believed to be non-citizens, Appx064, ECF 1 (Compl. ¶ 29), and claims that such persons commit state and federal crimes by registering to vote and voting, *id.* ¶¶ 22-23, and that election officials commit state crimes when they allow the registrations or accept the votes, *id.* ¶¶ 24-26. Requiring publication of the list of letter recipients thus exposes eligible voters on the list to the threat of unwarranted criminal prosecution and the risk of other harassment and

abuse.[13]  Further, disclosure would be contrary to the NVRA's purpose of encouraging eligible citizens to register to vote and protecting against discrimination, especially toward minority groups.  52 U.S.C. § 20501(a)(3), (b)(1).

The district court recognized the privacy interests at stake and agreed that those interests are subject to protection notwithstanding the right of public access and, for these reasons, adopted the redaction protocol outlined in *N.C. State Bd. of Elections*.  Specifically, the district court authorized the Department to redact Social Security numbers, identities, and personal information of those subject to criminal investigations and personal information of citizens initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated.  Appx038.  On motion for clarification, however, the district court ruled that only the names of persons who affirmed their eligibility to vote or were

---

[13]  PILF regularly publishes papers accusing registrants, including Pennsylvania registered voters, of unlawfully registering to vote and voting.  *See*, *e.g.*, Compl. ¶¶ 29-30, 133.  PILF did the same in Virginia and was named a defendant in an action alleging that PILF's reports unlawfully intimidated voters in violation of the Voting Rights Act, 52 U.S.C. § 10307.  The U.S. District Court for the Eastern District of Virginia denied PILF's motion to dismiss the action, finding that "Plaintiffs have alleged, plausibly, that the [PILF] reports put them in fear of harassment and interference with their right to vote."  *See League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) (decision denying PILF motion to dismiss).  PILF settled the action by, *inter alia*, promising not to include personal information in future reports in Virginia.  Sam Levine, "Voter Fraud Activist Will Apologize to Citizens He Accused of Being Illegal Voters," Huffpost (July 18, 2021), https://www.huffpost.com/entry/j-christian-adams-pilf-settlement_n_5d309002e4b0419fd3298ee6 (last visited September 6, 2023).

confirmed to be citizens may be redacted.  The district court thus required disclosure of "names and addresses of individuals who responded to the letter by canceling their voter registration, or who failed to reply to the letter or have not been confirmed to be citizens, must be disclosed."  Appx056.

This is not the protocol that was followed in *N.C. State Bd. of Elections*. There, PILF (the same Appellee here) agreed to settle the case without accessing any personal voter information.  The Settlement Agreement and Release states: "Defendants may redact all information that would permit the recipient to personally identify any individual registrant, including names, . . . street addresses, . . . and identifying numbers used for registration and voting purposes."[14]  A North Carolina election official confirmed in a news article that "the settlement provides that the State Board may redact <u>all information</u> that would allow PILF to personally identify any individual registrant who was being reviewed for potential improper registration . . . ."[15]

---

[14]    *See* Settlement Agreement and Release 2.D.  The Settlement Agreement and Release is available on PILF's website at https://publicinterestlegal.org/wp-content/uploads/2022/01/PILF-v.-Bell-Settlement-Agreement-and-Release-Fully-Executed.pdf (last visited September 6, 2023).

[15]    *See* Public Interest Legal Foundation, N.C. elections board reach settlement over foreigners' voting records, The Carolina Journal (Jan. 31, 2022), https://www.carolinajournal.com/public-interest-legal-foundation-n-c-elections-board-reach-settlement-over-foreigners-voting-records/ (last visited September 6, 2023).

Further, the identities and addresses of letter recipients are protected by the right of privacy guaranteed by Article I, § 1 of the Pennsylvania Constitution. *See generally In re Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560, 572-73 (Pa. 2018) ("the right of citizens to security in their reputations" is "a fundamental constitutional entitlement" in Pennsylvania); *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143, 556-57 (Pa. 2017) (balancing test must be conducted to determine whether right of informational privacy outweighs public interest in dissemination of personal information concerning public employees prior to disclosure).

The decision below should be reversed, and the case remanded with direction that personal identifiers relating to individuals who were never confirmed to be non-citizens are not required to be disclosed in response to PILF's NVRA request.

## CONCLUSION

For the reasons above, the Court should reverse and remand with direction to dismiss this action for lack of standing. Alternatively, the Court should reverse the

district court's decision that the NVRA applies to the records at issue and remand for entry of judgment in favor of the Department.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Appellants/Cross-Appellees, Secretary of the Commonwealth Al Schmidt and Deputy Secretary for Elections and Commissions Jonathan M. Marks

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  September 6, 2023

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I certify pursuant to Local Rule 46.1 that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

/s/ Donna A. Walsh

Date: September 6, 2022

## CERTIFICATE OF COMPLIANCE AND
## VIRUS SCAN CERTIFICATION

I, Donna A. Walsh, hereby certify as follows:

1.       The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because the brief has been prepared in proportionally spaced typeface using Microsoft Word 14 point Times New Roman font;

2.       The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 9872 words, excluding those parts of the brief excluded by Fed. R. App. R. 32(f), as calculated using the word count function on Microsoft Word software;

3.       The text of the electronic and hard copies of this brief are identical; and

4.       A virus scan was run on the electronic copy of this brief using Trend Micro OfficeScan and no viruses were detected.

/s/ Donna A. Walsh
Donna A. Walsh

Date:  September 6, 2022

# TABLE OF CONTENTS

**Volume I**                                                                                                                    **Page**

Memorandum Opinion dated December 13, 2019 ......................................Appx001

Order dated December 13, 2019 ................................................................Appx022

Memorandum Opinion dated March 31, 2022.............................................Appx024

Order dated March 31, 2022 ......................................................................Appx050

Judgment dated March 31, 2022................................................................Appx052

Order dated February 28, 2023 .................................................................Appx053

Notice of Appeal filed March 29, 2023 .....................................................Appx059

Notice of Cross-Appeal filed March 30, 2023............................................Appx061

Docket .......................................................................................................Appx063

**Volume II**

Letter from Jonathan Marks to Noel Johnson, Esquire dated
    April 9, 2019.....................................................................................Appx072

Letter from Noel Johnson, Esquire to Jonathan Marks dated
    October 23, 2017 ..............................................................................Appx073

Jonathan Marks Testimony before House State Government Committee
    on October 25, 2017 ........................................................................Appx076

Letter from Jonathan Marks to Noel Johnson, Esquire dated
    December 20, 2017..........................................................................Appx079

J. Christian Adams Deposition Excerpt......................................................Appx081

Robert Torres Affidavit.................................................................Appx086

Jonathan Marks Declaration .......................................................Appx089

Summary Chart ...........................................................................Appx142

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | CIVIL ACTION NO. 1:19-CV-622 |
| | : | |
| | : | (Chief Judge Conner) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, Acting Secretary of the Commonwealth of Pennsylvania, JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions, and the BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

The Public Interest Legal Foundation ("PILF") seeks production of voter records under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507. PILF claims that defendants have information documenting that noncitizens are registering to vote and voting in elections in the Commonwealth of Pennsylvania. According to PILF, the NVRA mandates disclosure of that information.  Defendants move to dismiss PILF's complaint under Federal Rule of Civil Procedure 12(b)(6). We will grant in part and deny in part defendants' motion.

**I.      Factual Background & Procedural History**

PILF is a public interest organization that "seeks to promote the integrity of elections nationwide."  (Doc. 1 ¶ 5).  Its stated mission is to ensure that voter rolls

"are free from ineligible registrants, noncitizens, individuals who are no longer residents and individuals who are registered in more than one location." (<u>Id.</u>)

Kathy Boockvar is the Secretary of the Commonwealth of Pennsylvania, and Jonathan M. Marks is the Commonwealth's Deputy Secretary for Elections and Commissions. (<u>Id.</u> ¶¶ 6-7). Deputy Secretary Marks heads the Commonwealth's Bureau of Commissions, Elections and Legislation, an arm of the Pennsylvania Department of State. (<u>Id.</u> ¶¶ 7-8). Together, defendants administer federal and state election laws in the Commonwealth. (<u>Id.</u> ¶¶ 5-8). PILF alleges that defendants are custodians of the records requested in the complaint. (<u>Id.</u> ¶ 9).

## A.    PILF's Records Request

During a recent investigation into voter fraud, PILF discovered that noncitizens were registered to vote and were voting in the Commonwealth's elections. (Doc. ¶ 27). Records obtained by PILF also showed that dozens of noncitizens in Philadelphia had self-reported their noncitizen status to election officials and cancelled their registrations.[1] (<u>Id.</u> ¶¶ 29-30). According to PILF, roughly half of the self-reported noncitizens had cast a ballot in an election. (<u>Id.</u> ¶ 31). PILF presented these findings to the State Government Committee of the Pennsylvania House of Representatives in October 2016. (<u>Id.</u> ¶ 32).

In September 2017, Philadelphia City Commissioner Al Schmidt revealed that a "glitch" at the Pennsylvania Department of Motor Vehicles ("DMV")

---

[1] As PILF notes in its complaint, it is both a state and federal crime for a noncitizen to apply for voter registration or to vote in any election. (<u>See</u> Doc. 1 ¶¶ 21-23 (collecting statutes)).

Appx002

provided one explanation for this problem.  (Id. ¶ 33).  In an article published by the *Philadelphia Inquirer*, Commissioner Schmidt explained that this glitch had allowed noncitizens to register to vote when they renewed their driver's licenses.  (Id.)

The Pennsylvania House State Government Committee held a hearing one month later to explore the issue of noncitizen registration and voting in the Commonwealth, including the DMV glitch.  (Id. ¶ 44).  Deputy Secretary Marks testified at length as to the Department of State's investigation.  (Id. ¶¶ 49-54). According to Marks, the Department of State had reviewed its voter-registration database and identified 1,160 instances of ineligible residents self-reporting and cancelling their inadvertent registrations.  (Id. ¶¶ 50-51).  The Department analyzed this initial data to determine if any of the self-reported ineligible registrants had voted (and if so, how many times) as well as how they had initially registered to vote.  (Id. ¶ 52).

The Department of State deepened its analysis after this initial review. At a hearing before the Pennsylvania Senate's State Government and Transportation Committees, then-Acting Secretary of the Department of State Robert Torres explained that the Department had begun "expert analysis" of the Commonwealth's voter-registration system and the driver-license database maintained by the Pennsylvania Department of Transportation ("PennDOT").  (Id. ¶ 59).  Commissioner Schmidt also testified at the joint hearing and summarized the Commonwealth's expert analysis.  (Id. ¶¶ 60-68).  Commissioner Schmidt testified that noncitizens who apply to PennDOT for a driver's license have their licenses tagged with an "INS Indicator."  (Id. ¶ 61).  He further testified that all voter-

Appx003

registration applicants in the Commonwealth must register using either a driver's license or PennDOT ID.  (Id. ¶ 62).  Commissioner Schmidt explained that a person's driver's license can thus be used to determine both citizenship (by the INS Indicator) and voter registration (by the driver's license number).  (Id. ¶ 63).  According to Commissioner Schmidt, the Department of State's matching of these two identifiers revealed over 100,000 individuals who were registered to vote and tagged with an INS Indicator.  (Id. ¶¶ 65-67).

On October 23, 2017, PILF sent a letter to the Department of State's Bureau of Commissions, Elections and Legislation requesting voter records.  (Id. ¶ 69). PILF asked to inspect:

> 1. Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security and the Pennsylvania Department of Transportation since January 1, 2006. This request extends to all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action. … This request includes all voter records that were referenced in recent news media reports regarding individuals improperly exposed to registration prompts due to a "glitch" in PennDOT's Motor Voter compliance system.  At least one news report claims that "a Pennsylvania Department of State review is underway."  I seek all voter records contained in this review.
>
> 2. All documents and records of communication received or maintained by your office from registered voters, legal counsel, claimed relatives, or other agents since

January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility.  Please include any official records indicating maintenance actions undertaken thereafter.

3. All documents and records of communication received or maintained by your office from jury selection officials—state and federal—since January 1, 2006 referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call. This request seeks copies of the official referrals and documents indicating where your office or local registrars matched a claim of noncitizenship to an existing registered voter and extends to the communications and maintenance actions taken as a result that were memorialized in any written form.

4. All communications regarding list maintenance activities relating to #1 through 3 above to appropriate local prosecutors, Pennsylvania Attorney General, Pennsylvania State Police, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation.

(Doc. 1-9 at 1-2).  Defendants denied PILF's request.  (Doc. 1 ¶¶ 74, 84, 89).

In April 2018, the Pennsylvania Department of State issued a statement outlining its efforts to identify and to remove noncitizens who were registered through the PennDOT system.  (Id. ¶ 103; see also Doc. 1-14).  That statement described "an intense data analysis and process" and indicated that the Department had compiled a list of suspected noncitizen registrants requiring further review.  (Doc. 1 ¶ 104; Doc. 1-14 at 1).  The Department then sent a letter to 7,702 suspected noncitizen registrants.  (Doc. 1 ¶ 104; Doc. 1-14 at 1; see also Doc. 1 ¶ 106).  In June 2018, the Department of State mailed similar letters to 11,198

suspected noncitizen registrants requesting that they either confirm their eligibility or cancel their registration.  (Doc. 1 ¶ 107).

### B.   Procedural History

PILF originally filed this lawsuit in 2018, asserting that defendants' denial of PILF's records request violated the NVRA.  We held that PILF fell within the NVRA's "zone of interests" and had standing, but that it failed to comply with the statute's notice requirements.  See Pub. Interest Legal Found. v. Boockvar, 370 F. Supp. 3d 449, 454-58 (M.D. Pa. 2019).  PILF commenced this action after satisfying the NVRA's notice requirements.  (Doc. 1 ¶¶ 117-25).  Defendants filed a motion (Doc. 12) to dismiss, which is ripe for disposition.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the … claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III.   **Discussion**

The parties dispute whether the records requested by PILF must be disclosed under the NVRA.  They also dispute whether federal or state law prohibits disclosure of those records.  We address these arguments in turn.

### A.   **NVRA Disclosure Provision**

The NVRA regulates voter registration.  In the NVRA's first section, Congress stated its findings:

> (1) the right of citizens of the United States to vote is a
> fundamental right; (2) it is the duty of the Federal, State,
> and local governments to promote the exercise of that
> right; and (3) discriminatory and unfair registration laws
> and procedures can have a direct and damaging effect on
> voter participation in elections for Federal office and
> disproportionately harm voter participation by various
> groups, including racial minorities.

52 U.S.C. § 20501(a).  Congress also codified the NVRA's purposes:

> (1) to establish procedures that will increase the number
> of eligible citizens who register to vote in elections for
> Federal office; (2) to make it possible for Federal, State,
> and local governments to implement this chapter in a
> manner that enhances the participation of eligible citizens
> as voters in elections for Federal office; (3) to protect the
> integrity of the electoral process; and (4) to ensure that
> accurate and current voter registration rolls are
> maintained.

Id. § 20501(b).  States must establish voting procedures consistent with these

maxims.  Id. § 20503(a).

Section 8 of the NVRA specifically governs voter-registration procedures.

See id. § 20507(a).  Section 8 also regulates any state "program or activity" designed

to "protect the integrity of the electoral process by ensuring the maintenance of an

accurate and current voter registration roll."  Id. § 20507(b).  Such a "program or

activity" must be "uniform, nondiscriminatory, and in compliance with the Voting

Rights Act," and generally may not remove registrants for failure to vote.  Id.

§ 20507(b)(1), (2).

Two parts of Section 8 are at issue here: subsection 20507(a)(4), which we

refer to as the "Mandatory Removal Provision," and subsection 20507(i), which we

refer to as the "Disclosure Provision."  The Mandatory Removal Provision requires

Appx008

the state to establish a "general program" to remove registrants who have died or changed their residence from official lists of eligible voters.  Id. § 20507(a)(4).  States are otherwise prohibited from removing registrants from official lists of eligible voters unless the registrant requests removal, state law mandates removal, or the registrant is removed pursuant to a mandatory removal program.  Id. § 20507(a)(3).

The Disclosure Provision instructs states to allow public inspection of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  Id. § 20507(i)(1).  The Disclosure Provision expressly exempts two categories of records from its scope: records related to an individual's declination to register, and records identifying the agency where a voter registered.  Id.

As a matter of first impression in our circuit, we are asked to interpret the NVRA's Disclosure Provision.  Defendants argue the Disclosure Provision is linked to (and thus limited by) the Mandatory Removal Provision, allowing public access only to records that relate to programs created to remove registrants who have died or changed their residence.  (Doc. 14 at 7).  PILF seeks a broader reading, asserting that all records related to the Commonwealth's efforts to evaluate the eligibility of voters based on citizenship are subject to the Disclosure Provision.  (Doc. 15 at 5-16).  Culled to its essence, the parties' dispute turns on the meaning of the phrase "programs and activities" in the Disclosure Provision.

We start with the statutory text and first determine the common and ordinary meaning of its terms.  Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 105 (3d Cir. 2018) (citing Artis v. District of Columbia, 583 U.S. ___, 138 S. Ct. 594,

9

603 (2018)).  To do so, we utilize standard dictionary definitions.  See Yates v. United States, 574 U.S. ___, 135 S. Ct. 1074, 1081-82 (2015); Vorcheimer, 903 F.3d at 105.

A "program" is "a schedule or system under which action may be taken towards a desired goal."  *Program*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002); see also *Program*, COMPACT OXFORD ENGLISH DICTIONARY (2d ed. 1989).  An "activity" is a "natural or normal function or operation."  *Activity*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002); see also *Activity*, COMPACT OXFORD ENGLISH DICTIONARY.  Applying these definitional terms, the Disclosure Provision requires states to disclose "all records concerning the implementation" of a schedule or system designed to serve a specific end, or a particular function or operation, "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1); see also Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 335 (4th Cir. 2012); Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1338 (N.D. Ga. 2016); True the Vote v. Hosemann, 43 F. Supp. 3d 693, 719-20 (S.D. Miss. 2014).

Statutory text is not reviewed in a vacuum, and definitions are not dispositive.  Yates, 135 S. Ct. at 1081-82.  A statute's terms must be considered in context.  Id.  Defendants argue that the Disclosure Provision is limited to records created under the Mandatory Removal Provision (*i.e.*, registrant death or change in residence).  (Doc. 14 at 8-9).  The Disclosure Provision's text and its neighboring subsections do not support this narrow interpretation.  The Disclosure Provision requires disclosure of "all" records concerning "programs and activities" designed to ensure accurate and current voter lists.  Congress shielded only two types of

Appx010

records from this broad grant of access: records related to a person's decision

to forego registration or to the identity of the agency where a voter registered.  52

U.S.C. § 20507(i)(1).  Had Congress intended to limit the Disclosure Provision's

reach to records that fall within the Mandatory Removal Provision's purview, it

could have used the "general program" language.  Or it could have identified the

Mandatory Removal Provision by section.  As PILF points out, Congress knew how

to refer to other subsections in drafting the NVRA.  (Doc. 15 at 13).  The express

inclusion of two exceptions and the abundant use of cross-references in the NVRA

suggest the exclusion of other potential exceptions.

Moreover, the Disclosure Provision requires production of "all" records, with

two exceptions.  The word "all" is expansive.  <u>Long</u>, 682 F.3d at 336.  The Disclosure

Provision's two exceptions are narrow and specific.  52 U.S.C. § 20507(i)(1).  The

contrast between the broad mandate to disclose "all" records and the tailored

protection of two types of records implies that Congress crafted this provision

carefully.  We will not (and indeed, must not) read unexpressed limitations into an

unambiguous statute's terms.  <u>See</u> <u>Prestol Espinal v. Attorney Gen. of the United</u>

<u>States</u>, 653 F.3d 213, 222 (3d Cir. 2011) (citing <u>United States v. Johnson</u>, 529 U.S. 53,

58 (2000)); <u>see</u> <u>also</u> ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE

INTERPRETATION OF LEGAL TEXTS 93 (2012).

Defendants nonetheless argue that the phrase "programs and activities" in

the Disclosure Provision necessarily refers to the Mandatory Removal Provision's

"general program" to remove registrants who have died or moved.  (Doc. 14 at 9).

We disagree.  The shared use of the word "program" in both provisions is as far

11

as their likeness extends.  The Mandatory Removal Provision requires states to

conduct "a general program" to remove registrants who have died or moved away.

52 U.S.C. § 20507(a)(4).  The Disclosure Provision concerns "programs and

activities" intended to ensure accurate voter rolls.  Id. § 20507(i).  The Mandatory

Removal Provision contemplates a *single* general program, while the Disclosure

Provision contemplates an *indefinite* number of programs *and* activities.  We

presume that when Congress uses different language in separate subsections of the

same statute, it intends different meanings.  See Sosa v. Alvarez-Machain, 542 U.S.

692, 712 n.9 (2004); Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 139 n.9 (3d Cir.

2017).  Defendants' preferred reading ignores this crucial lexical distinction.

PILF's interpretation of the Disclosure Provision, by contrast, accords

with this canon of consistent usage.  The phrase "programs and activities" as

used in the Disclosure Provision aligns neatly with another provision in Section 8—

specifically, subsection 20507(b), which governs "[a]ny State *program or activity* to

protect the integrity of the electoral process by ensuring the maintenance of an

accurate and current voter registration roll for elections."  52 U.S.C. § 20507(b)

(emphasis added).  The similarities between these subsections are obvious.  Both

refer to programs *and* activities designed to ensure accurate and current voter lists.

It is more likely that Congress's use of "programs and activities" in the Disclosure

Provision is a reference to subsection 20507(b), not the Mandatory Removal Provision.[2]

Our interpretation of the Disclosure Provision also furthers the NVRA's purposes.  See Scalia & Garner, Reading Law: The Interpretation of Legal Texts 180-82.  This reading does not prevent states from establishing procedures to increase the number of eligible voters, implementing the NVRA, or enhancing voter participation.  Id. § 20501(b)(1), (2).  Rather, a broad reading promotes the integrity of the voting process and ensures a public vehicle for ensuring accurate and current voter rolls.  Id. § 20501(b)(3), (4).  Because the Disclosure Provision is unambiguous, we need not consult legislative history.  See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005); United States v. Kouevi, 698 F.3d 126, 133 (3d Cir. 2012) (citation omitted).

Finally, we note that courts routinely permit disclosure of voter-related documents unrelated to registrant death or change in residence.  See, e.g., Long, 682 F.3d at 336; Pub. Interest Legal Found. v. Bennett, No. 18-0981, 2019 WL 1116193, at *4 (S.D. Tex. Feb. 6, 2019), report and recommendation adopted sub

---

[2] We also reject defendants' suggestion that subsection 20507(c) limits the Disclosure Provision to records made under the Mandatory Removal Provision. Subsection 20507(c) explains that a state can meet the Mandatory Removal Provision's requirements by establishing a program through which the Postal Service assists in identifying registrants who have changed their residence.  Id. § 20507(c)(1).  Under that subsection, any program designed to "systematically" remove ineligible voters from voter lists must be completed 90 days before an election.  Id. § 20507(c)(2)(A).  Subsection (c) does not speak to the meaning of "programs and activities" in the Disclosure Provision.  It simply explains how a "general program" under the Mandatory Removal Provision may operate.  Id. § 20507(c)(1).

Appx013

*nom.* <u>Pub. Interest Legal Found., Inc. v. Bennett</u>, No. 4:18-CV-00981, 2019 WL 1112228 (S.D. Tex. Mar. 11, 2019); <u>Judicial Watch v. Lamone</u>, No. 17-2006, 2018 WL 2564720, at *14 (D. Md. June 4, 2018); <u>Kemp</u>, 208 F. Supp. 3d at 1341-44; <u>Hosemann</u>, 43 F. Supp. 3d at 723-24.  This judicial accord confirms our understanding of the Disclosure Provision's scope.

For all of these reasons, we conclude that the Disclosure Provision's broad grant of access is not limited to records related to registrant death or changes in residence.  The records requested by PILF were created pursuant to a system designed to identify ineligible voters based on their noncitizen status.  The Commonwealth has admitted as much in public comments regarding the ongoing investigations and has described at length the rigorous and targeted analysis of voter-registration data and driver's license data that produced the requested records.  (<u>See</u>, <u>e.g.</u>, Doc. 1 ¶¶ 50, 59, 64-67, 72, 104).   Thus, the Commonwealth's effort to identify noncitizen registrants is a "program" or "activity" designed to identify noncitizens and ensure an accurate and current list of eligible voters.  Records concerning this effort are therefore accessible to the public under the Disclosure Provision.  52 U.S.C. § 20507(i); <u>see</u> <u>Bennett</u>, 2019 WL 1116193, at *4; <u>Kemp</u>, 208 F. Supp. 3d at 1343; <u>see</u> <u>also</u> <u>Long</u>, 682 F.3d at 335-37.[3]

---

[3] The parties have not addressed whether personal information in the requested records should be redacted.  We note that the Disclosure Provision does not guarantee unfettered access to confidential sensitive information.  <u>See</u> <u>Kemp</u>, 208 F. Supp. 3d at 1344; <u>True the Vote</u>, 43 F. Supp. 3d at 733-39.

Appx014

### B.   Federal and State Law Protections

Defendants argue that, even if the NVRA's Disclosure Provision permits broad access to records, the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, and state law prohibit the disclosure requested here.  (Doc. 14 at 12-14). PILF rejoins that the DPPA does not bar disclosure of derivative records, does not bar disclosure by defendants (as opposed to DMV officials), and permits disclosure to PILF as a "private attorney general" acting on the government's behalf.  (Doc. 15 at 16-21).

The DPPA prohibits states from disclosing a driver's personal information without the driver's consent.  <u>Maracich v. Spears</u>, 570 U.S. 48, 57 (2013) (citing <u>Reno v. Condon</u>, 528 U.S. 141, 144 (2000)).  Specifically, the DPPA prevents a state DMV and its representatives from disclosing "personal information … obtained by the department in connection with a motor vehicle record."  18 U.S.C. § 2721(a). "Personal information" is "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."  <u>Id.</u> § 2725(3).

Notwithstanding this general prohibition, personal information may be disclosed in 14 circumstances.  <u>See</u> <u>id.</u> § 2721(b).  Relevant here, personal information may be disclosed under the governmental-function exception to private persons or entities "acting on behalf of a Federal, State, or local agency in carrying out its functions."  <u>Id.</u> § 2721(b)(1).  Authorized recipients of personal information

15

may only redisclose personal information if redisclosure also satisfies one of the 14 exceptions.  Id. § 2721(c).  It is consequently "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b)."  Id. § 2722(a); see also id. § 2724(a).  The term "person" does not include the state or its agencies, but it does include individuals, organizations, and entities.  Id. § 2725(2).  In other words, under the DPPA, an authorized recipient of personal information has a limited ability to redisclose that information, and private entities and persons are liable if they impermissibly obtain or disclose personal information from a motor vehicle record.  Id. § 2721(c); see also id. §§ 2722(a), 2724(a).

Personal information is "from" a motor vehicle record when it derives from state DMV sources.  See Dahlstrom v. Sun-Times Media, LLC, 777 F.3d 937, 949 (7th Cir. 2015); Whitaker v. Appriss, Inc., No. 3:13-CV-826, 2014 WL 4536559, at *3 (N.D. Ind. Sept. 11, 2014) (citation omitted); see also Andrews v. Sirius XM Radio Inc., 932 F.3d 1253, 1260 n.5 (9th Cir. 2019) (citing Fontanez v. Skepple, 563 F. App'x 847, 848-49 (2d Cir. 2014); Siegler v. Best Buy Co. of Minn., 519 F. App'x 604, 605 (11th Cir. 2013)).  That the information does not take the form of a "motor vehicle record" is irrelevant.  See Senne v. Vill. of Palatine, 695 F.3d 597, 608-09 (7th Cir. 2012) (en banc).  Indeed, the DPPA protects "information" held by the DMV and supplied in connection with a motor vehicle record.  See 18 U.S.C. § 2721.

Several categories of records requested by PILF do not implicate protected driver information.  Those categories include documents obtained from non-DMV sources regarding potential noncitizen registrants, records of noncitizens

16

requesting removal or cancellation from the voter roll, communications with jury selection officials, and communications with prosecutors.  (<u>See</u> Doc. 1-9 at 1-2).  As described below, however, to the extent these requests implicate protected personal information contained in DMV records, they are shielded by the DPPA.  The only remaining category of records is tied to the DMV glitch.

The glitch-related records and derivative lists created during the Commonwealth's investigation are protected by the DPPA to the extent they include personal information obtained by the DMV in connection with a motor vehicle record.  As explained by Commissioner Schmidt, an individual's driver's license can be used to verify both citizenship (by the INS Indicator) and voter registration (by the driver's license number).  (Doc. 1 ¶ 63).  The source of the INS Indicator—according to PILF—is the DMV.  (<u>Id.</u>)  And the INS Indicator is information created in connection with a motor vehicle record.  (<u>See id.</u> ¶ 61).  That information was permissibly disclosed to Commonwealth investigators under the DPPA's governmental-function exception.  <u>See</u> 18 U.S.C. § 2721(c).  The DPPA, however, prohibits the Commonwealth from redisclosing "personal information" obtained through DMV records unless the redisclosure meets one of the DPPA's permissible uses.[4]  <u>Id.</u>

---

[4] PILF argues that the DPPA does not apply to disclosures by entities or individuals other than state DMVs and their officials.  (Doc. 15 at 18-19).  PILF's reliance on <u>Davis v. Freedom of Information Commission,</u> 790 A.2d 1188 (Conn. Supp. 2001), is unconvincing in light of contrary federal cases.  (Doc. 15 at 18).  The Superior Court of Connecticut's decision does not bind our interpretation of federal law.  <u>See</u> <u>United States v. Bedford</u>, 519 F.2d 650, 653 n.3 (3d Cir. 1975).

Appx017

PILF first claims that citizenship status is not protected information.  (Doc. 15 at 20).  The DPPA employs the term "including" to identify several types of protected "personal information."  18 U.S.C. § 2725(3).  Congress usually intends the term "including" to indicate the "illustrative but not limitative" nature of listed examples.  See Campbell v. Acuff–Rose Music, Inc., 510 U.S. 569, 577 (1994); see also SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132-33.  Thus, the fact that citizenship is not explicitly identified as protected personal information is not dispositive.  At this stage of the litigation, defendants have not shown that INS Indicators categorically do *not* qualify as identifying information.

Citizenship information is not the only information implicated here.  An individual's "driver identification number" is protected information.  18 U.S.C. § 2725(3).  The glitch-related information requested by PILF contains analysis matching noncitizen's driver's license numbers to the driver's license numbers of registered voters.  (Doc. 1 ¶ 65).  Such a compilation of driver's license numbers—with or without INS Indicators—is protected from redisclosure under the DPPA unless subject to an exception.  18 U.S.C. § 2721(c); see also Senne, 695 F.3d at 608.

We do not share PILF's concern that our holding will obliterate the public inspection rights envisioned by Congress.  (Doc. 15 at 5).  This case presents the unique situation where voter-related records and DMV records overlap.  In any event, Congress legislates with knowledge of the then-existing statutory landscape.  Parker Drilling Mgmt. Servs., Ltd. v. Newton, 587 U.S. ___, 139 S. Ct. 1881, 1890 (2019) (quoting McQuiggin v. Perkins, 569 U.S. 383, 398, n.3 (2013)).  The DPPA was enacted after the NVRA.  Compare Driver's Privacy Protection Act of 1994, Pub. L.

18

No. 103-322, Title XXX, 108 Stat. 1796, <u>with</u> National Voter Registration Act of 1993, Pub. L. No. 103-31, § 8, 107 Stat. 77.  We must presume that Congress knew of the potential interplay between the DPPA's privacy protections and the NVRA's disclosure mandate.

PILF further argues that, even if the glitch-related records contain personal information, PILF's status as a "private attorney general" warrants disclosure under the DPPA's governmental-function exception.  (Doc. 15 at 19 (citing <u>Ass'n of Cmty. Orgs. for Reform Now v. Fowler</u>, 178 F.3d 350, 364 (5th Cir. 1999)).  Assuming without deciding that the NVRA permits suits by private attorneys general, PILF does not explain how that claimed status under the NVRA would satisfy the DPPA's governmental-function exception.  The two laws work at cross-purposes: the NVRA encourages transparency, <u>see</u> 52 U.S.C. § 20501(b), and the DPPA protects privacy, <u>see</u> <u>Maracich</u>, 570 U.S. at 57.  PILF's two purported roles likewise serve different purposes: private attorneys general stand in the shoes of the public, <u>see</u> <u>Pa. Envtl. Def. Found. v. Bellefonte Borough</u>, 718 F. Supp. 431, 434 (M.D. Pa. 1989) (citing <u>Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n</u>, 453 U.S. 1, 16-17, 17 n.27, 21 (1981)), but entities invoking the DPPA's governmental-function exception stand in the shoes of the government, <u>see</u> 18 U.S.C. § 2721(b)(1).  These respective interests are on opposite sides of the current conflict.  PILF has thus not shown how its use of the requested records would assist the government in carrying out its functions.  18 U.S.C. § 2721(b)(1).

Finally, we need not consider whether the requested records are protected by Pennsylvania's Right-to-Know Law because PILF sought its records under the

Appx019

NVRA.  To the extent Pennsylvania law conflicts with our interpretation of federal law, federal law controls.  <u>Foster v. Love</u>, 522 U.S. 67, 69 (1997); <u>Holk v. Snapple Beverage Corp.</u>, 575 F.3d 329, 339 (3d Cir. 2009).

### C.     Zone of Interests

Defendants reiterate their arguments regarding the NVRA's zone of interests, but they have not presented new or modified arguments.  We adopt and incorporate the analysis in our earlier opinion.  <u>See</u> <u>Boockvar</u>, 370 F. Supp. 3d at 456.  We also incorporate our earlier standing analysis.  <u>See</u> <u>id.</u> at 454-56.

### D.     Bureau of Commissions, Elections and Legislation

Defendants lastly argue that the Bureau of Commissions, Elections and Legislation is improperly named as a defendant.  (Doc. 14 at 16).  We agree.  Absent waiver, sovereign immunity extends to state agencies and bureaus.  <u>See</u> <u>Del. Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot.</u>, 833 F.3d 360, 375 (3d Cir. 2016) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984)); <u>Kincel v. Commonwealth, Dep't of Transp.</u>, 867 A.2d 758, 764 n.20 (Pa. Commw. Ct. 2005) (citation omitted).  The Commonwealth has not waived sovereign immunity.  <u>See</u> PA. CONST. art. I, § 11; 42 PA. CONS. STAT. §§ 102, 8521, 8522.

Appx020

**IV.**   <u>**Conclusion**</u>

The court will grant in part and deny in part defendants' motion (Doc. 12) to

dismiss.  An appropriate order shall issue.



                                    /S/ CHRISTOPHER C. CONNER
                                    Christopher C. Conner, Chief Judge
                                    United States District Court
                                    Middle District of Pennsylvania

Dated:    December 13, 2019

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | CIVIL ACTION NO. 1:19-CV-622 |
| | : | |
| | : | (Chief Judge Conner) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, Acting Secretary | : | |
| of the Commonwealth of Pennsylvania, | : | |
| JONATHAN M. MARKS, Deputy | : | |
| Secretary for Elections and | : | |
| Commissions, and the BUREAU OF | : | |
| COMMISSIONS, ELECTIONS | : | |
| AND LEGISLATION, | : | |
| | : | |
| Defendants | : | |

## <u>ORDER</u>

AND NOW, this 13th day of December, 2019, upon consideration of the

motion (Doc. 12) to dismiss by defendants, and the parties' respective briefs in

support of and opposition to said motion, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.   Defendants' motion (Doc. 12) is GRANTED in part and DENIED in part as follows:

   a.   Defendants' motion (Doc. 12) is GRANTED to the extent the Public Interest Legal Foundation's request for records includes records containing protected personal information obtained by the Department of Motor Vehicles in connection with a motor vehicle record as defined in the Driver's Privacy Protection Act.

    b.      Defendants' motion (Doc. 12) is otherwise DENIED.


                /S/ CHRISTOPHER C. CONNER
                Christopher C. Conner, Chief Judge
                United States District Court
                Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE PUBLIC INTEREST LEGAL FOUNDATION, | : | CIVIL ACTION NO. 1:19-CV-622 |
| | : | |
| | : | (Judge Conner) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| LEIGH M. CHAPMAN, Acting Secretary of the Commonwealth of Pennsylvania,[1] and JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

Plaintiff, the Public Interest Legal Foundation ("PILF"), seeks production of voter registration records under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507.  PILF claims defendants Leigh M. Chapman, Acting Secretary of the Commonwealth of Pennsylvania, and Jonathan M. Marks, Deputy Secretary of Elections and Commissions, have failed to satisfy the Commonwealth's disclosure obligations under NVRA.  Both parties move for summary judgment under Federal Rule of Civil Procedure 56.  We will grant in part and deny in part the motions.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Chapman is automatically substituted as a defendant for former Secretary Kathy Boockvar.  <u>See</u> FED. R. CIV. P. 25(d).

I.    <u>**Factual Background & Procedural History**</u>[2]

PILF is a public interest organization concerned with, among other things, "the integrity of elections nationwide." (<u>See</u> Doc. 66 ¶ 3). Leigh M. Chapman, Acting Secretary of the Commonwealth of Pennsylvania, is tasked with administering voter registration in Pennsylvania. (<u>See</u> <u>id.</u> ¶ 4). Jonathan Marks is Deputy Secretary for Elections and Commissions at the Pennsylvania Department of State. (<u>See</u> <u>id.</u> ¶ 5). As Chapman and Marks, sued in their official capacities, are avatars for the government of the Commonwealth of Pennsylvania, we will refer to them as "the Commonwealth."

In late 2017, the Commonwealth publicly admitted the existence of a "glitch" in a computer system used by the Pennsylvania Department of Transportation ("PennDOT"). This glitch permitted non-United States citizens applying for or renewing a driver's license to register to vote in the Commonwealth. (<u>See</u> <u>id.</u> ¶¶ 6-7; <u>see also</u> Doc. 64-1 ¶ 7). PennDOT's glitch quickly became a public scandal generating extensive media coverage and investigatory hearings in the Pennsylvania legislature. (<u>See</u> Doc. 66 ¶¶ 6-7, 9 n.2; <u>see also</u> Docs. 66-2, 66-3). As the

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. <u>Id.</u> Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (<u>See</u> Docs. 63, 66, 70, 72). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

precursor to remedial action, the Commonwealth undertook a series of analyses to ascertain the extent to which the glitch allowed noncitizens onto the Commonwealth's voter registration lists.  (See Doc. 66 ¶¶ 49-65).

### A.    Initial Analysis

The Commonwealth conducted the first analysis ("the initial analysis")[3] in September 2017 by comparing PennDOT's motor vehicle records with the Statewide Uniform Registry of Electors ("SURE"), a computerized compilation of each county's voter registration list.  (See id. ¶ 23).  The SURE database includes not only the registrant's voter registration status but also personal information about the voter and their voting history.[4]  (See id. ¶¶ 24-26, 32).  Through the SURE database, the Commonwealth's counties maintain their voter registration lists, adding, updating, and cancelling registrations.  (See id. ¶ 24; see also Marks Dep. 52:12-19, 58:13-59:23).  When county election officials cancel a voter registration, the SURE database records the cancellation as well as the reason for cancellation.  (See Doc. 66 ¶ 28).

---

[3] PILF refers to the Commonwealth's first attempt to determine the number of noncitizens as the "Al Schmidt Analysis" (in reference to Philadelphia City Commissioner Al Schmidt's involvement in publicizing the results of the analysis) and the second analysis as the "Initial Statewide Analysis."  We find PILF's names for the analyses more confusing than helpful because the analysis PILF refers to as being "initial" was not, in fact, the initial analysis.

[4] In this instance, "voting history" refers only to whether the registrant cast a ballot in a particular election and whether they cast the ballot in person or by mail; obviously, it does not include how the voter may have voted in an election.  (See Doc. 66-1, Marks Dep. 105:3-106:24; see also Doc. 72 ¶ 26).

Appx026

The initial analysis compared the SURE database of registered voters against PennDOT's database of driver's license holders flagged with "INS indicators."  (See id. ¶¶ 49-51; Doc. 64-1 ¶¶ 12-13).  How INS indicators work within PennDOT's record-keeping system is not entirely clear in the record before the court, but they appear to signify merely that the license holder was, at some point in their life, something other than a United States citizen.  (See Doc. 64-1 ¶ 13; Marks Dep. 169:7-172:23).  The initial analysis identified approximately 100,000 registered voters "who may potentially be non-citizens or may have been non-citizens at some point in time."  (See Doc. 64-1 ¶ 13; Doc. 66 ¶ 51).

### B.    Statewide Analysis

In addition to the initial analysis, the Commonwealth searched the SURE database for records related to any voter registrations cancelled by a county simply because the registrant was not a citizen ("the statewide analysis").  (See Doc. 66 ¶ 55).  The statewide analysis produced voting registration records for 1,160 individuals.  (See id. ¶¶ 55, 59).  However, the 1,160 records reflected only those registrants who self-reported their status as noncitizens and voluntarily requested their voter registration be cancelled.  (See id. ¶ 58).  Of the 1,160 noncitizen registrants, 248 voted in at least one election prior to cancelling their registration.[5] (See id. ¶¶ 60-61).

---

[5] In conjunction with the statewide analysis, the Commonwealth asked counties to provide copies of any cancellation requests received by the county from noncitizens seeking to cancel their voter registration.  (See Doc. 64-1 ¶ 11).  Only Allegheny, Philadelphia, and Dauphin Counties provided records in response to the request.  (See id.)

Appx027

### C.      Noncitizen Matching Analysis

Following the statewide analysis, the Commonwealth consulted with the Office of Chief Counsel regarding appropriate action in light of the results of the analysis.  (See id. ¶ 15; Doc. 64-3 ¶ 6).  The Office of Chief Counsel engaged outside counsel who, in turn, retained an expert to assist in addressing the problem.  (See Doc. 64-1 ¶¶ 16-17; Marks Dep. 141:6-11).  The expert analyzed the Commonwealth's voting records, including the SURE database, to identify registrants whose eligibility to vote required additional scrutiny in terms of citizenship ("the noncitizen matching analysis").  (See Doc. 66 ¶¶ 62-65).  Based on the expert's analysis, the Commonwealth mailed 7,702 letters to registrants reminding them of the eligibility requirements for voting and 11,198 letters requesting registrants affirm their eligibility to vote.  (See Doc. 66 ¶¶ 64-70; Doc. 64-1 ¶¶ 18-22).  The Commonwealth retained all responses confirming citizenship, forwarded requests for cancellation from noncitizens to the appropriate county, and notified counties of the need to investigate eligibility of the nonrespondents.  (See Doc. 66 ¶¶ 71-74; see also Doc. 64-1 ¶ 22).

### D.      PILF's Request

In response to publicity surrounding the glitch, PILF sent Marks a letter on October 23, 2017, requesting the Bureau of Commissions, Elections and Legislation ("the Bureau") provide PILF copies of or the ability to inspect four categories of records pursuant to NVRA.  (See Doc. 66 ¶¶ 8-9; Doc. 63 ¶ 1).  PILF sought:

> 1.   Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official

information source, including information obtained from the various agencies within the U.S. Department of Homeland Security and [PennDOT] since January 1, 2006.  This request extends to all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action. . . . This request includes all voter records that were referenced in recent news media reports regarding individuals improperly exposed to registration prompts due to a "glitch" in PennDOT's Motor Voter compliance system.  At least one news report claims that "a Pennsylvania Department of State review is underway."  I seek all voter records contained in this review.

2.  All documents and records of communication received or maintained by your office from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility.  Please include any official records indicating maintenance actions undertaken thereafter.

3.  All documents and records of communication received or maintained by your office from jury selection officials—state and federal—since January 1, 2006 referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call. This request seeks copies of the official referrals and documents indicating where your office or local registrars matched a claim of noncitizenship to an existing registered voter and extends to the communications and maintenance actions taken as a result that were memorialized in any written form.

4.  All communications regarding list maintenance activities relating to #1 through 3 above to appropriate local prosecutors, Pennsylvania Attorney General, Pennsylvania State Police, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation.

Appx029

(See Doc. 66 ¶ 9; Doc. 1-9).  The Commonwealth denied PILF's request claiming NVRA applied only to records relating to statutorily mandated removal programs, not the records sought by PILF.  (See Doc. 66 ¶ 17; Doc. 72 ¶ 17; see also Doc. 1-11).

PILF filed a lawsuit against the Commonwealth in this court, asserting the Commonwealth's denial of PILF's records request violated NVRA.  We held PILF falls within NVRA's "zone of interests" and had standing, but that it failed to comply with the statute's notice requirements.  See Pub. Int. Legal Found. v. Boockvar, 370 F. Supp. 3d 449, 454-58 (M.D. Pa. 2019).  Accordingly, we dismissed the lawsuit.  See id.

After fulfilling the notice requirement, (see Doc. 66 ¶¶ 18-19), PILF refiled its NVRA claims in the instant lawsuit.  The Commonwealth subsequently moved to dismiss, reiterating its claim that the records sought by PILF did not fall within the ambit of NVRA's disclosure requirement and, in the alternative, the records sought by PILF are protected by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721.  Our decision disposing of the Commonwealth's motion held that the Commonwealth's investigation of the glitch falls within the ambit of NVRA's disclosure requirement but that records and derivative lists created during the investigation are protected by DPPA to the extent they include personal information obtained by PennDOT in connection with a motor vehicle record.  (See Doc. 23 at 17; Doc. 24 ¶ (1)(a)).

Following our Rule 12(b)(6) decision, the Commonwealth endeavored to comply with PILF's requests.  We detail the particulars of the Commonwealth's efforts in the discussion section below.  Both PILF and the Commonwealth now

move for summary judgment contesting whether, as a matter of law, those efforts

were sufficient.  The motions are fully briefed and ripe for disposition.

## II.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden

of proof tasks the nonmoving party to come forth with "affirmative evidence,

beyond the allegations of the pleadings," in support of its right to relief.  See Pappas

v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light

most favorable to the non[]moving party and draw all reasonable inferences in that

party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).

This evidence must be adequate, as a matter of law, to sustain a judgment in favor

of the nonmoving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.

See Pappas, 331 F. Supp. 2d at 315.

Courts may resolve cross-motions for summary judgment concurrently.  See

Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson

v. FedEx, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET

AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).  When doing so, the

court is bound to view the evidence in the light most favorable to the nonmoving

party with respect to each motion.  FED. R. CIV. P. 56; <u>Lawrence</u>, 527 F.3d at 310

(quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   <u>Discussion</u>

NVRA requires states to "make available for public inspection . . . and

photocopying . . . all records concerning the implementation of programs and

activities conducted for the purpose of ensuring the accuracy and currency of

official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  PILF brings the present

action against the Commonwealth under Section 20510 of NVRA, which grants

private parties aggrieved by a state's violation of NVRA, including its disclosure

provision, the right to seek declaratory and injunctive relief.  See <u>id.</u> § 20510.  The

gravamen of both parties' instant motions is whether the Commonwealth has fully

complied with PILF's four record requests made pursuant to Section 20507.  We

will address each request *seriatim*.

### A.     **Request 1: Potential Noncitizens**

PILF's first request seeks documents related to registrants who the

Commonwealth identified as potentially not satisfying the citizenship requirements

for registration since January 1, 2006.  (<u>See</u> Doc. 66 ¶ 9; Doc. 1-9).  The

Commonwealth provided PILF with copies of the form letters sent to registrants

asking them to affirm their eligibility to vote, statements to the press, summary data

concerning the responses to the letters, and communications with county election

officials.  (<u>See</u> Doc. 63 ¶ 4; <u>see also</u> Doc. 64-1 ¶ 29).  The Commonwealth claims to

have provided PILF with all documents related to the Commonwealth's analysis of

Appx032

the glitch not derived from or including personal information obtained from PennDOT motor vehicle records.  (See Doc. 64 at 12).

PILF mounts several attacks on the accuracy of the Commonwealth's assertion, averring the Commonwealth (1) adopted an impermissibly narrow construction of the scope of PILF's request, (2) failed to disclose records contained in the SURE database that fall within the scope of the request, and (3) adopted an overly broad construction of our previous ruling on the scope of protections afforded personal information by DPPA in order to justify withholding records from PILF.  (See Doc. 67 at 10-18; Doc. 71 at 2-3).  PILF also assails the Commonwealth's insinuations that records related to the noncitizen matching analysis are protected by attorney-client privilege and that the Commonwealth has the right to refuse certain disclosure requests on privacy grounds.  (See Doc. 67 at 18-23; Doc. 71 at 5-12, 15-17).

### 1.    *Scope of the Request*

The Commonwealth denies narrowing the scope of PILF's request and insists the documents disclosed to PILF represent the only nonprotected documents within the universe of documents covered by PILF's request.  (See Doc. 64 at 12.)  To support this contention, the Commonwealth points to Marks' assertion the Commonwealth "received no documents within the relevant period from the Department of Homeland Security or any other official government source identifying potential non-citizens on the voting rolls."  (See Doc. 64-1 ¶ 30).  The implication of Marks' statement is that the only efforts undertaken in the relevant period to identify potential noncitizens are the initial analysis and noncitizen

Appx033

matching analysis, the records of which the Commonwealth believes are protected by DPPA.[6]

PILF argues that the Commonwealth's disclosure is incomplete, but PILF is unable to provide any proof that additional records exist and are in the possession of the Commonwealth.  Although PILF suggests that the Commonwealth has not shown it conducted a search for the requested documents, we interpret Marks' statement to imply that the Commonwealth did, in fact, conduct the requisite search but the search produced nothing.  (See Doc. 64-1 ¶ 30).  PILF's mere speculation is not evidence and cannot satisfy its Rule 56 burdens.  See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citing Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109–10 (3d Cir. 1985)).  PILF casts a wide net in its first request, but a wide net does not guarantee a large catch.

### 2.   *SURE Records*

PILF claims the Commonwealth falls short of fulfilling PILF's request by not disclosing the records contained in the SURE database related to every registrant whose registration was cancelled because of their noncitizen status.  (See Doc. 67 at 12).  The Commonwealth asserts the records contained in the SURE database are not subject to disclosure, citing a district court holding there is no obligation under NVRA to disclose voting records or other related documents when those documents are not used to update or maintain the voter rolls.  (See Doc. 73 at 7-8 (citing True the Vote v. Hosemann, 43 F. Supp. 3d 693 725-29 (S.D. Miss. 2014))).

---

[6] In contrast, the statewide analysis was clearly a cataloguing of registrants who had already been identified as noncitizens.  (See Doc. 64-1 ¶ 33).

Appx034

The principle evoked in <u>True the Vote</u> strikes us as sound but inapplicable to the SURE database because the Commonwealth, by its own admission, uses the SURE database to maintain the accuracy and currency of official lists of eligible voters.  (<u>See</u> Doc. 66 ¶ 24; Doc. 72 ¶ 24).  For example, the Commonwealth used the SURE database in conjunction with PennDOT records to conduct the noncitizen matching analysis.  (<u>See</u> Doc. 66 ¶¶ 49-51, 55, 59, 62, 65).  The Commonwealth then used the results of the noncitizen matching analysis to send letters to registrants asking them to affirm their eligibility to vote.  (<u>See</u> <u>id.</u> ¶¶ 62-74).  Even if ultimate responsibility for removing voters from the rolls lays in the hands of individual counties, <u>see</u> 25 PA. CONS. STAT. § 1203(a); (Doc. 64-1 ¶¶ 5-6; <u>see also</u> Doc. 66 ¶ 74), the database was nonetheless used to augment the reliability of voter rolls by identifying registrants in need of further "scrutiny" by the counties, (<u>see</u> Marks Dep. 140:21-141:11; <u>see also</u> Doc. 66 ¶ 63).

NVRA requires states to disclose "all records" related to any effort by the state to ensure "the accuracy and currency" of voter registration lists.  <u>See</u> 52 U.S.C. § 20507(i)(1).  As we explained in our decision on the Commonwealth's motion to dismiss, "[t]he word 'all' is expansive." (<u>See</u> Doc. 23 at 11 (citing <u>Project Vote/Voting for Am., Inc. v. Long</u>, 682 F.3d 331, 336 (4th Cir. 2012))).  Congress intended NVRA's disclosure obligations to reach a broad array of "programs and activities."  <u>See</u> 52 U.S.C. § 20507(i)(1); (<u>see also</u> Doc. 23 at 12).  The Commonwealth's use of the SURE database to maintain the accuracy and currency of county voting registration lists brings the records held in that database within the universe of disclosable records under NVRA.  <u>See</u> 52 U.S.C. § 20507(i)(1).  Unless disclosure is blocked by some

Appx035

other law or legal principle, the Commonwealth must disclose the requested SURE records.

### 3.   *DPPA Protections*

PILF's third attack is on the Commonwealth's invocation of DPPA protections.  (See Doc. 71 at 12-15).  Our order granting in part and denying in part the Commonwealth's motion to dismiss held the Commonwealth was exempt from disclosing "records containing protected personal information obtained by the Department of Motor Vehicles in connection with a motor vehicle record as defined in the Driver's Privacy Protection Act."  (See Doc. 24 ¶ 1(a)).  In the accompanying memorandum, we explained that "glitch-related records and derivative lists created during the Commonwealth's investigation" were exempted from disclosure by DPPA "to the to the extent they include personal information obtained by the [Department of Motor Vehicles ("DMV")] in connection with a motor vehicle record."  (See Doc. 23 at 17).  The Commonwealth interpreted our decision to apply DPPA's protections to any record derived from or *including* personal information.  (See Doc. 64 at 12).  Accordingly, the Commonwealth withheld documents, at least in response to PILF's first request, that contained any personal information obtained or derived from DMV records.  (See id. at 12; see also Doc. 64-1 ¶ 29).

The Commonwealth's interpretation of our ruling is overbroad.  As indicated by our use of the phrase "to the extent they include," our holding applies only to the personal information obtained from DMV motor vehicle records and information derived from that personal information.  (See Doc. 23 at 17).  Our holding does not

Appx036

protect information derived from non-DMV sources even when that information is included in a record containing personal information obtained from DMV records.

When the entirety of the information in a document or other record is derived from personal information obtained from DMV records, the whole of the record may be withheld.  Nevertheless, when only some of the information is or derives from personal information obtained from DMV records, the record or document must be disclosed with only personal information or derived information redacted.  (See Doc. 23 at 14 n.3); see also Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1344-46 (N.D. Ga. 2016) (employing redaction to protect sensitive information, such as Social Security numbers and birth dates, from disclosure under NVRA); True the Vote, 43 F. Supp. 3d at 732-39 (holding NVRA does not require disclosure of all information in records related to maintenance of voter registration lists).

### 4.    *Right to Privacy*

PILF seeks the name and voting history of any registrant identified as a potential noncitizen.  (See Doc. 66 ¶ 9).  To the extent not covered by DPPA protections, the Commonwealth argues in the alternative that it has no obligation to disclose personal information under NVRA when disclosure would violate the individual's right to privacy and expose them to harassment, abuse, and accusations of criminal voting activity or immigration violations.  (See Doc. 64 at 13-15).

The expansive obligation under NVRA to disclose voting registration records gives rise to legitimate privacy concerns.  Nonetheless, we agree with the Fourth Circuit Court of Appeals' observation that the balance between privacy and

Appx037

transparency must be struck by the legislature, not the courts.  See Long, 682 F.3d at 339.  Congress struck such a balance when it enacted NVRA, deciding transparency in how states determine voter eligibility—the vital bedrock of our electoral system—is generally paramount.  See id.  Redaction—not withholding—is the appropriate tool for assuaging privacy risks.[7]

### 5.    *Privilege*

Lastly, the Commonwealth posits records related to the noncitizen matching analysis are protected by attorney-client privilege and the work-product doctrine. (See Doc. 64 at 12 n.6).  Shortly after the emergence of the glitch scandal, the Commonwealth "engaged the Office of Chief Counsel to provide legal advice concerning [the glitch], including potential voting by non-citizens."  (See Doc. 64-1 ¶ 15).  The Office of Chief Counsel retained outside counsel, who, in turn, retained an expert to review the data resulting from comparison of the SURE database with PennDOT records.  (See id. ¶ 16).  Most importantly for the litigation at hand, the Commonwealth used the noncitizen matching analysis produced by the expert as

---

[7] PILF proposes redaction as a solution, citing a recent Fourth Circuit Court of Appeals decision on a similar request by PILF.  (See Doc. 75 at 10 (citing Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections, 996 F.3d 257, 267 (4th Cir. 2021)); see also Doc. 71 at 17).  In this case, the Fourth Circuit delineates information subject to redaction as follows: (1) Social Security numbers, (2) "identities and personal information of those subject to criminal investigations," and (3) personal information of citizens initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated. See id.  We view PILF's reliance on N.C. State Bd. of Elections to indicate PILF is amenable to these privacy-related limitations on disclosure.  Moreover, we agree with the Fourth Circuit's *ratio decidendi* which appropriately balances privacy and transparency interests at issue.  The Commonwealth may redact the private personal information outlined in N.C. State Bd. of Elections from records disclosed under the NVRA.

Appx038

the basis for sending thousands of letters asking registrants to affirm their eligibility to vote.  (<u>See</u> Doc. 66 ¶¶ 62-64, 66-68; <u>see also</u> Doc. 64-1 ¶¶ 16-21).  The parties agree PILF's first request encompasses the noncitizen matching analysis.  (<u>See</u> Doc. 64 at 11-12; Doc. 71 at 5).

   PILF disclaims seeking any records involving communications between the Commonwealth and its attorneys, (<u>see</u> Doc. 71 at 7), *i.e.*, documents or records that would fall within the ambit of attorney-client privilege, <u>see</u> <u>*In re* Teleglobe</u> <u>Commc'ns Corp.</u>, 493 F.3d 345, 359 (3d Cir. 2007) (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 68 (AM. L. INST. 2000)).  PILF only seeks the records produced as part of the noncitizen matching analysis, (<u>see</u> Doc. 71 at 7), an activity that involved only the expert and no attorneys, (<u>see</u> Doc. 66 ¶¶ 62-64; <u>see also</u> Doc. 64-1 ¶¶ 15-18).  We agree the noncitizen matching analysis is not protected by attorney client-privilege.

   The work product doctrine protects certain materials made or prepared by an attorney or their agent in anticipation of litigation.  <u>See</u> FED. R. CIV. P. 26(b)(3); <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947); <u>*In re* Cendant Corp. Sec. Litig.</u>, 343 F.3d 658, 662 (3d Cir. 2003).  Rule 26(b)(3)(A) states in pertinent part: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" except upon a showing of substantial need and undue hardship.  <u>See</u> FED. R. CIV. P. 26(b)(3)(A).  The work-product doctrine extends to purely factual materials, as long as the materials are prepared in contemplation of litigation.  <u>See</u> <u>Martin v. Bally's Park</u> <u>Place Hotel & Casino</u>, 983 F.2d 1252, 1261 (3d Cir. 1993).  The party claiming

protection of the work-product doctrine bears the burden of showing the materials were prepared for anticipated litigation.  See <u>Holmes v. Pension Plan of Bethlehem Steel Corp.</u>, 213 F.3d 124, 138 (3d Cir. 2000) (citing <u>Haines v. Liggett Group, Inc.</u>, 975 F.2d 81, 94 (3d Cir. 1992)).

It is undisputed that the subject expert was an agent of the Commonwealth's outside counsel.  (<u>See</u> Doc. 64-1 ¶¶ 15-16; Doc. 64-3 ¶ 6).  PILF contends the expert did not undertake the noncitizen matching analysis in anticipation of litigation.[8] (<u>See</u> Doc. 71 at 8-12).  To invoke the protection of the work-product doctrine, the party's anticipation of litigation must be "objectively reasonable."  See <u>Martin</u>, 983 F.2d at 1260.  However, the threat does not have to be a specific threat from a specific party; the threat of litigation can be general, <u>see</u> <u>In re</u> Ford Motor Co., 110 F.3d 954, 967 (3d Cir. 1997), <u>abrogated on other grounds by</u> Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009), or prospective, <u>see</u> United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990).

As both parties acknowledge, the glitch created considerable public attention.  (<u>See</u> Doc. 66 ¶¶ 6-7, 9 n.2; Doc. 72 ¶¶ 6-7; Docs. 66-2, 66-3, 66-5).  The risk of litigation in the wake of a public scandal involving the possibility of illegal voting, coupled with an atmosphere of anxiety about election security, is obvious.  In the

---

[8] In addition, PILF argues that the noncitizen matching analysis is ineligible for protection under the work-product doctrine because the Commonwealth carried out the noncitizen matching analysis in the ordinary course of business.  (<u>See</u> Doc. 71 at 11-12).  We find this argument unsupported by anything in the record.  The relevant evidence in the record all points to the expert conducting the analysis at the impetus of outside legal counsel.  (<u>See</u> Doc. 64-1 ¶ 16; Doc. 64-3 ¶ 6; Marks Dep. 141:6-11, 142:9-16, 146:10-14, 148:4-8, 189:7-9).  No evidence suggests the analysis was a routine part of the Commonwealth's duties.

instant matter, despite the absence of a specific notice of intent to file suit, the general threat of litigation in the wake of such a resonant scandal is sufficient to invoke the work-product doctrine.  It is clear to the court that, in light of the hue and cry over the glitch, the Commonwealth developed the noncitizen matching analysis with the assistance of its expert as a means of responding to heightened scrutiny of the kind that would be imposed through the civil justice system.  See Ford, 110 F.3d at 967; Rockwell, 897 F.2d at 1266.  PILF offers a great deal of speculation but no evidence suggesting the expert conducted the noncitizen matching analysis for any purpose other than the anticipation of litigation.[9]  (See

---

[9] PILF's only citations to the factual record supporting its allegation the nonmatching citizen analysis was conducted in order to solve the glitch problem—not in preparation for litigation—are a single statement by Marks in his deposition and a press statement describing efforts to rectify the problems created by the glitch.  (See Doc. 71 at 10 (quoting Marks Dep. 115:12-21; Doc. 66-4 at 1)).  As for the first argument, PILF leans on Marks' statement that the Commonwealth "wanted to understand both the scope of the [glitch] issue and, and also the potential causes of it, so that any additional enhancements that [it] made would be effective."  (See Doc. 71 at 10 (quoting Marks Dep. 115:12-21)).  PILF misconstrues Marks' statement and divorces it from critical context.  Marks is not referring to the noncitizen matching analysis conducted by the outside expert; he is referring to the initial statewide analysis undertaken using the SURE database.  (See id. at 114:10-118:21, 146:10-14).  When Marks describes the noncitizen matching analysis, he unequivocally describes litigation concerns as motivating the analysis.  (See Doc. 64-1 ¶ 17; Marks Dep. 146:10-147:3).

18

Doc. 71 at 8-12).  The Commonwealth has met its burden of showing the records in

question are protected by the work-product doctrine because all relevant evidence

supports the Commonwealth's assertion that the expert conducted the noncitizen

matching analysis in preparation of possible litigation.  (See Doc. 64-1 ¶ 16; Doc. 64-

3 ¶ 6; Marks Dep. 141:6-11, 142:9-16, 146:10-14, 148:4-8, 189:7-9).  We also find Marks'

declaration provides sufficient information about the noncitizen matching analysis

and its origins to satisfy Rule 26(b)(5)(A). [10]  See FED. R. CIV. P. 26(b)(5)(A); see also

---

PILF likewise takes the Commonwealth's press statement out of context.
(See Doc. 71 at 10 (quoting Doc. 66-4 at 1)).  The press statement describes the
Commonwealth's overall effort to send letters to individuals who might be
noncitizens and then attributes that effort to a desire to protect election integrity.
(See id. at 1-2).  Included in the letter are two references to the expert analysis.  (See
id.)  We view this statement as merely reiterating what is already well known in this
matter: that the expert analysis provided the basis for the Commonwealth's letters
to potential noncitizen registrants.  (See id.)  An *ex-post* statement vaguely relating
the noncitizen matching analysis to the overall effort to address the glitch problem
says nothing about why the expert analysis was undertaken in the first place.  (See
id.)  Nor does it contraindicate the assertion that the noncitizen matching analysis
was undertaken at the behest of the Commonwealth's outside counsel.  (See id.)

[10] PILF cursorily asserts the Commonwealth waived the work-product
doctrine by disclosing the existence of the noncitizen matching analysis.  We find
this argument to be without merit.  (See Doc. 67 at 22-23).  The Commonwealth
disclosed the existence of the analysis and the results of the analysis, but it did not
publicly disclose the individual records and documents produced by the analysis,
*i.e.*, the focus of PILF's requests.

Doc. 64-1 ¶¶ 15-18).  Hence, the work-product doctrine shields the records produced in conjunction with the noncitizen matching analysis from disclosure.[11]

### B.    Request 2: Cancellation Requests

PILF also seeks documents related to noncitizens who requested removal from voter registration lists since January 1, 2006.  (See Doc. 66 ¶ 9; Doc. 1-9).  The Commonwealth provided PILF with copies of county records supplied to the Commonwealth in which registrants requested cancellation of their voter registration due to noncitizenship.  (See Doc. 63 ¶¶ 7-8; see also Doc. 64-1 ¶¶ 31-35).  The Commonwealth also disclosed to PILF a redacted list of 1,160 purported noncitizens who requested to be removed from the voter registration lists.  (See Doc. 63 ¶ 8; see also Doc. 64-1 ¶ 34; Doc. 66-10).  PILF alleges these documents and records do not fully satisfy its request.  (See Doc. 71 at 3-4).

Cancellation of voter registrations is the sole domain of Pennsylvania counties.  See 25 PA. CONS. STAT. § 1203(a); (see also Doc. 64-1 ¶¶ 11, 32-33).  The Commonwealth only allows for voter registration list maintenance programs to target registrants who are deceased or have relocated.  See 25 PA. CONS. STAT. § 1901(a).  Consequently, the Commonwealth claims the limited number of records

---

[11] Our holding on this point should not be construed as stating that the work-product doctrine applies to: (1) the analysis done by the Commonwealth before retention of the expert, (2) records used by the expert to conduct their analysis, or (3) the thousands of letters sent to potential noncitizen registrants based upon the results of the noncitizen matching analysis.  The work-product doctrine applies solely to the documents and records produced by the expert at the request of counsel in anticipation of litigation.

Appx043

turned over to PILF represent the entire universe of records within the scope of Request 2—the universe is simply small.  (See Doc. 73 at 9).

PILF insists the Commonwealth truncated the scope of its request but produces no evidence to support its contention.  PILF points to Marks' assertion before the Pennsylvania House State Government Committee that "[t]he 1,160 records identified were from 46 counties" as implying the Commonwealth is withholding responses from additional counties.  (See Doc. 71 at 4 (citing Doc. 66-2 at 1)).  But PILF's contention relies on a misreading of Marks' statement: Marks is referring to the 1,160 registrants pulled from the SURE database who requested cancellation of their own registrations, not the Commonwealth's request for counties to submit copies of the actual cancellation request letters received by county officials.  (See Doc. 64-1 ¶¶ 33-34).  Marks attests to the Commonwealth receiving records related to cancellation requests from only three counties, (see Doc. 64-1 ¶¶ 11, 33), and the parties agree the Commonwealth disclosed those records to PILF, (see Doc. 63 ¶ 7).  Moreover, the parties agree that the list of 1,160 noncitizens who requested cancellation is the result of searching the SURE database.  (See Doc. 66 ¶¶ 55, 59; Doc. 72 ¶¶ 55, 59).  The Commonwealth disclosed that list to PILF, albeit in redacted form.  (See Doc. 63 ¶ 8; Doc. 70 ¶ 8).  There is no genuine dispute of fact as to whether the SURE database was searched and the results provided to PILF—it was, and they were.

PILF's objection to the Commonwealth's extensive redaction of the list has merit.  The list provided to PILF is a veritable sea of black ink and contains no voting histories.  (See Doc. 66-10).  As discussed in relation to Request 1, the

21

Commonwealth can only redact information in its records if that information is specifically protected by DPPA, <u>see</u> *supra* at 13-14, or necessary for protection of privacy, <u>see</u> *supra* at 14-15.  The Commonwealth admits the SURE database contains the voting histories of registrants.  (<u>See</u> Doc. 66 ¶ 60; Doc. 72 ¶ 60).  Voting histories cannot derive from DMV records nor are they especially private since they only document when an individual voted in a particular election.  (<u>See</u> Doc. 66-1, Marks Dep. 105:3-106:24; <u>see also</u> Doc. 72 ¶ 26).  The Commonwealth must disclose the voting histories of the 1,160 noncitizens who requested cancellation.

### C.  Request 3: Jury-Selection Letters

PILF's third request seeks records provided by jury-selection officials to the Commonwealth referencing individuals who attempted to avoid jury duty by claiming to be noncitizens.[12]  (<u>See</u> Doc. 66 ¶ 9; Doc. 1-9).  PILF asserts this information is relevant to its interest in noncitizen voting because the Commonwealth draws its jury pools from voter registration lists; therefore, a noncitizen summoned for jury duty must, by definition, be registered to vote.  <u>See</u> 42 PA. CONS. STAT. § 4521.  PILF seeks all such records from January 1, 2006 to the present.  (<u>See</u> Doc. 66 ¶ 9; Doc. 1-9).

The Commonwealth acknowledges occasionally receiving letters from jury-selection officials related to individuals who purported to be noncitizens.  (<u>See</u> Doc. 63 ¶ 10; Doc. 64-1 ¶ 37).  As maintenance of voter registration lists is reserved to the counties, the Commonwealth generally forwards those letters to the relevant

---

[12] Only United States citizens can serve on juries in Pennsylvania.  <u>See</u> 42 PA. CONS. STAT. § 4501.

Appx045

county.  (See Doc. 63 ¶ 10; Doc. 64-1 ¶ 38).  Nonetheless, the Commonwealth asserts it conducted a search for letters related to jury selection received between October 2015 to March 2019 but found none.  (See Doc. 64-1 ¶ 40).  The Commonwealth determined the timeframe for the search by counting back two years from PILF's original NVRA request in October 2017.  (See id.)

The timeframe of the Commonwealth's search is insufficient.  NVRA requires states to "maintain for at least 2 years" all records related to maintaining voter registration lists.  See 52 U.S.C. § 20507(i)(1).  The two-year limitation only applies to the maintenance of records; it does not apply to the duty to disclose those records.  See id.  If a state chooses to maintain records longer than the two-year minimum, the state is obliged to disclose those records should they be relevant to an inquiry.  See Ill. Conservative Union v. Illinois, No. 20 C 5542, 2021 WL 2206159, at *7 n.3 (N.D. Ill. June 1, 2021); Judicial Watch, Inc. v. Lamone, 399 F. Supp. 3d 425, 441 (D. Md. 2019).

### D.    Request 4: Law Enforcement Correspondence

PILF's fourth request seeks all records relating to any communication between the Commonwealth and law enforcement concerning alleged noncitizen voting or voter registration.  (See Doc. 66 ¶ 9; Doc. 1-9).  The Commonwealth claims it never engaged in any such communications and therefore lacks any records to disclose.  (See Doc. 64 at 17-18; Doc. 64-1 ¶¶ 42-43).  PILF quibbles about the Commonwealth's framing of its request, alleging the Commonwealth limited its search to correspondence related to "voting activities" instead of the requested "list maintenance activities," but we find this to be a distinction without a difference.

23

(See Doc. 70 ¶ 12 (quotation omitted); see also Doc. 75 at 6).  Otherwise, PILF fails to identify any evidence suggesting the Commonwealth failed to comply with PILF's fourth request.  (See Doc. 71 at 5; Doc. 67 at 14).  There is no genuine dispute of fact as to whether the Commonwealth has fully satisfied its disclosure obligations with regard to PILF's fourth request.

### E.      Defendant Marks

The Commonwealth asserts in its motion for summary judgment that Marks is an improperly named defendant.  (See Doc. 64 at 18).  However, the Commonwealth provides no case law supporting its assertion that Acting Secretary Chapman is the only proper defendant in this suit.  (See Doc. 64 at 18; Doc. 74 at 14-15).  Consequently, the Commonwealth has not met its Rule 56 burden for showing Marks is an improperly named defendant.

### G.      Permanent Injunction

PILF asks the court to grant permanent injunctive relief compelling the Commonwealth to comply with future disclosure requests under NVRA.  (See Doc. 71 at 19-22).  Before the court may grant permanent injunctive relief, PILF must prove, first, that it will suffer irreparable injury absent the requested injunction; second, that legal remedies are inadequate to compensate that injury; third, that balancing of the respective hardships between the parties warrants a remedy in equity; and fourth, that the public interest is not disserved by an injunction's issuance.  See eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (citations omitted).  The Commonwealth contests PILF's request for permanent injunctive relief on both procedural and substantive grounds.

As a preliminary matter, the Commonwealth asserts PILF failed to seek a permanent injunction in its complaint.  (<u>See</u> Doc. 74 at 13-14).  We construe the second paragraph of PILF's complaint, which avers "Plaintiff seeks injunctive relief to compel Defendants to comply with Section 8 of NVRA," to encompass a request for both current and prospective injunctive relief.  (<u>See</u> Doc. 1 ¶ 2).  Nevertheless, we find PILF has not proven a likelihood of irreparable injury.  <u>See</u> <u>MercExchange</u>, 547 U.S. at 391.  As we referenced in our decision on the Commonwealth's motion to dismiss, the precise scope of NVRA's disclosure provision is largely untested in the courts of the Third Circuit.  (<u>See</u> Doc. 23 at 9).  We view the Commonwealth's failure to fully comply with PILF's requests as an unfortunate consequence of the dearth of applicable case law, not intentional obstruction or negligent effort.  After our first opinion defined the scope of NVRA to include the Commonwealth's response to the glitch, the Commonwealth made a good-faith, if imperfect, effort to comply with PILF's requests.  The Commonwealth indicates a similar good-faith effort will follow our present opinion now that we have more fully illuminated its obligations.  (<u>See</u> Doc. 74 at 13-14 & n.10).  Hence, PILF's fears of baseless future denials and withholding are purely speculative.  Moreover, should the Commonwealth fail to satisfy its disclosure obligations in the future, NVRA already includes an adequate remedy at law.  <u>See</u> 52 U.S.C. § 20510.  We will deny PILF's motion for summary judgment on this issue.

## IV.   <u>Conclusion</u>

The Commonwealth has met its Rule 56 burden regarding PILF's first request insofar as the noncitizen matching analysis is protected by the work-

Appx048

product doctrine and fourth request in its entirety.  PILF has met its Rule 56

burden regarding its first request to the extent that the SURE database is subject to

disclosure, records including DPPA-protected information must be redacted not

withheld, and personal information about registrants must be disclosed to the

extent that the information is not "uniquely personal information."  PILF has also

met its Rule 56 burden regarding its second request, insofar as the Commonwealth

excessively redacted the records provided and withheld the voting histories of the

registrants at issue, and its third request, insofar as the Commonwealth

impermissibly truncated the timeframe covered by the request.  Accordingly, we

will grant in part and deny in part both parties' motions for summary judgment.  An

appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    March 31, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | **CIVIL ACTION NO. 1:19-CV-622** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LEIGH M. CHAPMAN, Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions,** | : : : : : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 31st day of March, 2022, upon consideration of the parties'

cross-motions (Docs. 62, 65) for summary judgment, and the parties' respective

briefs in support of and opposition thereto, and for the reasons set forth in the

accompanying memorandum of today's date, it is hereby ORDERED that:

1. Defendants' motion (Doc. 62) is GRANTED regarding plaintiff's first disclosure request insofar as the noncitizen matching analysis is protected by the work-product doctrine and fourth disclosure request in its entirety. The motion (Doc. 62) is otherwise DENIED.

2. Plaintiff's motion (Doc. 65) is GRANTED regarding plaintiff's first request to the extent that the SURE database is subject to disclosure, records including DPPA-protected information must be redacted not withheld, and personal information about registrants must be disclosed to the extent that the information is not "uniquely personal information." The motion (Doc. 65) is also GRANTED regarding plaintiff's second disclosure request, insofar as defendants excessively redacted the records provided and withheld the voting histories of the registrants at issue, and third disclosure request insofar as defendants impermissibly truncated the timeframe covered by the request. The motion (Doc. 65) is otherwise DENIED.

3.      Defendants are DIRECTED to comply with plaintiff's first, second, and third disclosure requests to the extent required by the National Voter Registration Act as set forth more fully in our accompanying memorandum and this order.

4.      The Clerk of Court is DIRECTED to enter judgment in favor of defendants on Count I regarding plaintiff's first request insofar as the noncitizen matching analysis is protected by the work-product doctrine and plaintiff's fourth request in its entirety.  The Clerk of Court is further DIRECTED to enter judgment in favor of plaintiff on Count I regarding all other requests.

5.      The Clerk of Court is directed to CLOSE this case.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

AO 450 (Rev. 11/11)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania

| | |
|---|---|
| The Public Interest Legal Foundation _____ | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No.  1:19-CV-622 |
| Boockvar et al _____ | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☑  other:  Judgment is ENTERED in favor of defendants on Count I regarding plaintiff's first request insofar as the
noncitizen matching analysis is protected by the work-product doctrine and plaintiff's fourth request in its
entirety. Judgment is ENTERED in favor of plaintiff on Count I regarding all other requests.

☐  tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐   tried by Judge _____ without a jury and the above decision
was reached.

☑  decided by Judge   Christopher C. Conner _____

      Order filed March 31, 2022 (Doc 84)

Date:  March 31, 2022 _____

                                  *CLERK OF COURT*

                                 */s/ M. Walker, Deputy Clerk*

                                   *Signature of Clerk or Deputy Clerk*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | **CIVIL ACTION NO. 1:19-CV-622** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ALBERT SCHMIDT**, Acting Secretary of the Commonwealth of Pennsylvania,[1] and **JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

### <u>ORDER</u>

AND NOW, this 27th day of February, 2023, upon consideration of the motion (Doc. 88) for clarification and partial reconsideration filed by defendants Albert Schmidt, Acting Secretary of the Commonwealth of Pennsylvania, and Jonathan M. Marks, Deputy Secretary for Elections and Commissions (collectively the "Commonwealth"), wherein the Commonwealth seeks clarification regarding its disclosure obligations under our memorandum and order dated March 31, 2022, as well as reconsideration of our conclusion as to applicability of the work-product doctrine, (see Doc. 89 at 1-2),[2] and the court noting preliminarily the matter *sub*

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Schmidt is automatically substituted as a defendant for former Secretary Leigh M. Chapman.  See FED. R. CIV. P. 25(d).

[2] The Commonwealth protectively filed a second motion, styled as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e), (see Doc. 91), in answer to plaintiff's challenge to the stylization of the first motion.  The motions raise the same arguments, and we will consider them together.

*judice* concerns the Commonwealth's duty to disclose certain voting records under

Section 20507(i)(1) of the National Voter Registration Act ("NVRA"), 52 U.S.C.

§ 20507(i)(1), in response to requests from plaintiff Public Interest Legal Foundation

("PILF"), and further noting the purpose of a motion for clarification is "to explain

or clarify something ambiguous or vague about a court's decision, not to alter or

amend it," see Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co., No. 11-247,

2014 WL 4060309, at *14 (W.D. Pa. Aug. 15, 2014) (citation omitted); see also Ebert

v. Township of Hamilton, No. 15-7331, 2018 WL 4961467, at *2 (D.N.J. Oct. 15, 2018)

(citation omitted), and motions to alter or amend judgment under Rule 59(e) must

rely on at least one of the following three grounds: "(1) an intervening change in

controlling law; (2) the availability of new evidence; or (3) the need to correct clear

error of law or prevent manifest injustice," Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir.

2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)), and, taking the

Commonwealth's concerns *seriatim*,[3] *first*, the court observing the Commonwealth

seeks clarification or reconsideration as to footnote eleven of our memorandum,

(see Doc. 89 at 7-10; Doc. 92 at 4-8), which states, in relevant part, that our holding

regarding applicability of the work-product doctrine to a particular class of records

"should not be construed as stating the work-product doctrine applies to . . . records

used by the expert to conduct their analysis," (see Doc. 83 at 19-20 & n.11), and the

Commonwealth argues the court erred by "concluding that the compilation of

---

[3] The parties have reached an agreement mooting the Commonwealth's
request for clarification regarding "the SURE database." (See Doc. 92 at 11 n.6;
Doc. 122 at 8). We therefore need not address that issue herein.

Appx054

records used by a consulting expert are required to be disclosed," (see Doc. 92 at 7), and the court finding the Commonwealth has not identified clear error of law or risk of manifest injustice as to footnote eleven but agreeing to offer clarification in light of the Commonwealth's expressed confusion;[4] *second*, the court observing the Commonwealth seeks clarification regarding whether it must disclose names and addresses of individuals to whom it sent letters regarding their possible status as noncitizen voters[5] and, if it must disclose such information, the scope of permissible redactions, (see Doc. 89 at 3-5 & n.2; Doc. 92 at 8-11), and further observing names and addresses of letter recipients fall within the scope of what must be disclosed under Section 20507(i)(1) as the information relates to "ensuring the accuracy and

---

[4] The Commonwealth misreads footnote eleven to require it to disclose to PILF a compilation of all materials reviewed by its expert. (See Doc. 89 at 7-9; Doc. 92 at 4-8; Doc. 122 at 8-9). Our footnote includes no such requirement, and we do not understand PILF to seek disclosure of any such compilation. (See Doc. 83 at 20 n.11; Doc. 120 at 6-8). The intention of our footnote was to make clear that records otherwise subject to disclosure do not receive work-product protection merely because the expert viewed them. That is, records *created specifically* for the expert to review are protected by the work-product doctrine, (see Doc. 83 at 18-20), but the work-product doctrine does not protect records otherwise subject to disclosure created in the ordinary course of business or for purposes other than litigation, see United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990) (citations omitted); (see also Doc. 122 at 14 (disclaiming the Commonwealth has any desire to withhold "otherwise discoverable information . . . simply because it was provided to a consulting expert"). To be clear: footnote eleven does *not* require the Commonwealth to disclose "the compendium of records that outside counsel confidentially provided to the consulting expert," (see Doc. 122 at 8); it merely explains records *otherwise* subject to disclosure are not exempted from the order merely because the expert laid eyes on them.

[5] We note PILF originally sought the letters sent to said individuals, but the Commonwealth represents the letters exist only as templates sent using a mail-merge process; the Commonwealth therefore offers to disclose a "list of recipient names and addresses" in lieu of the individualized letters. (See Doc. 89 at 4 n.2).

Appx055

currency of official lists of eligible voters," see 52 U.S.C. § 20507(i)(1), and the

Commonwealth correctly reads footnote seven to authorize redaction of said

disclosures to protect certain personal information, (see Doc. 89 at 3 (citing Doc. 83

at 15 n. 7); Doc. 92 at 8-9 (same)), and the court finding the Commonwealth has not

identified clear error of law or risk of manifest injustice concerning footnote seven,

but clarification is necessary because the Commonwealth overreads the breadth of

permissible redactions;[6] and *lastly*, the court observing the Commonwealth seeks a

declaration "that the completed cancelation forms are not proof of non-citizenship,"

---

[6] Footnote seven authorizes the Commonwealth to redact certain information from its disclosures to address privacy concerns. (See Doc. 83 at 15 n.7). Namely, we adopted the redaction scheme employed by the Court of Appeals for the Fourth Circuit in a similar case, (see id. (citing Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections, 996 F.3d 257, 267 (4th Cir. 2021))), in which the court authorized the North Carolina Board of Elections to redact from voting records disclosed under the NVRA "(1) Social Security numbers, (2) 'identities and personal information of those subject to criminal investigations,' and (3) personal information of citizens initially identified as potentially failing to meet the citizenship requirement for voter registration but ultimately exonerated." N.C. State Bd. of Elections, 996 F.3d at 267). The Commonwealth now suggests footnote seven authorizes redaction of "names, addresses, and other personal information of persons who received the letters and who either affirmed their eligibility to vote or were not confirmed to be noncitizens" from the list of recipients. (See Doc. 89 at 3-5; Doc. 92 at 8-10). This reading is overbroad. The Commonwealth may redact names and addresses of potential noncitizen registrants who affirmed their eligibility to vote. As the Fourth Circuit noted, these individuals could face "long-standing personal and professional repercussions" by being wrongly associated with noncitizen voting. See N.C. State Bd. of Elections, 996 F.3d at 267. However, names and addresses of individuals who responded to the letter by cancelling their voter registration, or who failed to reply to the letter or have not been confirmed to be citizens, must be disclosed. Neither category of individuals was "exonerated." See id. We recognize such disclosures affect the privacy of these individuals, but Congress prioritized transparency over privacy in crafting the NVRA's broad disclosure requirements. (See Doc. 83 at 14-15 (citing Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 339 (4th Cir. 2012))).

Appx056

(see Doc. 89 at 5; Doc. 92 at 11), and the court finding the request is not properly

before the court, see Arizona v. City of Tucson, 761 F.3d 1005, 1010 (9th Cir. 2014)

("[R]equests for declaratory judgment are not properly before the court if raised

only in passing, or by motion." (citation omitted)); Hubay v. Mendez, 500 F. Supp.

3d 438, 443 n.2 (W.D. Pa. 2020) (citation omitted), and the court concluding the

Commonwealth has not identified any clear error or risk of manifest injustice

meriting reconsideration under Rule 59(e), but that the clarifications provided

*supra* are appropriate under the circumstances,[7] it is hereby ORDERED that:

---

[7] PILF files a show-cause motion (Doc. 121) averring that the Commonwealth failed to timely disclose certain "supplemental information" and requesting that the court sanction the Commonwealth under Federal Rule of Civil Procedure 11(c)(2). (See Doc. 121 at 1-3). The Commission, in turn, moves to strike PILF's motion, *inter alia*, for failing to comply with the notice requirement of Rule 11(c)(2). (See Doc. 124 at 1-2). Despite being styled as a "motion to show cause," the first sentence of PILF's motion announces PILF "moves the court to impose sanctions [on the Commonwealth]," (see Doc. 121 at 1), and, accordingly, we construe the motion as one for sanctions under Rule 11. PILF admits it did not comply with Rule 11's safe-harbor provision. See Hampton v. Wetzel, No. 1:14-CV-1367, 2017 WL 895568, at *2 (M.D. Pa. Mar. 7, 2017) (Conner, C.J.). It raises two arguments in defense of this failure, the first of which we have already rejected, *viz.*, its claim this is not a "sanctions" motion at all. PILF also broadly contends that giving notice to the Commonwealth would have been futile. (See Doc. 126 at 1-5). But there is nothing in the record to support this contention. To the contrary, PILF acknowledges that the Commonwealth turned over the supplemental information, at least in part, mere hours after PILF filed its motion. (See id. at 3). Assuming *arguendo* that PILF's motion satisfied Rule 11(c)(2), we would nevertheless exercise our discretion to deny the motion due to the lack of any indication the Commonwealth acted unreasonably. Hence, we will deny the motion for sanctions. See Schaefer Salt, 542 F.3d at 99 ("If the twenty-one day period is not provided, the motion must be denied.").

Appx057

1.  The Commonwealth's motion (Doc. 88) for clarification and partial reconsideration is GRANTED to the extent that clarification has been provided herein.  The motion is otherwise DENIED.

2.  The Commonwealth's motion (Doc. 91) to amend or alter judgment is DENIED.

3.  PILF's motion (Doc. 121) is CONSTRUED as a motion for sanctions under Federal Rule of Civil Procedure 11 and is DENIED as so construed.

4.  The Commonwealth's motion (Doc. 123) to strike PILF's motion (Doc. 121) for sanctions is DENIED as moot.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 1:19-CV-00622** |
| | : | |
| **AL SCHMIDT, in his official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions,** | : | **JUDGE CONNER** |
| | : | **ELECTRONICALLY FILED** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## NOTICE OF APPEAL

Notice is hereby given pursuant to Federal Rule of Appellate Procedure 4 that Defendants Acting Secretary of the Commonwealth Al Schmidt and Deputy Secretary for Elections and Commissions Jonathan M. Marks appeal to the United States Court of Appeals for the Third Circuit from the final judgment entered on February 28, 2023 (ECF 133).

Respectfully submitted,

/s/ Donna A. Walsh

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Daniel T. Brier
Donna A. Walsh
Counsel for Defendants, Acting Secretary of the Commonwealth Al Schmidt and Deputy Secretary for Elections and Commissions Jonathan M. Marks

Dated: March 29, 2023

## **CERTIFICATE OF SERVICE**

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing

Notice of Appeal was served upon the following counsel of record via the Court's

ECF system on this 29th day of March 2023:

>Kaylan Phillips, Esquire
>Noel H. Johnson, Esquire
>Public Interest Legal Foundation
>32E Washington Street, Suite 1675
>Indianapolis, IN 46204
>
>Linda A. Kerns, Esquire
>Law Offices of Linda A. Kerns, LLC
>1420 Locust Street, Suite 200
>Philadelphia, PA 19102

/s/ Donna A. Walsh
Donna A. Walsh

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 1:19-CV-00622** |
| | : | |
| **AL SCHMIDT, Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, Deputy Secretary for Elections and Commissions,** | : | **CHIEF JUDGE CONNER** |
| | : | **ELECTRONICALLY FILED** |
| | : | |
| **Defendants.** | : | |

## NOTICE OF CROSS APPEAL

The PUBLIC INTEREST LEGAL FOUNDATION appeals to the United States Court of Appeals for the Third Circuit from the final judgment entered on March 31, 2022 (ECF 85) as clarified by the order entered on February 28, 2023 (ECF 133).

Respectfully submitted,

*/s/ Linda A. Kerns*
Linda A. Kerns
Counsel for Plaintiffs,
The Public Interest Legal Foundation

Dated: March 30, 2023

Law Offices of Linda A. Kerns, LLC
1420 Locust Street, Suite 200
Philadelphia, PA 19102
(215) 731-1400

## <u>CERTIFICATE OF SERVICE</u>

I, Linda A. Kerns, hereby certifies that a true and correct copy of the foregoing Notice of Cross Appeal was served upon the following counsel of record via the Court's ECF system on this 30th day of March 2023:

> Daniel T. Brier
> Donna A. Walsh
> Myers, Brier & Kelly, LLP
> 425 Biden Street, Suite 200
> Scranton, PA 18503

> */s/ Linda A. Kerns*
> Linda A. Kerns

2

RECAP Actions

APPEAL,CLOSED,HBG,SETOFFNS,SPADFORM,STANDARD

# United States District Court
## Middle District of Pennsylvania (Harrisburg)
## CIVIL DOCKET FOR CASE #: 1:19-cv-00622-CCC

The Public Interest Legal Foundation v. Boockvar et al
Assigned to: Chief Judge Christopher C. Conner
Case in other court:  Third Circuit, 23-01590
                      Third Circuit, 23-01591
Cause: 28:1331 Fed. Question

Date Filed: 04/10/2019
Date Terminated: 03/31/2022
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

### Plaintiff
**The Public Interest Legal Foundation**

represented by **J. Christian Adams**
32E Washington St.
Ste. 1675
Indianapolis, IN 46204
*TERMINATED: 02/18/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Linda Ann Kerns**
Law Offices of Linda Ann Kerns, LLC
1420 Locust Street
Suite 200
Philadelphia, PA 19102
215-731-1400
Email: linda@lindakernslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noel H Johnson**
Public Interest Legal Foundation
32 E. Washington St.
Ste. 1675
Indianapolis, IN 46204
317-203-5599
Email: njohnson@publicinterestlegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kaylan Phillips**
Public Interest Legal Foundation
32 E. Washington Street
Suite 1675
Indianapolis, IN 46204
31 7-203-5599 ex. 102
Email: kphillips@publicinterestlegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

### Defendant
**Kathy Boockvar**
*in her official capacity as Acting Secretary of the*
*Commonwealth of Pennsylvania*

represented by **Daniel T. Brier**
Myers Brier & Kelly, LLP
425 Spruce Street
Suite 200
Scranton, PA 18503
570-342-6100

Email: dbrier@mbklaw.com
*ATTORNEY TO BE NOTICED*

**Donna A. Walsh**
Myers Brier & Kelly, LLP
425 Spruce Street
Suite 200
Scranton, PA 18503
570-342-6100
Email: dwalsh@mbklaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathan M. Marks**                        represented by  **Daniel T. Brier**
*in his official capacity as Deputy Secretary for*          (See above for address)
*Elections and Commissions*                              *ATTORNEY TO BE NOTICED*

**Donna A. Walsh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bureau of Commissions, Elections and Legislation**     represented by  **Daniel T. Brier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Donna A. Walsh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Unknown Party Type**

**PA Office Attorney General**

V.

**Amicus**

**Republican National Committee**           represented by  **Harmeet Dhillon**
Dhillon Law Group, Inc.
177 Post St.
Suite #700
San Francisco, CA 94108
415-433-1700
Email: harmeet@dhillonlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/10/2019 | 1 R | COMPLAINT against Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks ( Filing fee $400, Receipt Number 0314-4728268), filed by The Public Interest Legal Foundation. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit, # 3 Exhibit, # 4 R Exhibit, # 5 R Exhibit, # 6 R Exhibit, # 7 Exhibit, # 8 R Exhibit, # 9 R Exhibit, # 10 R Exhibit, # 11 R Exhibit, # 12 R Exhibit, # 13 R Exhibit, # 14 R Exhibit, # 15 R Exhibit, # 16 R Exhibit, # 17 R Exhibit, # 18 R Exhibit)(pjr) (Attachment 14 replaced on 4/12/2019) (pjr). (Attachment 13 replaced on 4/12/2019) (pjr). (Entered: 04/11/2019) |
| 04/10/2019 | 2 | DISCLOSURE STATEMENT PURSUANT TO FRCP 7.1 filed by The Public Interest Legal Foundation. (pjr) (Entered: 04/11/2019) |
| 04/11/2019 | 3 | Summons Issued as to All Defendants and provided TO ATTORNEY ELECTRONICALLY VIA ECF for service on Defendant(s)in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure. (NOTICE TO ATTORNEYS RECEIVING THE SUMMONS ELECTRONICALLY: You must print the summons and the attachment when you receive it in your e-mail and serve them with the complaint on all defendants in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure). (Attachments: # 1 Summons Packet) (pjr) (Entered: 04/11/2019) |
| 04/11/2019 | | SPECIAL ADMISSION FORM for J. Christian Adams and Noel Johnson can be obtained at http://www.pamd.uscourts.gov/forms/petition-admission-practice.(pjr) (Entered: 04/11/2019) |

Appx0642

| 04/11/2019 | 4 R | ORDER - Letter to Counsel from Court Re: Case Assignment and Procedures. (See order for complete details.)Signed by Chief Judge Christopher C. Conner on 4/11/19. (ki) (Entered: 04/11/2019) |
| --- | --- | --- |
| 04/24/2019 | 5 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Noel H Johnson on behalf of The Public Interest Legal Foundation Attorney Noel Johnson is seeking special admission. Filing fee $ 50, receipt number 0314-4740370.. (Johnson, Noel) (Entered: 04/24/2019) |
| 04/24/2019 | | DOCKET ANNOTATION: Petitioner, Noel Johnson, and Associate Counsel bar status verified. (pjr) (Entered: 04/24/2019) |
| 04/25/2019 | 6 | SPECIAL ADMISSIONS FORM APPROVED as to Noel H. Johnson, Esquire.Signed by Chief Judge Christopher C. Conner on 4/25/19. (ki) (Entered: 04/25/2019) |
| 05/02/2019 | 7 | AFFIDAVIT of Service for Afidavit of Service served on Kathy Boockvar on 4-17-2019, filed by The Public Interest Legal Foundation. (Kerns, Linda) (Entered: 05/02/2019) |
| 05/02/2019 | 8 | AFFIDAVIT of Service for Afidavit of Service served on Bureau of Commissions & Elections on 4-17-2019, filed by The Public Interest Legal Foundation. (Kerns, Linda) (Entered: 05/02/2019) |
| 05/02/2019 | 9 | AFFIDAVIT of Service for Afidavit of Service served on Jonathan M. Marks on 4-17-2019, filed by The Public Interest Legal Foundation. (Kerns, Linda) (Entered: 05/02/2019) |
| 05/08/2019 | 10 | NOTICE of Appearance by Daniel T. Brier on behalf of All Defendants. (Brier, Daniel) (Entered: 05/08/2019) |
| 05/08/2019 | 11 | NOTICE of Appearance by Donna A. Walsh on behalf of All Defendants. (Walsh, Donna) (Entered: 05/08/2019) |
| 05/08/2019 | 12 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)* by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Brier, Daniel) (Entered: 05/08/2019) |
| 05/14/2019 | 13 | SUMMONS Returned Executed by The Public Interest Legal Foundation. PA Office Attorney General served on 5/3/2019, answer due 5/24/2019. (Kerns, Linda) (Entered: 05/14/2019) |
| 05/22/2019 | 14 | BRIEF IN SUPPORT re 12 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)* filed by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks.(Walsh, Donna) (Entered: 05/22/2019) |
| 06/05/2019 | 15 | BRIEF IN OPPOSITION re 12 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)* filed by The Public Interest Legal Foundation. (Attachments: # 1 Exhibit(s) Exhibit A)(Johnson, Noel) (Entered: 06/05/2019) |
| 06/19/2019 | 16 | REPLY BRIEF re 12 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)* filed by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks. (Attachments: # 1 Appendix Unpublished Opinions) (Walsh, Donna) (Entered: 06/19/2019) |
| 09/04/2019 | 17 | MOTION for Initial Case Management Conference by The Public Interest Legal Foundation. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Proposed Order)(Johnson, Noel) (Entered: 09/04/2019) |
| 09/17/2019 | 18 | BRIEF IN SUPPORT re 17 MOTION for Initial Case Management Conference filed by The Public Interest Legal Foundation. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B)(Johnson, Noel) (Entered: 09/17/2019) |
| 10/01/2019 | 19 | BRIEF IN OPPOSITION re 17 MOTION for Initial Case Management Conference filed by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A - Order) (Walsh, Donna) (Entered: 10/01/2019) |
| 10/08/2019 | 20 R | ORDER re: motion 17 for intial case mgmt conference, DEFERRING case management conference & issuance of case mgmt order pending disposition of defts' MTD 12 . (See order for complete details.) Signed by Chief Judge Christopher C. Conner on 10/8/19. (ki) (Entered: 10/08/2019) |
| 10/28/2019 | 21 | NOTICE by The Public Interest Legal Foundation *of Supplemental Authority* (Attachments: # 1 R Exhibit(s) A - Judicial Watch v. Lamone)(Johnson, Noel) (Entered: 10/28/2019) |
| 11/27/2019 | 22 | RESPONSE by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks *to Plaintiff's First Notice of Supplemental Authority*. (Walsh, Donna) (Entered: 11/27/2019) |
| 12/13/2019 | 23 R | MEMORANDUM (Order to follow as separate docket entry) re: 12 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)* filed by Bureau of Commissions, Elections and Legislation, Jonathan M. Marks, Kathy Boockvar, (See memo for complete details.) Signed by Chief Judge Christopher C. Conner on 12/13/19. (ki) (Entered: 12/13/2019) |
| 12/13/2019 | 24 R | ORDER (Memorandum 23 R filed previously as separate docket entry) GRANTING in part & DENYING in part defts' MTD 12 - GRANTED to extent PILF's request for records includes records containing protected personal info obtained by DMV in connection w/ a motor vehicle record as defined in Driver's Privacy Protection Act; motion 12 otherwise DENIED. (See order for complete details.)Signed by Chief Judge Christopher C. Conner on 12/13/19. (ki) (Entered: 12/13/2019) |
| 12/23/2019 | 25 | Unopposed MOTION for Extension of Time to File Answer re 1 R Complaint,, by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Brier, Daniel) (Entered: 12/23/2019) |

| 12/27/2019 | 26 | ORDER granting defts' motion 25 for enlargement of time to respond to complaint until 1/10/20. (See order for complete details.) Signed by Chief Judge Christopher C. Conner on 12/27/19. (ki) (Entered: 12/27/2019) |
|---|---|---|
| 01/06/2020 | 27 | MOTION for Certificate of Appealability by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 [R] Proposed Order)(Brier, Daniel) (Entered: 01/06/2020) |
| 01/06/2020 | 28 | BRIEF IN SUPPORT *of Defendants' Motion for Certification* re 12 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b),* 27 MOTION for Certificate of Appealability filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix of Unpublished Opinions)(Brier, Daniel) (Entered: 01/06/2020) |
| 01/06/2020 | 29 | MOTION to Stay re 27 MOTION for Certificate of Appealability , 28 Brief in Support, by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Brier, Daniel) (Entered: 01/06/2020) |
| 01/06/2020 | 30 | BRIEF IN SUPPORT re 29 MOTION to Stay re 27 MOTION for Certificate of Appealability , 28 Brief in Support, filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix of Unpublished Opinions)(Brier, Daniel) (Entered: 01/06/2020) |
| 01/10/2020 | 31 | ANSWER to 1 [R] Complaint,, *and Affirmative Defenses* by Kathy Boockvar, Jonathan M. Marks.(Brier, Daniel) (Entered: 01/10/2020) |
| 01/14/2020 | 32 [R] | SCHEDULING ORDER: Case Management Conference set for 2/25/2020 at 10:45 AM before Chief Judge Christopher C. Conner. SEE ORDER FOR COMPLETE DETAILS. Signed by Chief Judge Christopher C. Conner on 1/14/2020. (ktt) (Entered: 01/14/2020) |
| 01/20/2020 | 33 | BRIEF IN OPPOSITION re 27 MOTION for Certificate of Appealability filed by The Public Interest Legal Foundation. (Attachments: # 1 Unpublished Opinion(s))(Johnson, Noel) (Entered: 01/20/2020) |
| 01/20/2020 | 34 | BRIEF IN OPPOSITION re 29 MOTION to Stay re 27 MOTION for Certificate of Appealability , 28 Brief in Support, filed by The Public Interest Legal Foundation. (Attachments: # 1 Unpublished Opinion(s))(Johnson, Noel) (Entered: 01/20/2020) |
| 01/31/2020 | 35 | *Amended* ANSWER to 1 [R] Complaint,, by Kathy Boockvar, Jonathan M. Marks.(Brier, Daniel) (Entered: 01/31/2020) |
| 02/03/2020 | 36 | REPLY BRIEF re 27 MOTION for Certificate of Appealability filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix of Unpublished Opinions)(Brier, Daniel) (Entered: 02/03/2020) |
| 02/03/2020 | 37 | REPLY BRIEF re 29 MOTION to Stay re 27 MOTION for Certificate of Appealability , 28 Brief in Support, filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix of Unpublished Opinions)(Brier, Daniel) (Entered: 02/03/2020) |
| 02/20/2020 | 38 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Kaylan Phillips on behalf of The Public Interest Legal Foundation Attorney Kaylan Phillips is seeking special admission. Filing fee $ 50, receipt number 0314-5015759.. (Phillips, Kaylan) (Entered: 02/20/2020) |
| 02/20/2020 | 39 | CASE MANAGEMENT PLAN *(Joint)* by The Public Interest Legal Foundation. (Kerns, Linda) (Entered: 02/20/2020) |
| 02/21/2020 | | DOCKET ANNOTATION: Petitioner, Kaylan Phillips and Associate Counsel bar status verified. (pjr) (Entered: 02/21/2020) |
| 02/21/2020 | 40 | SPECIAL ADMISSIONS FORM APPROVED as to Kaylan Phillips. Signed by Chief Judge Christopher C. Conner on 2/21/2020. (ktt) (Entered: 02/21/2020) |
| 03/06/2020 | 42 | ORDER - it is hereby ORDERED that: 1. The motion 27 to certify for interlocutory appeal is DENIED. 2. The motion 29 to stay proceedings pending resolution of the motion (Doc. 27) to certify for interlocutory appeal is DENIED as moot. Signed by Chief Judge Christopher C. Conner on 3/6/2020 (ktt) (Entered: 03/06/2020) |
| 03/11/2020 | 43 [R] | CASE MANAGEMENT ORDER - Fact Discovery due by 7/31/2020. Final Pretrial Conference set for 1/21/2021 at 10:00 AM. Jury Trial set for 2/1/2021 at 9:30 AM in Harrisburg - Courtroom 2 before Chief Judge Christopher C. Conner. SEE ORDER FOR COMPLETE DETAILS. Signed by Chief Judge Christopher C. Conner on 3/11/2020. (ktt) (Entered: 03/11/2020) |
| 06/30/2020 | 44 | Joint MOTION for Extension of Time to Discovery and Other Pre-Trial Deadlines by Kathy Boockvar, Bureau of Commissions, Elections and Legislation, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 06/30/2020) |
| 06/30/2020 | 45 [R] | AMENDED CASE MANAGEMENT - 44 Joint MOTION for Extension of Time to Discovery and Other Pre-Trial Deadlines is GRANTED. Close of Fact Discovery due by 10/7/2020. Dispositive Motions due by 1/6/2021. SEE ORDER FOR COMPLETE DETAILS. Signed by Honorable Christopher C. Conner on 6/30/2020. (ktt) (Entered: 06/30/2020) |
| 06/30/2020 | 46 | CIVIL PRACTICE ORDER - Signed by Honorable Christopher C. Conner on 6/30/2020. (ktt) (Entered: 06/30/2020) |

| 09/24/2020 | 47 | Joint MOTION for Extension of Time to Complete Discovery *and Other Pre-Trial Deadlines* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 09/24/2020) |
| 09/24/2020 | 48 | SECOND AMENDED CASE MANAGEMENT ORDER - 47 Joint MOTION for Extension of Time to Complete Discovery *and Other Pre-Trial Deadlines* filed by Jonathan M. Marks, Kathy Boockvar is GRANTED. Fact Discovery due by 12/2/2020. Dispositive Motions due by 3/3/2021. SEE ORDER FOR COMPLETE DETAILS. Signed by Honorable Christopher C. Conner on 9/24/2020. (ktt) (Entered: 09/24/2020) |
| 11/25/2020 | 49 | MOTION for Extension of Time to Discovery and other Pre-Trial Deadlines by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 11/25/2020) |
| 11/27/2020 | 50 | BRIEF IN OPPOSITION re 49 MOTION for Extension of Time to Discovery and other Pre-Trial Deadlines filed by The Public Interest Legal Foundation.(Johnson, Noel) (Entered: 11/27/2020) |
| 11/30/2020 | 51 | BRIEF IN SUPPORT re 49 MOTION for Extension of Time to Discovery and other Pre-Trial Deadlines filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix Unpublished Opinions)(Walsh, Donna) (Entered: 11/30/2020) |
| 12/01/2020 | 52 | THIRD AMENDED CASE MANAGEMENT ORDER: 49 MOTION for Extension of Time to Discovery and other Pre-Trial Deadlines filed by Jonathan M. Marks, Kathy Boockvar is GRANTED. Fact Discovery due by 1/18/2021. Dispositive Motions due by 4/19/2021. SEE ORDER FOR COMPLETE DETAILS Signed by Honorable Christopher C. Conner on 12/1/2020. (mw) (Entered: 12/01/2020) |
| 01/14/2021 | 53 | Unopposed MOTION for Extension of Time to Complete Discovery by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 01/14/2021) |
| 01/15/2021 | 54 | ORDER - IT IS HEREBY ORDERED THAT the Motion (Doc 53 ) is GRANTED. The fact discovery deadline is hereby extended to February 17, 2021. All other deadlines set forth in the court's order (Doc. 52) of December 1, 2020, shall remain in full force and effect. Signed by Honorable Christopher C. Conner on 1/15/2021 (mw) (Entered: 01/15/2021) |
| 02/10/2021 | 55 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Linda Ann Kerns on behalf of The Public Interest Legal Foundation Attorney J. Christian Adams is seeking special admission. Filing fee $ 50, receipt number APAMDC-5466939.. (Kerns, Linda) (Entered: 02/10/2021) |
| 02/10/2021 |  | DOCKET ANNOTATION: Petitioner, J. Christian Adams, and Associate Counsel bar status verified. (pjr) (Entered: 02/10/2021) |
| 02/10/2021 | 56 | SPECIAL ADMISSIONS FORM APPROVED as to J. Christian Adams. Signed by Honorable Christopher C. Conner on 2/10/2021. (mw) (Entered: 02/10/2021) |
| 02/17/2021 | 58 | First MOTION to Withdraw as Attorney *J. Christian Adams* by The Public Interest Legal Foundation. (Attachments: # 1 Proposed Order)(Kerns, Linda) (Entered: 02/17/2021) |
| 02/18/2021 | 59 | ORDER granting 58 Motion to Withdraw as Attorney. Attorney J. Christian Adams terminated. Signed by Honorable Christopher C. Conner on 2/18/2021 (mw) (Entered: 02/18/2021) |
| 04/15/2021 | 60 | First MOTION for Extension of Time to file Dispositive Motions *jointly by plaintiff and defendants* by The Public Interest Legal Foundation. (Attachments: # 1 Proposed Order)(Kerns, Linda) (Entered: 04/15/2021) |
| 04/16/2021 | 61 R | ORDER granting 60 Motion to Extend Time. Dispositive motions and briefs shall be enlarged by 14 days to May 3, 2021. Signed by Honorable Christopher C. Conner on 4/16/2021 (mw) (Entered: 04/16/2021) |
| 05/03/2021 | 62 | MOTION for Summary Judgment by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order) (Walsh, Donna) (Entered: 05/03/2021) |
| 05/03/2021 | 63 R | STATEMENT OF FACTS re 62 MOTION for Summary Judgment filed by Kathy Boockvar, Jonathan M. Marks. (Walsh, Donna) (Entered: 05/03/2021) |
| 05/03/2021 | 64 R | BRIEF IN SUPPORT re 62 MOTION for Summary Judgment filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 R Exhibit(s) A - Marks Declaration, # 2 Exhibit(s) B - Adams Transcript, # 3 R Exhibit(s) C - Torres Affidavit, # 4 Exhibit(s) D - Summary Chart, # 5 Appendix Unpublished Opinions)(Walsh, Donna) (Entered: 05/03/2021) |
| 05/03/2021 | 65 | MOTION for Summary Judgment by The Public Interest Legal Foundation. (Attachments: # 1 Proposed Order) (Phillips, Kaylan) (Entered: 05/03/2021) |
| 05/03/2021 | 66 R | STATEMENT OF FACTS re 65 MOTION for Summary Judgment filed by The Public Interest Legal Foundation. (Attachments: # 1 R Exhibit(s) A - Marks Transcript, # 2 R Exhibit(s) B - Marks Testimony, # 3 Exhibit(s) C - Torres Testimony, # 4 R Exhibit(s) D - Analysis Summary, # 5 R Exhibit(s) E - Presentation, # 6 Exhibit(s) F - Responses to Requests for Admission, # 7 Exhibit(s) G - Summary, # 8 Exhibit(s) H - Reports Menu, # 9 Exhibit(s) I - Email, # 10 Exhibit(s) J - Initial Analysis Query, # 11 Exhibit(s) K - Affirm or Deny Letter)(Phillips, Kaylan) (Entered: 05/03/2021) |

| 05/03/2021 | 67 | BRIEF IN SUPPORT re 65 MOTION for Summary Judgment filed by The Public Interest Legal Foundation. (Attachments: # 1 R Affidavit of Logan Churchwell)(Phillips, Kaylan) (Entered: 05/03/2021) |
| 05/17/2021 | 68 | Joint MOTION for Extension of Time to File *Opposition Briefs and L.R. 56.1 responsive statements in opposition to the pending motions for summary judgment* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 05/17/2021) |
| 05/18/2021 | 69 | VERBAL ORDER It is ORDERED that the joint motion 68 for enlargement of briefing deadlines is GRANTED and the deadline for all parties to file briefs in opposition to the pending motions for summary judgment and responsive statements required by Local Rule 56.1 is extended by 21 days to June 14, 2021. Signed by Honorable Christopher C. Conner on 5/18/2021. **(Text-only entry; no PDF document will issue. This text-only entry constitutes the order of the court or notice on the matter.)** (mw) (Entered: 05/18/2021) |
| 06/14/2021 | 70 | ANSWER TO STATEMENT OF FACTS re 63 R Statement of Facts filed by The Public Interest Legal Foundation. (Attachments: # 1 Exhibit(s) A - Email from J. Marks dated Dec. 8, 2017, # 2 Exhibit(s) B - Email from J. Marks dated Feb. 27, 2018, # 3 Exhibit(s) C - Email from SURE dated Dec. 15, 2017, # 4 Exhibit(s) D - Emails dated Jan. 13, 2021, # 5 Exhibit(s) E - Letter to Noel Johnson dated Feb. 11, 2021, # 6 R Exhibit(s) F - Summary and Timeline, # 7 Exhibit(s) G - Responses to First Request for Production of Documents, # 8 Exhibit(s) H - Letter to Noel Johnson dated Feb. 3, 2021)(Phillips, Kaylan) (Entered: 06/14/2021) |
| 06/14/2021 | 71 R | BRIEF IN OPPOSITION re 62 MOTION for Summary Judgment filed by The Public Interest Legal Foundation. (Phillips, Kaylan) (Entered: 06/14/2021) |
| 06/14/2021 | 72 | RESPONSE by Kathy Boockvar, Jonathan M. Marks to 66 R Statement of Facts,, . (Walsh, Donna) (Entered: 06/14/2021) |
| 06/14/2021 | 73 R | BRIEF IN OPPOSITION re 65 MOTION for Summary Judgment filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix Unpublished Opinions)(Walsh, Donna) (Entered: 06/14/2021) |
| 06/28/2021 | 74 | REPLY BRIEF re 62 MOTION for Summary Judgment filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A, # 2 Unpublished Opinion(s))(Walsh, Donna) (Entered: 06/28/2021) |
| 06/28/2021 | 75 | REPLY BRIEF re 65 MOTION for Summary Judgment filed by The Public Interest Legal Foundation.(Johnson, Noel) (Entered: 06/28/2021) |
| 09/21/2021 | 76 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Harmeet Dhillon on behalf of Republican National Committee Attorney Harmeet K. Dhillon is seeking special admission. Filing fee $ 50, receipt number APAMDC-5702295.. (Dhillon, Harmeet) (Entered: 09/21/2021) |
| 09/21/2021 | 77 | SPECIAL ADMISSIONS FORM APPROVED as to Harmeet K. Dhillon. Signed by Honorable Christopher C. Conner on 9/21/2021. (mw) (Entered: 09/21/2021) |
| 09/22/2021 | 78 | MOTION for Leave to File *Amicus Brief in Support of Plaintiff's Motion to Dismiss* by Republican National Committee. (Attachments: # 1 R Brief in Support of Motion, # 2 Proposed Order)(Dhillon, Harmeet) (Entered: 09/22/2021) |
| 09/24/2021 |  | DOCKET ANNOTATION: Counsel is advised to file the brief in support of Doc. 78 as a separate entry. (pjr) (Entered: 09/24/2021) |
| 09/24/2021 | 79 R | BRIEF IN SUPPORT re 78 MOTION for Leave to File *Amicus Brief in Support of Plaintiff's Motion to Dismiss* filed by Republican National Committee.(Dhillon, Harmeet) (Entered: 09/24/2021) |
| 10/08/2021 | 80 | BRIEF IN OPPOSITION re 78 MOTION for Leave to File *Amicus Brief in Support of Plaintiff's Motion to Dismiss* filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix Of Unpublished Opinions) (Walsh, Donna) (Entered: 10/08/2021) |
| 10/22/2021 | 81 | REPLY BRIEF re 78 MOTION for Leave to File *Amicus Brief in Support of Plaintiff's Motion to Dismiss* filed by Republican National Committee.(Dhillon, Harmeet) (Entered: 10/22/2021) |
| 11/01/2021 | 82 | ORDER - it is hereby ORDERED that the motion (Doc. 78 ) for leave to file an amicus brief in support of plaintiffs motion for summary judgement is DENIED. Signed by Honorable Christopher C. Conner on 11/1/2021 (mw) (Entered: 11/01/2021) |
| 03/31/2022 | 83 R | MEMORANDUM (Order to follow as separate docket entry). Signed by Honorable Christopher C. Conner on 3/31/2022. (mw) (Entered: 03/31/2022) |
| 03/31/2022 | 84 R | ORDER (memorandum filed previously as separate docket entry) - it is hereby ORDERED that defendants motion (Doc. 62 ) is GRANTED regarding plaintiffs first disclosure request insofar as the noncitizen matching analysis is protected by the work-product doctrine and fourth disclosure request in its entirety. The motion (Doc. 62) is otherwise DENIED. Plaintiffs motion (Doc. 65 ) is GRANTED in part and DENIED in part. Th Clerk of Court is directed to enter judgement. The Clerk of Court is directed to CLOSE this case. SEE ORDER FOR COMPLETE DETAILS. Signed by Honorable Christopher C. Conner on 3/31/2022. (mw) (Entered: 03/31/2022) |
| 03/31/2022 | 85 | Judgment is ENTERED in favor of defendants on Count I regarding plaintiffs first request insofar as the noncitizen matching analysis is protected by the work-product doctrine and plaintiffs fourth request in its entirety. Judgment is |

| | | ENTERED in favor of plaintiff on Count I regarding all other requests. Signed by the Clerk of Court on 3/31/2022. (mw) (Entered: 03/31/2022) |
|---|---|---|
| 04/11/2022 | 86 | Joint MOTION for Extension of Time to File *Motions for Attorney's Fees, Costs, and Expenses* by The Public Interest Legal Foundation. (Attachments: # 1 Proposed Order Proposed Order)(Johnson, Noel) (Entered: 04/11/2022) |
| 04/12/2022 | 87 R | ORDER granting 86 Motion for Extension of Time to File. Signed by Honorable Christopher C. Conner on 4/12/2022 (mw) (Entered: 04/12/2022) |
| 04/14/2022 | 88 R | MOTION to Clarify *and Partial Reconsideration* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 04/14/2022) |
| 04/14/2022 | 89 | BRIEF IN SUPPORT re 88 R MOTION to Clarify *and Partial Reconsideration* filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Unpublished Opinion(s))(Walsh, Donna) (Entered: 04/14/2022) |
| 04/28/2022 | 90 | BRIEF IN OPPOSITION re 88 R MOTION to Clarify *and Partial Reconsideration* filed by The Public Interest Legal Foundation.(Johnson, Noel) (Entered: 04/28/2022) |
| 04/28/2022 | 91 R | MOTION to Amend/Correct *or Alter Judgment Pursuant to Fed. R. Civ. P. 59(e)* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 04/28/2022) |
| 04/28/2022 | 92 | BRIEF IN SUPPORT re 91 R MOTION to Amend/Correct *or Alter Judgment Pursuant to Fed. R. Civ. P. 59(e)* filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Unpublished Opinion(s))(Walsh, Donna) (Entered: 04/28/2022) |
| 04/29/2022 | 93 | Joint MOTION to Refer *to Mediation* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order) (Walsh, Donna) (Entered: 04/29/2022) |
| 05/02/2022 | 94 R | ORDER - IT IS HEREBY ORDERED THAT the motion (Doc. 93 ) is GRANTED and the Clerk of Court shall REFER this matter to Chief Magistrate Judge Mehalchick for assignment to a United States Magistrate Judge for the purpose of conducting an in-person settlement conference on a date after June 1, 2022. Signed by Honorable Christopher C. Conner on 5/2/2022. (mw) (Entered: 05/02/2022) |
| 05/02/2022 | | VERBAL ORDER by Chief Magistrate Judge Karoline Mehalchick Referring case to Magistrate Judge Joseph F. Saporito, Jr for purposes of conducting an in-person settlement conference after June 1, 2022. (cw) (Entered: 05/02/2022) |
| 05/03/2022 | 95 | SCHEDULING ORDER: Telephone Scheduling Conference for purpose of scheduling settlement conference set for 5/11/2022 02:00 PM before Magistrate Judge Joseph F. Saporito Jr.. Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/3/22. (ms) (Entered: 05/03/2022) |
| 05/10/2022 | 96 | NOTICE by The Public Interest Legal Foundation *of Unavailability for Mediation Conference* (Johnson, Noel) (Entered: 05/10/2022) |
| 05/11/2022 | 98 | SCHEDULING ORDER: Settlement Conference set for 6/29/2022 10:00 AM in Wilkes-Barre before Magistrate Judge Joseph F. Saporito Jr.. Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/11/22. (ms) (Entered: 05/11/2022) |
| 06/17/2022 | 99 | Unopposed MOTION to Continue *Settlement Conference* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Brier, Daniel) (Entered: 06/17/2022) |
| 06/17/2022 | 100 | ORDER granting 99 Motion to Continue 6/29/22 settlement conference. Conference CONTNUED until further Order of Court. Telephonic scheduling Conference set for 6/21/2022 09:30 AM before Magistrate Judge Joseph F. Saporito Jr.. Signed by Magistrate Judge Joseph F. Saporito, Jr on 6/17/22 (ms) (Entered: 06/17/2022) |
| 06/22/2022 | 102 | SCHEDULING ORDER: Settlement Conference set for 6/29/22 RESCHEDULED TO 8/17/2022 10:30 AM in Wilkes-Barre before Magistrate Judge Joseph F. Saporito Jr.. Signed by Magistrate Judge Joseph F. Saporito, Jr on 6/22/22. (ms) (Entered: 06/22/2022) |
| 07/13/2022 | 103 | Joint MOTION to Continue *Stay of Proceedings* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 07/13/2022) |
| 07/13/2022 | 104 R | ORDER granting 103 Motion to Continue Stay. Signed by Honorable Christopher C. Conner on 7/13/2022 (mw) (Entered: 07/13/2022) |
| 08/17/2022 | 106 | ORDER - To continue settlement discussions: (1) Counsel for defendants shall call the Court on Tuesday September 6, 2022, at 9:15 a.m. (2) Counsel for plaintiff shall call the Court on Tuesday, September 6, 2022, at 9:45 a.m. (3) Contact information contained in Order. Signed by Magistrate Judge Joseph F. Saporito, Jr on 8/17/22. (ms) (Entered: 08/17/2022) |
| 08/18/2022 | 107 | ORDER - it is hereby ORDERED that all proceedings and filing deadlines in the above-captioned matter are STAYED through September 30, 2022, to facilitate continued settlement negotiations before Magistrate Judge Joseph F. Saporito, Jr. Signed by Honorable Christopher C. Conner on 8/18/2022. (mw) (Entered: 08/18/2022) |

Appx0699

| | | |
|---|---|---|
| 09/23/2022 | 114 | REPORT OF SETTLEMENT OFFICER - Settlement Not Reached (ms) (Entered: 09/23/2022) |
| 10/06/2022 | 115 | Joint MOTION to Reset *Briefing Deadlines* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 10/06/2022) |
| 10/07/2022 | 116 | ORDER granting 115 Motion to Reset Briefing Schedule. Signed by Honorable Christopher C. Conner on 10/7/2022 (mw) (Entered: 10/07/2022) |
| 10/20/2022 | 117 R | MOTION for Extension of Time to of Briefing Deadlines by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Proposed Order)(Walsh, Donna) (Entered: 10/20/2022) |
| 10/21/2022 | 118 | BRIEF IN OPPOSITION re 117 R MOTION for Extension of Time to of Briefing Deadlines filed by The Public Interest Legal Foundation. (Attachments: # 1 Exhibit(s) Exhibit A Email, # 2 Proposed Order Proposed Order) (Kerns, Linda) (Entered: 10/21/2022) |
| 10/25/2022 | 119 R | ORDER granting in part and denying in part 117 R Motion to Extend Time - SEE ORDER FOR COMPLETE DETAILS/DEADLINES. Signed by Honorable Christopher C. Conner on 10/25/2022 (mw) (Entered: 10/25/2022) |
| 11/11/2022 | 120 | BRIEF IN OPPOSITION re 91 R MOTION to Amend/Correct *or Alter Judgment Pursuant to Fed. R. Civ. P. 59(e) Plaintiff's Response* filed by The Public Interest Legal Foundation.(Kerns, Linda) (Entered: 11/11/2022) |
| 11/11/2022 | 121 R | MOTION for Order to Show Cause *under Fed R Civ Pro 11* by The Public Interest Legal Foundation. (Attachments: # 1 Proposed Order)(Kerns, Linda) (Entered: 11/11/2022) |
| 11/11/2022 | 122 | REPLY BRIEF re 88 R MOTION to Clarify *and Partial Reconsideration* filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A, # 2 Appendix of Unpublished Opinion)(Walsh, Donna) (Entered: 11/11/2022) |
| 11/22/2022 | 123 | MOTION to Strike 121 R MOTION for Order to Show Cause *under Fed R Civ Pro 11* by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 R Exhibit(s) A - Supplemental Production, # 2 Exhibit(s) B - Email, # 3 Proposed Order)(Walsh, Donna) (Entered: 11/22/2022) |
| 11/22/2022 | 124 R | BRIEF IN SUPPORT re 123 MOTION to Strike 121 R MOTION for Order to Show Cause *under Fed R Civ Pro 11* filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A - Supplemental Production, # 2 Exhibit(s) B - Email, # 3 Unpublished Opinion(s))(Walsh, Donna) (Entered: 11/22/2022) |
| 11/23/2022 | 125 R | REPLY BRIEF re 91 R MOTION to Amend/Correct *or Alter Judgment Pursuant to Fed. R. Civ. P. 59(e)* filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Exhibit(s) A - Settlement Agreement, # 2 Unpublished Opinion(s))(Walsh, Donna) (Entered: 11/23/2022) |
| 12/06/2022 | 126 | BRIEF IN OPPOSITION re 123 MOTION to Strike 121 R MOTION for Order to Show Cause *under Fed R Civ Pro 11* filed by The Public Interest Legal Foundation. (Attachments: # 1 Exhibit(s) Exhibit A Email)(Kerns, Linda) (Entered: 12/06/2022) |
| 12/16/2022 | 127 | MOTION for Attorney Fees by The Public Interest Legal Foundation. (Attachments: # 1 Declaration Declaration of Noel H. Johnson, # 2 Exhibit(s) Exhibit 1 to Johnson Declaration (Foundation Billing Statement), # 3 Exhibit(s) Exhibit 2 to Johnson Declaration (Foundation Expense Report), # 4 Declaration Declaration of Linda A. Kerns, # 5 Exhibit(s) Exhibit 1 to Kerns Declaration (Kerns Billing Statement), # 6 Exhibit(s) Exhibit 2 to Kerns Declaration (Kerns Expense Report), # 7 Declaration Declaration of Louis J. Capozzi, Jr., # 8 Appendix Unpublished Decisions, # 9 Proposed Order Proposed Order)(Johnson, Noel) (Entered: 12/16/2022) |
| 12/20/2022 | 128 | REPLY BRIEF re 123 MOTION to Strike 121 R MOTION for Order to Show Cause *under Fed R Civ Pro 11* filed by Kathy Boockvar, Jonathan M. Marks.(Walsh, Donna) (Entered: 12/20/2022) |
| 01/06/2023 | 129 | BRIEF IN OPPOSITION re 127 MOTION for Attorney Fees filed by Kathy Boockvar, Jonathan M. Marks. (Attachments: # 1 Appendix of Unpublished Opinions)(Walsh, Donna) (Entered: 01/06/2023) |
| 01/20/2023 | 130 | REPLY BRIEF re 127 MOTION for Attorney Fees filed by The Public Interest Legal Foundation.(Johnson, Noel) (Entered: 01/20/2023) |
| 01/31/2023 | 131 | First MOTION to Supplement *Motion for Attorney's Fees, Costs, and Expenses* by The Public Interest Legal Foundation. (Attachments: # 1 Declaration of Johnson (Second), # 2 Exhibit(s) 1 - Second Foundation Billing Statement, # 3 Declaration of Kerns (Second), # 4 Exhibit(s) 1 - Second Kerns Billing Statement)(Johnson, Noel) (Entered: 01/31/2023) |
| 02/14/2023 | 132 | BRIEF IN OPPOSITION re 131 First MOTION to Supplement *Motion for Attorney's Fees, Costs, and Expenses* filed by Kathy Boockvar, Jonathan M. Marks.(Walsh, Donna) (Entered: 02/14/2023) |
| 02/28/2023 | 133 R | ORDER - it is hereby ORDERED that the Commonwealths motion (Doc. 88) for clarification and partial reconsideration is GRANTED to the extent that clarification has been provided herein. The motion is otherwise DENIED. The Commonwealths motion (Doc. 91) to amend or alter judgment is DENIED. PILFs motion (Doc. 121) is CONSTRUED as a motion for sanctions under Federal Rule of Civil Procedure 11 and is DENIED as so construed. The Commonwealths motion (Doc. 123) to strike PILFs motion (Doc. 121) for sanctions is DENIED as moot. Signed by Honorable Christopher C. Conner on 2/28/2023 (mw) (Entered: 02/28/2023) |

| 03/29/2023 | 134 R | NOTICE OF APPEAL in NON-PRISONER Case as to 133 R Order on Motion to Clarify,,, Order on Motion to Amend/Correct,,, Order on Motion for Order to Show Cause,,, Order on Motion to Strike,, by Kathy Boockvar, Jonathan M. Marks. Filing Fee and Docket Fee PAID. Filing fee $ 505, receipt number APAMDC-6244378. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Walsh, Donna) (Entered: 03/29/2023) |
|------------|-------|---|
| 03/30/2023 | 135 R | NOTICE OF CROSS APPEAL in non-prisoner Case as to 133 R Order on Motion to Clarify,,, Order on Motion to Amend/Correct,,, Order on Motion for Order to Show Cause,,, Order on Motion to Strike,, by The Public Interest Legal Foundation. Filing Fee and Docket Fee PAID. Filing fee $ 505, receipt number APAMDC-6245041. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Kerns, Linda) (Entered: 03/30/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/01/2023 15:56:16 | | |
| **PACER Login:** | dbrier106 | **Client Code:** | 4647.09 |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-00622-CCC |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt Court Order |

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the First Step Brief of Appellant/Cross-Appellee and Appendix Volume I was served upon the following counsel of record via the Court's ECF System on this 6th day of September 2023:

Noel H. Johnson, Esquire
Kaylan Phillips, Esquire
Public Interest Legal Foundation
107 S. West Street, Suite 700
Alexandria, VA 22314

Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, LLC
1420 Locust Street, Suite 200
Philadelphia, PA 19102

/s/ Donna A. Walsh
Donna A. Walsh