No. 23-1590 & No. 23-1591

IN THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

PUBLIC INTEREST LEGAL
FOUNDATION, INC.,
*Appellee / Cross-Appellant*,

v.

AL SCHMIDT, in his official capacity as
Secretary of the Commonwealth of
Pennsylvania, and JONATHAN M. MARKS,
in his official capacity as Deputy
Secretary for Elections and
Commissions,
*Appellants / Cross-Appellees.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:19-cv-00622

**[ADDENDUM] BRIEF OF *AMICUS CURIAE* JUDICIAL WATCH,
INC. IN SUPPORT OF APPELLEE / CROSS-APPELLANT AND
AFFIRMANCE**

T. Russell Nobile
**JUDICIAL WATCH, INC.**
P.O. Box 6592
Gulfport, MS 39503
Rnobile@judicialwatch.org
(202) 527-9866

James F. Peterson
*Counsel of Record*
Eric W. Lee
**JUDICIAL WATCH, INC.**
425 Third Street, S.W.
Suite 800
Washington, D.C. 20024
Jpeterson@judicialwatch.org
(202) 646-5175

*Counsel for Amicus Curiae*

Date: November 20, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* Judicial Watch, Inc. states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

AUTHORITY AND INTERESTS OF THE *AMICUS CURIAE* ............................. 1

SUMMARY OF THE ARGUMENT ....................................................... 3

ARGUMENT ...................................................................................... 5

I.    Appellee Incurred Substantial Injuries as a Result of
      The Government's Denial of Its Records Requests ........................................ 5

II.   *TransUnion* Did Not Heighten the Standing Requirements for
      Informational Injuries Arising from Denial of Government Records ............. 7

CONCLUSION ................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Bellitto v. Snipes*, 2018 U.S. Dist. LEXIS 103617
    (S.D. Fla. Mar. 30, 2018)........................................................................6, 12

*Coleman v. Miller*, 307 U.S. 433 (1939) ...................................................9

*Cowley v. Pulsifer*, 137 Mass. 392 (1884) ..............................................10

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008)...................3

*Illinois Conservative Union v. Illinois*,
    2021 U.S. Dist. LEXIS 102543 (N.D. Ill. June 1, 2021) ...............2

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)....................................10

*Judicial Watch v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019)....................2, 4, 12

*Kelly v. Realpage, Inc.*, 47 F.4th 202 (3d Cir. 2022).........................10, 11

*Leucadia v. Applied Extrusion Tech.*, 998 F.2d 157 (3d Cir. 1993)........10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................8

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)............................9

*Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cty.*,
    478 U.S. 1 (1986)..........................................................................10

*Project Vote v. Long*, 682 F.3d 331 (4th Cir. 2012) ........................3, 6, 12

*Sheet Metal Works Int'l Ass'n, Local No. 9 v. U.S. Air Force*,
    63 F.3d 994 (10th Cir. 1995) ...........................................................5

*Sheet Metal Workers Int'l Ass'n, Local No. 19 v. U.S. Dep't of Veteran Affairs*,
    135 F.3d 891 (3d Cir. 1998) ............................................................5

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..................................8, 11

*State ex rel. Colscott v. King*, 154 Ind. 621 (1900) ....................................................9

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) ...........................9

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ...........................4, 7, 8, 10, 11

*United States v. Smith*, 123 F.3d 140 (3d Cir. 1997) ...............................................10

*United States DOJ v. Reporters Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ...........................................................................................5

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ...........................................................................................8

*Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) ...........9

## STATUTES

5 U.S.C. § 552 ..........................................................................................1, 4, 5, 10

52 U.S.C. § 20507 ...........................................................................................*passim*

## OTHER

"FOIA Suits Filed By Nonprofit/Advocacy Groups Double Under Trump,"
    October 18, 2018, Transactional Records Access Clearinghouse,
    Syracuse University ...........................................................................................6

## AUTHORITY AND INTERESTS OF THE *AMICUS CURIAE*[1]

Judicial Watch is a non-partisan, public interest organization headquartered in Washington, DC. Founded in 1994, Judicial Watch seeks to promote accountability, transparency and integrity in government and fidelity to the rule of law. In furtherance of these goals, Judicial Watch and its staff monitor and investigate government and other agencies nationwide through public records laws, such as the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the public inspection provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i). Judicial Watch obtains records from state and federal governmental agencies and then publishes those records to the public for their benefit. If the government violates the law and withholds records, Judicial Watch sues to enforce it. Since 2001, no other nonprofit organization has filed more FOIA lawsuits than Judicial Watch.

In 2012, Judicial Watch began its election integrity work, primarily investigating and enforcing the integrity provisions of the NVRA through its private right of action. Since that time, Judicial Watch has obtained numerous state and county settlement agreements or consent decrees that brought jurisdictions from California to Kentucky into compliance with Section 8 of the NVRA. *See Judicial*

---

[1] Judicial Watch states that no counsel for a party to this case authored this brief in whole or in part; and no person or entity, other than *amicus curiae* and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief. All parties either consented to or did not oppose the filing of this brief.

*Watch v. Grimes*, No. 17-94 (E.D. Ky. 2017) (ECF No. 39) (Consent Decree entered against the Commonwealth of Kentucky to enforce the NVRA); *Judicial Watch v. Logan*, No. 17-8948 (C.D. Cal. 2017) (settlement with Los Angeles County and the State of California to settle alleged NVRA violations); *Judicial Watch v. Griswold*, No. 20-2992 (Colorado NVRA settlement); *Judicial Watch v. Pennsylvania Sec. of State*, No. 20-708 (M.D. Pa. 2020) (Pennsylvania NVRA settlement).

In the last ten years, no organization, public or private, has obtained more statewide settlement agreements or consent decrees against chief state election officials for violations of the NVRA. As part of its list maintenance enforcement efforts, Judicial Watch also routinely requests public records regarding voter registration activities in various states under Section 8(i) of the NVRA, and has sued on its own behalf and on behalf of others to enforce it. *Judicial Watch v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019); *Illinois Conservative Union v. Illinois*, 2021 U.S. Dist. LEXIS 102543 (N.D. Ill. June 1, 2021).

Judicial Watch has a substantial interest in the issues presented in this case, namely the informational injury an organization must incur to satisfy Article III standing and the scope of the disclosure requirement of the NVRA. If the arguments of Appellants / Cross-Appellees ("Appellants") prevail before this Court, it could curtail Judicial Watch's efforts to enforce public records laws and allow governmental actors a means to withhold key documents from the public.

For the foregoing reasons, Judicial Watch respectfully requests that this Court affirm the lower court's decision.

## SUMMARY OF THE ARGUMENT

The public disclosure provisions of the NVRA embody Congress' intent that Americans' right to vote "must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote v. Long*, 682 F.3d 331, 335 (4th Cir. 2012). These provisions mandate that "State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible." *Id.* at 339. The NVRA provides an avenue for citizens to ensure that only eligible registrants remain on the rolls by opening the full voter registration list to public inspection. "Without such transparency, public confidence in the essential workings of democracy will suffer." *Id.* "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourage[s] citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

The downstream consequences of a state official's failure to disclose governmental records, such records concerning the accuracy of official voter lists, are considerable. Confidence in the integrity of the electoral process is undermined whenever public records are not disclosed. This, in turn, discourages participation in the democratic process. For over 100 years, courts have recognized a common law

3

right to public information from government officials. That is because the government officials, unlike private actors, are particularly accountable to the people they serve. Congress recognized this in passing laws such as FOIA and the NVRA's public disclosure provision, granting anyone who files a request for records oversight into the operations of their government. *TransUnion* did not change this.

Organizations like Judicial Watch further the intention of Congress by filing requests and overseeing state programs to keep the voter registration list accurate and current. *See Judicial Watch*, 399 F. Supp. 3d at 445 ("Organizations such as Judicial Watch … have the resources and expertise that few individuals can marshal … [E]xcluding these organizations from access to [voter registration records] … undermines Section 8(i)'s efficacy"). Among the other downstream consequences of allowing states to withhold such records are a diversion of resources from such organizations' educational and other missions, particularly where they must expend time and effort fighting for these records in state and federal court.

Preventing public interest organizations, such as Judicial Watch and Appellee / Cross-Appellant ("Appellee"), from receiving records concerning programs to maintain the accuracy and currency of the official registration list in Pennsylvania hinders NVRA enforcement and violates the plain text of the NVRA.

This Court should affirm the district court's decision in part with respect to standing and reverse in part on privilege grounds.

# ARGUMENT

## I.     Appellee Incurred Substantial Injuries as a Result of The Government's Denial of Its Records Requests.

There is an inherent injury whenever a public records requester is denied information to which it is lawfully entitled. Public disclosure laws, such as the Freedom of Information Act (FOIA), were "enacted to facilitate public access to Government documents." *Sheet Metal Workers Int'l Ass'n, Local No. 19 v. U.S. Dep't of Veteran Affairs*, 135 F.3d 891, 897 (3d Cir. 1998) (citing *Sheet Metal Works Int'l Ass'n, Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 996 (10th Cir. 1995)). Congress passed FOIA under the "principle that a democracy cannot function unless the people are permitted to know *what their government is up to.*" *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772-73 (1989) (citation and internal quotations omitted). Congress found that "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *Id.* at 773.

Like FOIA, Congress exercised its authority to allow the public to obtain "information that sheds light on an agency's performance of its statutory duties" under the NVRA. In its basic form, the NVRA mandates that *all* records concerning the implementation of programs and activities to ensure an accurate voter registration list must be disclosed. 52 U.S.C. § 20507(i)(1). The provision "embodies Congress's conviction that Americans who are eligible under law to vote have every

right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35. *See also Bellitto v. Snipes*, No. 16-cv-61474- BLOOM/Valle, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) (NVRA public disclosure provisions "convey Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs.").

Judicial Watch, Appellee, and nonprofits like them further Congress's intention by filing NVRA and other public records requests to various state and federal governmental agencies. If records requests are denied, wrongfully withheld, or ignored, Judicial Watch often sues to enforce them.[2]

Where the government wrongfully denies a public records request, the consequences are severe. It prevents public interest organizations, including Judicial Watch and Appellees, from informing their members and the public about what their government is up to. It impairs their ability to carry out their fundamental mission. It forces them to expend resources, either in litigation in an effort to obtain what they are lawfully entitled to or, in the alternative, in an effort to compensate for the missing or withheld records or to obtain the information in other, more burdensome

---

[2] According to a recent study, Judicial Watch has filed the most FOIA lawsuits of any nonprofit since 2000. *See* "FOIA Suits Filed By Nonprofit/Advocacy Groups Double Under Trump," October 18, 2018, Transactional Records Access Clearinghouse, Syracuse University, available at https://trac.syr.edu/whatsnew/email.181018.html.

ways.[3] The resources expended by Judicial Watch in particular to investigate, address, research, and counteract a state's failure to comply with their public records obligations, including their obligations under the NVRA, are distinct from and above and beyond Judicial Watch's regular, programmatic efforts to advance its organizational mission.

Clearly then, organizations that pursue public records requests are harmed when state or federal government agents deny a public records requests under the NVRA.

## II.   *TransUnion* Did Not Heighten the Standing Requirements for Informational Injuries Arising from Denial of Government Records.

Article III of the Constitution limit the federal judiciary's jurisdiction to "the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish a case or controversy, or standing, a plaintiff must show an injury (1) that is concrete, particularized, and actual or imminent; (2) that was caused by the defendant; and (3) that would be redressed by judicial relief. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

---

[3] In *Judicial Watch v. Commonwealth of Penn.*, No. 20-cv-708 (M.D. Pa. 2020), for example, Judicial Watch sued the Commonwealth and three counties when it failed to appropriately respond to an NVRA notice letter and document request. Judicial Watch was compelled to use information the Commonwealth provided to the federal Election Assistance Commission, which later proved to be inaccurate.

Appellants spend much of their standing argument on appeal devoted to *TransUnion*'s supposed modification of the informational injury required to satisfy the "concrete" element of injury in fact. *See generally* Appellant's Br. at 19-23. According to Appellants, the district court "misapprehended" the informational injury since "lack of access to information allegedly required by statute" does "not by [itself] qualify as concrete injury for purposes of Article III." *Id.* at 23 (citing *TransUnion*, 141 S. Ct. at 2213-14).

But *TransUnion* did not modify existing case law regarding concrete injury for standing purposes. It simply reiterated the requirement that a statutory cause of action will satisfy the concrete element of standing if the plaintiff's injury "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (internal quotations and citation omitted). The majority plainly attributed this principle to a case from five years prior. "[T]his Court's opinion in *Spokeo v. Robins* indicated that courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). *Spokeo* in turn cited *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) ("Article III's restriction … is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'"); and

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 102 (1998) ("We have always taken [Article III] to mean cases and controversies of the sort traditionally amenable to and resolved by the judicial process." (citation omitted)). *See also Coleman v. Miller*, 307 U.S. 433, 460 (1939) (Frankfurter, J., concurring) (the framers "gave merely the outlines of what were to them the familiar operations of the English judicial system … Judicial power could come into play only in matters that were the traditional concern of the courts at Westminster").

The public right to government records is a right traditionally recognized by American courts. "In 'the courts of this county'—including the federal courts—the common law bestows upon the public a right of access to public records and documents." *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). This common law right is generally not conditioned "on a proprietary interest in the document or upon a need for it as evidence in a lawsuit," but rather is based on "the citizen's desire to keep a watchful eye on the workings of public agencies" or on an organization's "intention to publish information concerning the operation of government." *Nixon*, 435 U.S. at 597-98 (citing *State ex rel. Colscott v. King*, 154 Ind. 621, 621-627 (1900)). It includes the right to both inspect and copy public records. *Id.* at 597. It is this right that Congress memorialized in FOIA and later under the NVRA.

The right to access government records is fundamental to a democratic society. "[O]penness in government has always been thought crucial to ensuring that the people remain in control of their government." *In re Sealed Case*, 121 F.3d 729, 749 (D.C. Cir. 1997). "Neither our elected nor our appointed representatives may abridge the free flow of information simply to protect their own activities from public scrutiny. An official policy of secrecy must be supported by some legitimate justification that serves the interest of the public office." *Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cty.*, 478 U.S. 1, 19 (1986) (Stevens, J., dissenting); *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.) ("[I]t is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."); *United States v. Smith*, 123 F.3d 140, 155 (3d Cir. 1997) ("The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system" (quoting *Leucadia v. Applied Extrusion Tech.*, 998 F.2d 157, 161 (3d Cir. 1993))).[4]

---

[4]    Though this Court found that the informational injury component of *TransUnion* does not import a historical analogue requirement for informational injury claims, *see Kelly v. Realpage, Inc.*, 47 F.4th 202, 212 n.8 (3d Cir. 2022), it is still important to understand for the context of the statutory injuries at issue here. The common law right to public information from government officials predates both FOIA and the public inspection provision of the NVRA and Congress legislated with these injuries in mind.

Plaintiffs here have shown an informational injury consistent with the type of injury Congress sought to protect in passing the NVRA. In order to "state a cognizable informational injury a plaintiff must allege that 'they failed to receive … required information" that "led to 'adverse effects' or other 'downstream consequences,'" and that such adverse effects have a "nexus to the interest Congress sought to protect" in the statute. *Kelly*, 47 F.4th at 214 (citing *TransUnion*, 141 S. Ct. at 2214 and *Spokeo*, 578 U.S. at 342).

Appellee unquestionably sought and was denied public records related to possible noncitizen registrants on the Pennsylvania voter registration list. The denial of these list maintenance records means that Plaintiff cannot "study and analyze the [Commonwealth's] voter list maintenance activities," ECF 66 ¶ 3, or otherwise hold public officials in the Commonwealth accountable for any alleged malfeasance. This in turn diminishes the Plaintiff's ability to determine whether the Commonwealth or any of its counties are in compliance with the list maintenance provisions of state and federal law.

These injuries, among others, have a close nexus to the type of injuries that Congress sought to prevent in passing the public disclosure provision of the NVRA. The provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project*

11

*Vote*, 682 F.3d at 334-35. *See also Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *13 (NVRA public disclosure provisions "convey Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs."). Failure to disclose records relating to the accuracy of the official list in the Commonwealth to nonprofit organizations, such as Plaintiff here, undermines the purposes of the NVRA. *See Lamone*, 399 F. Supp. 3d at 445 ("By excluding … organizations [like Judicial Watch] from access to [voter registration records], the State law undermines Section 8(i)'s efficacy").

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

DATED: November 20, 2023                    Respectfully submitted,


T. Russell Nobile                          James F. Peterson
**JUDICIAL WATCH, INC.**                        *Counsel of Record*
P.O. Box 6592                              Eric W. Lee
Gulfport, MS 39503                         **JUDICIAL WATCH, INC.**
Rnobile@judicialwatch.org                  425 Third Street, S.W.
(202) 527-9866                             Suite 800
                                           Washington, D.C. 20024
                                           Jpeterson@judicialwatch.org
                                           (202) 646-5172


        *Counsel for Amicus Curiae*

## CERTIFICATE OF BAR MEMBERSHIP

I certify pursuant to Local Rule 46.1 that I am a member in good standing of

the bar of the United States Court of Appeals for the Third Circuit.


Dated:  November 20, 2023                                *s/ James F. Peterson*

**CERTIFICATE OF VIRUS SCAN**

I hereby certify that the text of the electronic and hard copies of this brief are identical, and a full virus scan was run on the electronic version of this brief using Microsoft Defender through the Microsoft Windows 10 operating system, which detected no viruses.

Dated:  November 20, 2023                                *s/ James F. Peterson*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I hereby certify that this brief is proportionally spaced, 14-point Times New Roman font. Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and per Microsoft Word count, the brief is within the word limit at 2,794 words excluding tables and certificates.

Dated:  November 20, 2023                           *s/ James F. Peterson*

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(d)(2), that I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. I certify that the parties in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF service.

Dated: November 20, 2023                                  *s/ James F. Peterson*