Nos. 23-1590, 23-1591, 23-3045

IN THE

# United States Court of Appeals
### for the Third Circuit

PUBLIC INTEREST LEGAL FOUNDATION, INC.,

*Appellee*,

v.

ALBERT SCHMIDT, in his official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions,

*Appellants*.

**On Appeal from the United States District Court for the Middle District of Pennsylvania, Case No. 1:19-cv-00622 (Hon. Christopher C. Conner)**

## RESPONSE BRIEF OF APPELLEE
## PUBLIC INTEREST LEGAL FOUNDATION

Noel H. Johnson
Kaylan L. Phillips
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org

Linda A. Kerns, Esquire
LAW OFFICES OF LINDA A. KERNS, LLC
1420 Locust Street – Suite 200
Philadelphia, PA 19102
PA Atty ID 84495
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Public Interest Legal Foundation is a non-profit, 501(c)(3) organization. It is not a publicly held corporation, and no corporation or other publicly held entity owns more than 10% of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................... i

TABLE OF AUTHORITIES .......................................................... iii

JURISDICTIONAL STATEMENT .............................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF RELATED CASES ......................................... 3

STATEMENT OF THE CASE ................................................ 4

    *Introduction* ................................................................ 4

    *Statement of Facts* ........................................................ 5

    *Procedural History* ....................................................... 6

STANDARD OF REVIEW ..................................................... 7

SUMMARY OF THE ARGUMENT ............................................ 9

ARGUMENT .................................................................. 11

I.    The District Court's Fee Award Was Reasonable
and Appropriate in Light of the Foundation's Significant
and Excellent Results ................................................. 11

    A. The District Court's Decision Follows
Supreme Court Precedent ........................................... 11

    B. The Foundation's Results Are Excellent and the
Relief Obtained is Significant ...................................... 12

    C. The Commonwealth's Request for Additional Reductions
Are Unjustified and Unwarranted ................................. 19

        1. The Commonwealth's Driver's Privacy Protection Act
("DPPA") Defense Was Resolved in the Foundation's
Favor ............................................................. 19

        2. Redactions for Sensitive Data and Attorney Work Product
Do Not Make the Foundation's Results Less than Excellent .. 20

II.    Standing and Merits Arguments Are Not Appropriately
Resolved in the Appeal of the Fee Award ................................... 22

CONCLUSION .............................................................. 23

# TABLE OF AUTHORITIES

## *Cases*

*Barrett v. W. Chester Univ.*,
No. 03-CV-4978 (E.D. Pa. Mar. 31, 2006)............................................... 15

*E.C. v. Phila. Sch. Dist.*,
644 F. App'x 154 (3d Cir. 2016) ............................................................ 21

*Hawa Abdi Jama v. Esmor Corr. Servs.*,
577 F.3d 169 (3d Cir. 2009)......................................................14-15, 15 n.5

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................. 5, 9-10, 12-13, 16, 19, 21

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 (3d Cir. 2005)................................................................... 7

*Mancini v. Northampton Cty.*,
836 F.3d 308 (3d Cir. 2016).............................................................11-12

*McKenna v. City of Phila.*,
582 F.3d 447 (3d Cir. 2009)................................................................... 7

*Northeast Women's Center v. McMonagle*,
 889 F.2d 466 (3d Cir. 1989).................................................................. 7

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008)................................................................ 18

*Pub. Int. Legal Found. v. Boockvar*,
370 F. Supp. 3d 449 (M.D. Pa. 2019) ..................................................... 3

*Pub. Interest Legal Found. v. Boockvar*,
431 F. Supp. 3d 553 (M.D. Pa. 2019)................................................13-14

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990)................................................................. 7

*Trainor v. HEI Hosp., LLC*,
699 F.3d 19 (1st Cir. 2012) ................................................................. 19

*United States v. Joseph*,
730 F.3d 336 (3d Cir. 2013).................................................................. 22

*Washington v. Phila. Cty. Court of Common Pleas*,
89 F.3d 1031 (3d Cir. 1996)...............................................................7-8

*Weseley v. Spear, Leeds & Kellogg,*
    711 F. Supp. 713 (E.D.N.Y. 1989) ........................................................ 16

## *Statutes and Rules*

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

52 U.S.C. § 20507(i)(1) ................................................................ 1

52 U.S.C. § 20510(b) .................................................................... 1

52 U.S.C. § 20510(c) ................................................................. 1, 5

Fed. R. App. P. 28(i) ................................................................. 5-6

## JURISDICTIONAL STATEMENT

This brief responds to Appellants' ("Commonwealth") appeal from an order awarding Appellee attorney's fees, costs, and expenses pursuant to the fee-shifting provision of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20510(c). Appx32.[1]

Appellee Public Interest Legal Foundation ("Foundation") brought a one-count complaint alleging a violation of NVRA Section (8)(i), 52 U.S.C. § 20507(i)(1). ECF 1. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 because the action arose under the laws of the United States, as well as 52 U.S.C. § 20510(b) because the action sought declaratory and injunctive relief under the NVRA. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] District Court docket numbers are preceded by "ECF."

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

**1.      Whether the District Court's award of attorney's fees, costs, and expenses was reasonable.**

The Foundation addressed the reasonableness of the requested award in the District Court. *See* ECF 127 at 7-12. After reviewing the specific billing records and supporting documents, the District Court made additional reductions and determined that 450.5 hours were compensable. Appx31. The District Court held that the Foundation was entitled to the full value of compensable hours. *Id.*

## <u>STATEMENT OF RELATED CASES</u>

This appeal was consolidated with the parties' cross-appeals of the District Court's order on the merits. Case Nos. 23-1590 and 23-1591.

The Foundation filed an identical action prior to this action, which was dismissed. *See Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449 (M.D. Pa. 2019).

The Foundation is not aware of any other case related to this action.

## STATEMENT OF THE CASE

*Introduction*

In late 2017, the Commonwealth publicly admitted that foreign nationals had registered to vote at Pennsylvania Department of Motor Vehicle offices ("PennDOT") for the last several decades (hereafter, the "PennDOT Error"). Nos. 1590/1591 Appx025[2]; ECF 66 ¶ 6. Commonwealth investigations revealed that the number of foreign nations registered to vote could exceed 100,000. Nos. 1590/1591 Doc. 36 at 9 ¶ 6.

The Foundation has spent more than six *years* trying to assert its federal right to review records concerning the PennDOT Error. *See* Nos. 1590/1591 Doc. 36 at 13 ¶ 20. The Commonwealth has spent more than six years concealing those records and denying that such a right exists.

In March 2022, the District Court grant summary judgment to the Foundation, in part. Nos. 1590/1591 Appx50-51. The District Court decided the dispositive legal issue in the Foundation's favor, ECF 23 at 14, and ordered the Commonwealth to produce the vast majority of the requested records, ECF 84 ¶ 3; *see also* Appx17 ("At summary judgment, we found the Commonwealth had not fully met its burden

---

[2] The Foundation adopts the Commonwealth's citation scheme and uses "Nos. 1590/1591 Appx." to refer to the Joint Appendix in Case Nos. 23-1590 and 23-1591.

regarding three of PILF's four requests[.]"). The District Court's decision to award the Foundation the "full value of its compensable hours," Appx31, was entirely appropriate given the significance of the outcome and the "excellent results" the Foundation achieved. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). In other words, the Foundation "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Id*. at 434.

Compensating the Foundation for its time will encourage private enforcement of the NVRA, and thereby further the purpose of the NVRA's fee-shifting provision, 52 U.S.C. § 20510(c). For these reasons, the District Court's decision should be affirmed.

### *Statement of Facts*

Pursuant to Fed. R. App. P. 28(i) and the consolidation order dated November 20, 2023, the Foundation incorporates by reference its Statement of Facts in its Second Step Brief in Case Nos. 23-1590 and 23-1591. Nos. 1590/1591 Doc. 36 at 7-13.

***Procedural History***

Pursuant to Fed. R. App. P. 28(i) and the consolidation order dated November 20, 2023, the Foundation incorporates by reference its Procedural History in its Second Step Brief in Case Nos. 23-1590 and 23-1591. Nos. 1590/1591 Doc. 36 at 13-14.

On October 17, 2023, the District Court granted the Foundation's Motion for Attorney's Fees, Costs, and Expenses, ECF 127, awarding the Foundation $180,200.00 in attorney's fees and $2,612.85 in costs, Appx32 ("Fee Order").[3]

The Commonwealth appealed the Fee Order on November 15, 2023. Appx14.

---

[3] The District Court also granted the Foundation's Motion to Supplement the fee petition, ECF 131, and resolved the fee petition and supplement together, *see* Appx19 n.1 ("For simplicity's sake, we will address and refer to both motions as though they were one throughout the remainder of this opinion.").

6

## STANDARD OF REVIEW

Appellate Courts "exercise plenary review in considering whether the District Court applied the proper legal standards in determining the fee award, and [appellate courts] review the reasonableness of the fee award for abuse of discretion." *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (citations omitted). The Appellate Court "will conclude that there has been an abuse of discretion if a reasonable person could not have adopted the District Court's view of the appropriate amount of an award." *Id*. (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1182-83 (3d Cir. 1990)). The Appellate Court "review[s] the Court's factual findings on an attorneys' fee application, 'including [the Court's] determination of an attorney's reasonable hourly rate and the number of hours he or she reasonably worked on the case,' for clear error." *Id*. (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc*., 426 F.3d 694, 703 n.5 (3d Cir. 2005)).

"[T]he appellate court may not upset a trial court's exercise of discretion on the basis of a visceral disagreement with the lower court's decision. Similarly, the appellate court may not reverse where the trial court employs correct standards and procedures, and makes findings of fact not clearly erroneous." *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *Northeast Women's Center v. McMonagle*, 889 F.2d 466, 475 (3d Cir. 1989). "[I]f the district

7

court had applied the correct criteria to the facts of the case, then, it is fair to say that [the Court] will defer to its exercise of discretion." *Id*.

## SUMMARY OF THE ARGUMENT

After more than five years of litigation, the Foundation secured a significant, first-impression ruling concerning election transparency and an order entitling the Foundation to the vast majority of the records it sought. None of the Foundation's claims were unsuccessful. None of the requested records were outside the NVRA's scope as a matter of law. Instead, the District Court approved narrow, factual exceptions for pure motor vehicle data (which the Foundation never requested), allegedly sensitive data, and attorney work product—defenses the Commonwealth did not raise until after litigation commenced. *See* ECF 1-18.

The District Court correctly acknowledged that the Foundation began this action seeking documents that would answer questions about the Commonwealth's investigation of the PennDOT Error and ended this action with an order compelling production of records that will answer those questions. Appx023. Along the way, the District Court resolved the dispositive legal issue in the Foundation's favor, a decision that will benefit the public indefinitely. By any measure, the outcome was significant, and the results were "excellent." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 435 (1983). The District Court therefore did not err when it found the Foundation "is entitled to the full value of the compensable hours it successfully invested toward that end." Appx23.

The Foundation scrupulously eliminated *more than $32,000* from its initial request in an exercise of billing judgment. The District Court then methodically reviewed the entries and made its own reductions. Appx25-31. No additional reductions are warranted, much less the additional sweeping, arbitrary, and exorbitant seventy-five percent (75%) cut the Commonwealth requested below. ECF 129 at 9.

For these reasons, the District Court's opinion should be affirmed.

# **ARGUMENT**

## I.    The District Court's Fee Award Was Reasonable and Appropriate in Light of the Foundation's Significant and Excellent Results.

### A. The District Court's Decision Follows Supreme Court Precedent.

The Commonwealth pays lip service to *Hensley v. Eckerhart*, 461 U.S. 424 (1983), but ultimately misses the most important standards: "Where a plaintiff has obtained **excellent results**, his attorney should recover a fully compensatory fee." *Id*. at 435 (emphasis added). In such cases, the fee award "will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. Importantly, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id*. In cases like this, the Supreme Court instructs that the "district court should focus on the **significance of the overall relief** obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. (emphasis added). In short, "[t]he result is what matters." *Id*. As explained herein, the District Court's award comports with these standards.

Circuit precedent, including *Mancini v. Northampton Cty.*, 836 F.3d 308 (3d Cir. 2016), affirms *Hensley*'s instruction that fee awards should reflect the litigation's overall success. In *Mancini*, the defendant argued for a substantial reduction in plaintiff's fee award due to plaintiff's failure to succeed on all her legal

theories. *Id*. at 320-21. The Third Circuit affirmed the District Court's decision to award a full fee because the plaintiff "prevailed on her due process claim … as well as a central issue in the case" and because there was "substantial overlap in the evidence required to prove" all of plaintiff's claims. *Id*. at 321. The result mattered.

The Commonwealth's argument depends on a faulty premise—that the Foundation's success was "limited." (Doc. 23 at 13.) This general premise completely ignores this action's central legal issue (*i.e.*, the NVRA's scope), and depends on an absurdly narrow characterization of the Foundation's case, one that recasts this action as a dispute over driver's license records. (*See* Doc. 23 at 13.)

Using its discretion, *Hensley*, 461 U.S. at 436, the District Court found the Commonwealth's plea for sweeping reductions unjustified. Instead of focusing on the volume of paper obtained (which is nonetheless significant), the District Court followed Supreme Court precedent. It focused on the results and various related factors (*see* Doc. 23 at 8), finding them sufficient to justify a full award, after taking reductions into account. (*Id*.).

### B. The Foundation's Results Are Excellent and the Relief Obtained is Significant.

An examination of the Foundation's results justifies the District Court's award.

**First**, the Foundation succeeded on its one and only count, meaning there were zero unsuccessful claims. ECF 1 ¶¶ 141-146. The Foundation alleged that the Commonwealth's denial of the records request violated the NVRA and prayed for a judgment ordering the Commonwealth to provide the requested records. ECF 1, Prayer for Relief ¶ 2. The Foundation received exactly what it prayed for. *See* Nos. 1590/1591 Appx50-51.

The Foundation's case is much like the hypothetical case *Hensley* describes:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435. This action involved a single claim and a common core of facts. The District Court therefore appropriately focused on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*.

**Second**, the Foundation succeeded on the primary legal issue: whether records concerning activities designed to identify ineligible registrants based on their citizenship status are within the NVRA's scope. *See Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 (M.D. Pa. 2019). The Court answered that

13

question "yes." *Id*. In fact, the Court went even further, deciding that the NVRA's Public Disclosure Provision "contemplates an *indefinite* number of programs *and* activities." *Id*. at 560 (emphasis in original). The Foundation's victory on this issue was the first of its kind in this Circuit. *Id*. at 559 ("As a matter of first impression in our circuit, we are asked to interpret the NVRA's Disclosure Provision.").

Relatedly, the Foundation succeeded on the primary factual issues. When the Commonwealth denied the Foundation's requests, it denied that it even conducted a program to identify and remove foreign nationals. *See* ECF 1-18 (stating that the Commonwealth "does not currently have such a program in place"). The Court also rejected this argument: "[T]he Commonwealth's effort to identify noncitizen registrants is a 'program' or 'activity' designed to identify noncitizens and ensure an accurate and current list of eligible voters. Records concerning this effort are therefore accessible to the public under the Disclosure Provision." *Pub. Interest Legal Found.*, 431 F. Supp. 3d at 561.[4]

**<u>Third,</u>** the Foundation's victory served a public purpose. In *Hawa Abdi Jama v. Esmor Corr. Servs.*, 577 F.3d 169, 176 (3d Cir. 2009), this Court explained that

---

[4] At the summary judgment stage, the Commonwealth continued to deny basic factual truths—that the Commonwealth engaged in voter list maintenance activities when it took action to identify and remove noncitizens from the voter roll. (*See* ECF 73 at 2 ("To the extent PILF seeks 'list maintenance' records relating to removal programs aimed at non-citizens, there are no records to produce.").

"a district court determining the degree of a plaintiff's success should consider not only the difference between the relief sought and achieved, but also the significance of the legal issue decided and whether the litigation served a public purpose."[5]

As a result of this action, election transparency in the Commonwealth has been permanently improved, and the public will reap this action's benefits indefinitely. Before this action, the Commonwealth believed it could conceal all records unrelated to registrant death and relocation. *See* Nos. 1590/1591 Appx14. Now, in accordance with other courts and the NVRA's text, "all records" concerning voter list maintenance are open to public inspection. *See* Nos. 1590/1591 Appx12. The Foundation's success on the primary contested legal and factual issues combined with the enduring public benefit of the resulting judgment should be considered "excellent results," no matter how many pieces of paper ultimately end up in the Foundation's hands. *See Barrett v. W. Chester Univ.*, No. 03-CV-4978, 2006 U.S. Dist. LEXIS 15332, at *54 (E.D. Pa. Mar. 31, 2006) ("Plaintiffs have clearly obtained 'excellent results' and succeeded on the *central issue*: reinstatement of WCU women's gymnastics team.") (emphasis added).

---

[5] *Hawa Abdi Jama* was a nominal damages case. *See* 577 F.3d at 173-74. This case is not. The "significance of the legal issue decided and whether the litigation served a public purpose" is one factor among several demonstrating that the Foundation achieved "excellent results" and should receive the full value of its compensable fees under *Hensley*.

15

The novelty of the Foundation's claim intensifies the significance of the relief obtained. Issues of first impression require more preparation and risk than issues previously litigated. When the chance of success is uncertain and the path is unpaved, the need to attract competent counsel heightens. *See Hensley*, 461 U.S. 429 ("The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances.") (quoting H. R. Rep. No. 94-1558, p. 1 (1976)). Notably, at least one court has found that "where the claim presents novel legal issues or difficulties of proof making the outcome highly uncertain, the court should reward counsel's success at a **higher rate** than where the claim is more or less routine and success relatively assured." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 716 (E.D.N.Y. 1989) (emphasis added) (awarding fees in class action lawsuit under Securities Exchange Act).

**Fourth**, the District Court found that all requested records are within the NVRA's scope as a matter of law. The Foundation requested from the Commonwealth four (4) categories of records. *See* Nos. 1590/1591 Doc. 36 at 13 ¶ 20. The Commonwealth issued a complete denial, taking the position that every category of records was outside the NVRA's scope. *See* ECF 1-18.

The District Court countered the Commonwealth's omnibus denial by completely rejecting its legal theory. Nos. 1590/1591 Appx14 ("For all of these

16

reasons, we conclude that the Disclosure Provision's broad grant of access is not limited to records related to registrant death or changes in residence."). The District Court then ordered the Commonwealth "to comply with plaintiff's first, second, and third disclosure requests to the extent required by the National Voter Registration Act…." Nos. 1590/1591 Appx51; *see also* Appx17 ("At summary judgment, we found the Commonwealth had not fully met its burden regarding three of PILF's four requests[.]").

The Foundation succeeded on its fourth disclosure request as a matter of law. Judgment was nevertheless entered for the Commonwealth on that request only because the Commonwealth swore in its summary judgment filings that it "lacks any records to disclose." ECF 83 at 23 (citing ECF 64 at 17-18; ECF 64-1 ¶¶ 42-43). What that means is the Commonwealth could have resolved the Foundation's fourth request before this action was even filed—or any time thereafter. Instead, the Commonwealth steadfastly maintained that all requested records were outside the NVRA's scope, *see* ECF 1-18, thereby forcing the Foundation to pursue all requests, including the fourth request, through the summary judgment stage. Judgment in the Commonwealth's favor on the fourth request does not change the excellent nature of the Foundation's results.

**Fifth**, as the District Court recognized, the Foundation accomplished what it set out to do—answer questions about the Commonwealth's response to an unprecedented voter list maintenance malfunction, *see* Appx023. This circumstance supports the District Court's decision. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 236 (3d Cir. 2008) ("At the end of the proceedings, plaintiffs had achieved precisely what they sought on an enduring basis, and that success was a result of plaintiffs' efforts and court-enforced victories rather than defendant's voluntary actions. The District Court did not err when it based the lodestar on the full duration of the proceedings.") (citing *Hensley*, 461 U.S. at 435).

Congress designed the NVRA's Public Disclosure Provision to allow the public to monitor the voter registration and list maintenance activities of government. *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) ("State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer."). As a result of this action, the Foundation and the public know more about their government and what it did and did not do to protect voting rights in the Commonwealth. The Foundation substantially advanced Congress's intent.

18

The Supreme Court is clear: "The result is what matters." *Hensley*, 461 U.S. at 435. "In this litigation, the plaintiff achieved what only can be described as a smashing success and, therefore, he should 'recover a fully compensatory fee.'" *Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 36 (1st Cir. 2012) (quoting *Hensley*, 461 U.S. at 435).

### C. The Commonwealth's Request for Additional Reductions Are Unjustified and Unwarranted.

The Commonwealth identifies two reasons the Foundation's fee award should be reduced even further, neither of which has merit.

### 1. The Commonwealth's Driver's Privacy Protection Act ("DPPA") Defense Was Resolved in the Foundation's Favor.

The Commonwealth simply invents a narrative when it claims the Foundation's "principal demand" was for "driver's license records." (Doc. 23 at 13.) As a matter of record, the Foundation never asked for driver's license records. *See* ECF 15 at 16 ("The Foundation has not asked to inspect motor vehicle records covered by the DPPA."). The Foundation asked to inspect voter list maintenance records in the Commonwealth's possession. From the very beginning, the Foundation argued that "even if pure motor vehicle records provided to state election officials cannot be disclosed, records of derivative list maintenance activities

certainly must be disclosed, particularly those related to the identification or cancellation of registrants[.]" ECF 15 at 20. The Court effectively agreed.

> The Commonwealth's interpretation of our ruling is overbroad. As indicated by our use of the phrase "to the extent they include," our holding applies only to the personal information obtained from DMV motor vehicle records and information derived from that personal information. (*See* Doc. 23 at 17). Our holding does not protect information derived from non-DMV sources even when that information is included in a record containing personal information obtained from DMV records.

*Pub. Int. Legal Found.*, 595 F. Supp. 3d at 306. In other words, the Commonwealth's efforts to use the DPPA to universally shield voter list maintenance records failed. The District Court's recognition that the DPPA remains valid with respect to pure motor vehicle data is uncontroversial and does not change the "excellent" nature of the Foundation's results.

### 2. Redactions for Sensitive Data and Attorney Work Product Do Not Make the Foundation's Results Less than Excellent.

The District Court's approval of redactions for allegedly private data and information constituting attorney work product likewise does not change the Foundation's entitlement to a fully compensatory fee under *Hensley*'s "excellent results" standard. Those narrow exceptions did not upset the District Court's threshold finding that the requested records are within the NVRA's scope as a matter of law. In any event, "the fee award should not be reduced simply because the

plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; *see also E.C. v. Phila. Sch. Dist.*, 644 F. App'x 154, 156-57 (3d Cir. 2016) (denying request to reduce fee award by "16.66 percent because the parents were unsuccessful on two of their six claims," and stating, "plaintiffs' failure to prevail on all their legal theories do not justify reductions in attorneys' fees where the plaintiffs obtained excellent results").

The Commonwealth's contention that the Foundation's principal goal was to obtain its attorneys' work product defies reasonableness. (*See* Doc. 23 at 13.) The Foundation's request does not mention attorney work product. The work product defense played no role in the District Court's resolution of the motion to dismiss. To the Foundation's knowledge, the Commonwealth did not raise the work product defense in a filing until May 2021, more than three and half years after the Foundation made its records request. ECF 64 at 12 n.6 (explaining that a "detailed discussion" of the work product defense is "unnecessary"). The Commonwealth's request for a sweeping, across-the-board reduction to account for its work product defense flouts logic.

Before the District Court, the Commonwealth demanded *at least* a massive, seventy-five percent (75%) reduction. ECF 129 at 9. While such a request was arbitrary, extreme, and unjustified, it was at least numerical. Here, the

Commonwealth proposes no concrete reductions. It claims the fee award is simply too high, effectively asking this Court to do the Commonwealth's job. This Court should decline. Regardless, there is no escaping that the Foundation securing a landmark victory for election transparency is an "excellent result[]." Therefore, the Foundation should receive the full value of compensable fees, as the District Court concluded.

## II.    Standing and Merits Arguments Are Not Appropriately Resolved in the Appeal of the Fee Award.

The Commonwealth uses its Opening Brief in this fees appeal to repeat standing and merits arguments. (Doc. 23 at 11-13, 17.) The Court should disregard those arguments for at least two reasons.

**<u>First</u>**, the Commonwealth did not raise standing or the underlying merits in its fee petition response below, so those arguments are therefore waived. *United States v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013) ("We hold that for parties to preserve an argument for appeal, they must have raised the same *argument* in the District Court—merely raising an *issue* that encompasses the appellate argument is not enough."); *see also* Doc. 36 at 2-3 (explaining that standing and merits arguments were raised in District Court filings unrelated to the fee petition).[6]

---

[6] The Commonwealth will likely explain that standing and merits arguments were raised in its motion to dismiss and summary judgment filings. True enough, but

**Second**, the parties addressed standing and merits arguments at length in the merits briefs in Case Nos. 23-1590 and 23-1591. Those issues are appropriately resolved as part of the appeal of the merits, not in this appeal focusing on fees. Regardless, in the event this Court modifies the District Court's decision on the merits—in either party's favor—the proper place to resolve the modification's impact on the fee award is in the District Court.

The Foundation nevertheless incorporates by reference its arguments concerning standing and the merits in Case Nos. 23-1590 and 23-1591. *See* Nos. 1590/1591 Docs. 36 and 57.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's Fee Order and award the Foundation reasonable attorney's fees, cost, and expenses related to this appeal.

---

that only reinforces the Foundation's point—those issues are appropriately resolved as part of the merits appeal.

Dated: April 12, 2024.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:

Linda A. Kerns, Esquire
LAW OFFICES OF LINDA A. KERNS, LLC
1420 Locust Street – Suite 200
Philadelphia, PA 19102
PA Atty ID 84495
Tel: (215) 731-1400
Fax: (215) 701-4154
linda@lindakernslaw.com

  /s/ Noel H. Johnson
Noel H. Johnson
Kaylan L. Phillips
Attorneys for Public Interest Legal Foundation, Inc.
107 S. West Street, Ste. 700
Alexandria, VA 22314
(703) 745-5870
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Circuit Rule 46.1(e), I certify that I am a member in good

standing of the bar of the United States Court of Appeals for the Third Circuit.


<u>  /s/ Noel H. Johnson          </u>
Noel H. Johnson
Counsel for Public Interest Legal Foundation

Dated: April 12, 2024.

## CERTIFICATE OF COMPLIANCE AND
## VIRUS SCAN CERTIFICATION

I, Noel H. Johnson, certify the following:

1.      This brief complies with the type-volume limits of Fed. R. App. P.

32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Rule 32(f),

this brief contains 3,972 words.

2.      This brief also complies with the typeface requirements of Fed R.

App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced

type face using Microsoft Word in 14-point Times New Roman.

3.      The text of the electronic and hard copies of this brief are identical.

4.      A virus scan was run on the electronic version of this brief using

Avast Business Antivirus, which detected no viruses.


   /s/ Noel H. Johnson
Noel H. Johnson
Counsel for Public Interest Legal Foundation

Dated: April 12, 2024.

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2024, I electronically filed the foregoing using the Court's ECF system, which will serve notice on all parties.

 /s/ Noel. H Johnson

Noel H. Johnson
njohnson@publicinterestlegal.org