No. 23-1590, No. 23-1591, & No. 23-2045

---

IN THE UNITED STATES COURT OF APPEALS FOR THE
THIRD CIRCUIT

---

THE PUBLIC INTEREST LEGAL FOUNDATION,

Appellee/Cross-Appellant,

*v.*

AL SCHMIDT, in his official capacity as SECRETARY
OF THE COMMONWEALTH OF PENNSYLVANIA,
and
JONATHAN M. MARKS, in his official capacity as DEPUTY
SECRETARY FOR ELECTIONS AND COMMISSIONS,

Appellants/Cross-Appellees.

---

Appeal From Final Order Entered by U.S. District Court for
the Middle District of Pennsylvania in Case No. 1:19-CV-622

---

---

BRIEF OF AMICUS CURIAE IN SUPPORT OF PETITION
FOR *EN BANC* REHEARING

---

| | |
|---|---|
| *Andrew Zimmitti* | *Nicholas Wanic* |
| America First Policy Institute, Center for Litigation | America First Policy Institute, Center for Litigation |
| 1455 Pennsylvania Ave. NW Suite 225 | 1455 Pennsylvania Ave. NW Suite 225 |
| Washington, D.C. 20004 | Washington, D.C. 20004 |
| (703) 755-0944 | (779) 396-0137 |
| *Attorney for Amicus Curiae* | *Of Counsel* |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29 and Local Rule App. P. 26.1, the America First Policy Institute ("AFPI") has no financial interest in this case. AFPI is a non-profit, 501(c)(3) organization. It is not a publicly held corporation, has no parent companies or subsidiaries, and it neither owns, nor is owned by, any of the parties in this case.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    The Panel's Decision Will Prevent Public Interest Organizations Like AFPI From Accessing Records Needed to Support Election Integrity Work, Harming Transparency and Security in American Elections.

        . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . .. . . . . . . . . 3

    II.   The Panel's Decision Splits the Circuit from Decades Worth of Well-Established Election Integrity and Government Transparency Rulings.
        . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . .. . . . . . . . 8

PRAYER . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF BAR MEMBERSHIP . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE AND VIRUS SCAN . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## *Cases*

*Adams v. Fulton County Georgia, et al.,*
  Fulton County Case No. 24CV011584 . . . . . . . . . . . . . . . . . . . . . . . 6

*Air Alliance Houston v. U.S. Chemical and Safety Hazard Investigation Bd.,*
  365 F.Supp.3d 118 (D.D.C. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Arizona Free Enterprise Club v. Fontes,*
  Maricopa Superior Court No. CV2024-002760 . . . . . . . . . . . . . . 6, 7

*Campaign Legal Ctr. v. Scott,*
  49 F.4th 931 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Greater Birmingham Ministries v. Secretary of State for Alabama,*
  105 F.4th 1324 (11th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harty v. W. Point Realty, Inc.,*
  28 F.4th 435 (2d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Judicial Watch, Inc. v. Griswold,*
  554 F.Supp.3d 1091 (D. Colo. 2021) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Judicial Watch, Inc. v. King,*
  993 F.Supp.2d 919 (S.D. Ind. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kelly v. RealPage, Inc.,*
  47 F.4th 202 (3d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Natural Resources Defense Council v. Department of Interior,*
  410 F.Supp.3d 582 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Norvell v. Blue Cross & Blue Shield Ass'n,*
  No. 19-35705, 2021 WL 5542169 (9th Cir. Nov. 26, 2021) . . . . . . 9

*Laufer v. Looper,*
    22 F.4th 871 (10th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Laufer v. Naranda Hotels, LLC,*
    60 F.4th 156 (4th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Project Vote / Voting for America, Inc. v. Long,*
    682 F.3d 331 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

*Public Interest Legal Foundation, Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Public Interest Legal Foundation, Inc. v. Bellows,*
    664 F.Supp.3d 153 (D. Me. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Public Interest Legal Foundation, Inc. v. Dahlstrom,*
    673 F.Supp.3d 1004 (D. Alaska 2023) . . . . . . . . . . . . . . . . . . . . . . 11

*Public Interest Legal Foundation, Inc. v. Matthews,*
    589 F.Supp.3d 932 (C.D. Ill. 2022) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Public Interest Legal Foundation v. Secretary of the Commonwealth of Pennsylvania,*
    136 F.4th 456 (3d Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Seife v. U.S. Department of Health and Human Services,*
    440 F.Supp.3d 254 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . 13

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Voter Reference Foundation, LLC v. Torrez,*
    727 F.Supp.3d 1014 (D.N.M. 2024) . . . . . . . . . . . . . . . . . . . . . . . 11

*VoteVets Action Fund v. United States Department of Veterans Affairs*,
    992 F.3d 1097 (D.D.C. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### *Administrative Proceedings*

*Erin Webster v. Suzanne Pinnow*,
    EL 24-91 (May 27, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

### *Statutes*

52 U.S.C. § 20507(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTEREST OF *AMICUS CURIAE*[1]

The America First Policy Institute ("AFPI") is a non-profit, non-partisan research institute dedicated to the advancement of policies that put the American People first. Its guiding principles are liberty, free enterprise, the rule of law, America-first foreign policy, and a belief that American workers, families, and communities are the key to the success of our country. It is the mandate of policymakers to advance and serve these interests above all others. As part of its mission, AFPI houses the Center for Election Integrity, which participates in a national effort to conduct research, educate stakeholders, and develop policies that help make it easy to vote, but hard to cheat. AFPI, thus, works with state partners to highlight measures and best practices that ensure free and fair elections throughout the United States and promote confidence in United States representative democracy. Because the decision of the Panel in the instant case raises the threshold for standing to access information—information that must be publicly available under federal

---

[1] Undersigned counsel certifies that no one other than AFPI paid in whole or in part for the preparation of this *amicus curiae* brief or authored in whole or in part this brief. *See* Fed. R. App. P. 29(a)(4)(E)(i)-(iii).

law[2]—the mission of AFPI and numerous other public interest groups would be severely compromised if not reversed.

---

[2] 52 U.S.C. § 20507(i)(1)

INTRODUCTION

The foundation of the American system of self-governance is liberty and transparency, and the core expression of these principles is the ability to vote in free and fair elections. Safeguarding the integrity of our elections is paramount to preserving our republic. The Panel decision in *Public Interest Legal Foundation v. Secretary of the Commonwealth of Pennsylvania*, 136 F.4th 456 (3d Cir. 2025), which conflicts with long-standing precedent from its sister circuits, misapplies *TransUnion LLC v. Ramirez* and improperly heightens the standing threshold, despite a clear Congressional mandate for transparency, in cases involving statutory rights to information critical to ensuring election transparency and government accountability. As a result, the mission of public interest organizations like AFPI—to expose government corruption and voting rights violations—will be seriously harmed.

ARGUMENT

I.    The Panel's Decision Will Prevent Public Interest Organizations Like AFPI From Accessing Records Needed to Support Election Integrity Work, Harming Transparency and Security in American Elections.

AFPI shares Petitioner's concern as stated in its principal brief: "if a voting rights organization like the [Public Interest Legal Foundation]

3

does not have standing here, then virtually no one does, and the transparency Congress intended does not exist." *Dkt.* 98, at 7. The Panel's decision, if allowed to stand, will cause harm to our democratic institutions and the public's trust in their democracy.

By unnecessarily raising the standard for informational injury, public interest organizations like AFPI and the Public Interest Legal Foundation ("PILF") will be effectively blocked from accessing records that are vital to ensuring the integrity of elections and holding public officials accountable. This is contrary to Congress's broad intent to promote transparency in our democratic institutions. The Fourth Circuit eloquently summarized this strong public interest in ensuring transparency and public access to voter roll information:

> It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls. State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. *Without such transparency, public confidence in the essential workings of democracy will suffer* . . . Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections.

*Project Vote / Voting for America, Inc. v. Long*, 682 F.3d 331, 339-40 (4th Cir. 2012) (*emphasis added*).

Contrary to other courts across the country, the Panel has determined that parties seeking to assert informational injury cannot merely claim violation of a Congressionally created interest.[3] Instead, parties seeking voter roll information must now demonstrate that the information sought serves a concrete interest *and* that there is direct harm from its denial. *PILF*, 136 F.4th at 464 (citing *Kelly v. RealPage, Inc.*, 47 F.4th 202, 211–14 (3d Cir. 2022) for the proposition that "deprivation of information to which one is legally entitled constitutes a sufficiently concrete informational injury *when that omission causes adverse effects* and the information has some relevance to an interest of the litigant." (cleaned up) (*emphasis in original*)).  This heightened standard for establishing informational injury creates a nearly insurmountable hurdle for public interest organizations like AFPI which are devoted to monitoring elections for compliance with the NVRA and ensuring the integrity of elections, while holding public officials accountable.

---

[3] *See e.g.*, *infra* at fn. 5; *see also, Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023).

AFPI has engaged in numerous legal actions which have supported its Center for Election Integrity's mission to improve election transparency and uphold voter rights. These continuing efforts are critical to ensuring the fulfillment of congressional intent behind the NVRA's public disclosure provision, which is, first and foremost, transparency. And they will be in jeopardy if the Panel's new, heightened informational injury requirement for standing is not vacated.

AFPI's more recent efforts to promote election integrity include, for example, *Adams v. Fulton County Georgia, et al.*, in which AFPI successfully represented Board of Elections and Registration member Julie Adams. Ms. Adams was wrongfully denied access to election records, materials, data, equipment, reports from poll workers, and other vital information necessary for her and other board members to perform their statutory duties. Fulton County Case No. 24CV011584. As a result of AFPI's advocacy in that case, the Fulton County Superior Court ruled that Ms. Adams was lawfully entitled to *complete* access to these materials to perform her official duties. *Id.*

Likewise, in *AZ Free Enterprise Club v. Fontes*, AFPI sued the Arizona Secretary of State over Arizona's 2023 Election Procedures

Manual, which criminalized Arizonans' free speech with new, draconian restrictions. *Arizona Free Enterprise Club v. Fontes,* Maricopa Superior Court No. CV2024-002760, Amend. Compl. at ¶¶ 1, 2, 4-6. The Maricopa County Superior Court ruled in AFPI's favor, determining that certain provisions in the Manual violated Arizonans' free speech rights under both the Arizona and U.S. Constitutions. *Id.* CV2024-002760, Ruling August 5, 2025, p. 17. The court found that the Manual's restrictions on expression near polling places were overly broad and vague, potentially criminalizing lawful speech. *Id.*

Also, in *Webster v. Pinnow,* a decision of the Wisconsin Election Commission, AFPI defended a Wisconsin town clerk against allegations that the town's decision to cease using electronic voting machines in favor of hand-counted paper ballots somehow violated Wisconsin law. *Erin Webster v. Suzanne Pinnow*, EL 24-91 (May 27, 2025). The Commission determined that there was no violation of law or abuse of discretion by the town, which was free to discontinue the use of electronic voting systems at its discretion. *Id.* at 8.

AFPI's success in these matters is a direct result of the kind of transparency provided in our open records laws. However, a heightened

standard for establishing informational injury will place AFPI's mission to advance the cause of election integrity in serious jeopardy. By failing to acknowledge Congressionally created rights of action for informational injuries, public interest groups will be presented with new challenges as they seek necessary information to continue their advocacy efforts on behalf of the public.

There is little doubt that the Panel's decision, if allowed to stand, will have a chilling impact on organizations that seek information to perform research and educate the public. *Public Interest Legal Foundation v. Secretary of the Commonwealth of Pennsylvania*, 136 F.4th at 468 ("we further reject [PILF's] argument that the 'frustrat[ion] [of] the educational aspect of its mission,' and its inability to publish 'educational materials,' constitute downstream consequences envisioned by the statute sufficient to establish Article III standing because the publication of educational materials bears no nexus to an interest protected by the statute.") (internal citations omitted). Public interest organizations like AFPI and PILF should not face additional barriers to engage in these crucial functions.

II.    The Panel's Decision Splits the Circuit from Decades Worth of Well-Established Election Integrity and Government Transparency Rulings.

The Panel's decision conflicts with decades of rulings on standing under the Freedom of Information Act and other public records laws, and creates a conflict within the courts. Although the Petitioners correctly point to *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023) (rejecting the need to plead additional harm beyond the denial of public information) as evidence of conflict amongst circuit courts, *Dkt*. 98, at 1, the split extends far beyond just the Fourth Circuit.

While it is correct that, since *TransUnion*, courts have recognized that a plaintiff claiming informational injury must have suffered adverse effects from the denial of access to information to obtain standing,[4] courts have also recognized that *TransUnion* did not work a "sea change." *See Kelly*, 47 F.4th at 214. Rather, *TransUnion* "simply reiterated the lessons of . . . prior cases: namely, to state a cognizable informational injury a

---

[4] *See, Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022); *Kelly v. RealPage, Inc.*, 47 F.4th 202, 211–14 (3d Cir. 2022); *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 936–39 (5th Cir. 2022); *Laufer v. Looper*, 22 F.4th 871, 880–81 (10th Cir. 2022); *see also, Norvell v. Blue Cross & Blue Shield Ass'n*, No. 19-35705, 2021 WL 5542169, at *1 (9th Cir. Nov. 26, 2021).

plaintiff must allege that they failed to receive required information, and that the omission led to adverse effects or other downstream consequences." *Id.* (internal citations and quotations omitted).

Until the Panel's decision, informational injury was satisfied by the mere violation of an interest Congress sought to protect under the NVRA. Even in *TransUnion*, the Supreme Court was clear: "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation. In that way, Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" 594 U.S. 413, 425-26 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (internal citations omitted). Under the Panel's decision, the deference owed to the legislative grant is effectively rendered irrelevant.

Because the Panel has invited courts to essentially ignore the violation of statutory rights as a basis for informational injury, years of precedent related to public disclosure under the NVRA may now be called

in to question. Courts across the nation have a rich history of validating such injuries and protecting the integrity of elections.[5]

---

[5] *See generally, Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) (affirming *Public Interest Legal Foundation, Inc. v. Bellows*, 664 F.Supp.3d 153 (D. Me. 2023) (holding that the exception in the general confidentiality regime of Maine law prohibiting disclosure of statewide voter registration list was preempted by public disclosure provision of the NVRA and that the organization had standing to pursue its claims challenging use and enforcement bans of exception in general confidentiality regime); *see also, Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) (holding that voter registration applications fell within general disclosure mandate of the NVRA); *Public Interest Legal Foundation, Inc. v. Matthews*, 589 F.Supp.3d 932 (C.D. Ill. 2022) (determining, as a matter of first impression, that a voter registration list was a "record" subject to public disclosure provision of NVRA and that Illinois's interest in protecting citizens' privacy was not so great as to permit the State to refrain from keeping voter registration list from public disclosure); *Public Interest Legal Foundation, Inc. v. Dahlstrom*, 673 F.Supp.3d 1004 (D. Alaska 2023) (holding PILF had plausibly alleged that withheld records fell within the NVRA's disclosure provision deceased voter reports received from the Electronic Registration Information Center, which used death master file maintained by Social Security Administration to identify deceased voter); *Judicial Watch, Inc. v. Griswold*, 554 F.Supp.3d 1091 (D. Colo. 2021) (holding plaintiffs established Article III standing, and that plaintiffs plausibly alleged that Colorado's voter list maintenance program did not comply with NVRA); *Voter Reference Foundation, LLC v. Torrez,* 727 F.Supp.3d 1014 (D.N.M. 2024) (granting summary judgment in favor of plaintiffs on the NVRA preemption claim, concluding that the federal law's public inspection provision overrides the state's usage and sharing restrictions); *Greater Birmingham Ministries v. Secretary of State for Alabama,* 105 F.4th 1324 (11th Cir. 2024) (holding Secretary of State violated the public-disclosure provision of the NVRA by failing to provide records which related to the disqualification of voters because of a felony

With respect to the NVRA, its public disclosure provision has had real world consequences that have improved the integrity of our elections. For example, Indiana's voter roles were updated and brought into compliance with the voter list maintenance requirements of the NVRA as a direct result of a lawsuit brought by public interest organizations like PILF and AFPI. *See*, *Judicial Watch, Inc. v. King*, 993 F.Supp.2d 919 (S.D. Ind. 2012) (holding plaintiffs had sufficiently alleged that Indiana's voter rolls were inaccurate and that the state had not provided the requested records, potentially violating the NVRA). More recently, PILF successfully overturned a Maine law prohibiting publication of voter registration information, allowing for disclosure of the records without threat of fines and thereby improving election transparency. *See*, *Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) (holding Maine statute prohibiting publication of voter registration information was preempted by NVRA). These successes were possible in part because public interest organizations

---

conviction and to the denial of new voter-registration applications for the same reason)

were able to obtain public voter roll information under the NVRA without first having to demonstrate harm stemming from a violation.

This kind of transparency is crucial to a functioning democracy, and the Panel's decision risks not just transparency in elections, but also places government accountability and public safety at risk. Courts have long understood that impeding access to such vital public information itself constitutes sufficient injury, whether in the context of open meetings, the disclosure of environmental hazards, drug efficacy research, or transparency in administrative proceedings.[6]

---

[6] *See, Natural Resources Defense Council v. Department of Interior*, 410 F.Supp.3d 582, 598 (S.D.N.Y. 2019) (upholding informational injury which "render[ed] it impossible [to] gather and disseminate information to their constituent members"); *Air Alliance Houston v. U.S. Chemical and Safety Hazard Investigation Bd.,* 365 F.Supp.3d 118 (D.D.C. 2019) (upholding informational injury related to the failure to disclose environmental health hazards); *Seife v. U.S. Department of Health and Human Services*, 440 F.Supp.3d 254 (S.D.N.Y. 2020) (vindicating informational injury related to information requested for independent drug safety and efficacy research); *VoteVets Action Fund v. United States Department of Veterans Affairs*, 992 F.3d 1097 (D.D.C. 2021) (finding violation of the Administrative Procedure Act's disclosure and transparency requirements).

## PRAYER

In light of the foregoing, the Court should grant the petition for rehearing *en banc* to restore the uniform application of informational standing doctrine and safeguard the NVRA's transparency mandate.

Respectfully submitted this 6th day of June, 2025.

*s/Andrew Zimmitti*

_____

*Andrew Zimmitti*
America First Policy Institute,
Center for Litigation
1455 Pennsylvania Avenue NW
Suite 225
Washington, D.C. 20004
(703) 755-0944

*Attorney for Amicus Curiae*

*Nicholas Wanic*
America First Policy Institute,
Center for Litigation
1455 Pennsylvania Avenue NW
Suite 225
Washington, D.C. 20004
(779) 396- 0137

*Of Counsel*

14

## CERTIFICATE OF BAR MEMBERSHIP

I certify pursuant to Local Rule 46.1 that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Respectfully submitted this 6th day of June, 2025.

*/s/ Andrew Zimmitti*
_____

*Andrew Zimmitti*
America First Policy Institute,
Center for Litigation
1455 Pennsylvania Avenue NW
Suite 225
Washington, D.C. 20004
(703) 755-0944

*Attorney for Amicus Curiae*

CERTIFICATE OF COMPLIANCE AND VIRUS SCAN

I, Andrew Zimmitti, hereby certify as follows:

1. The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because the brief has been prepared in proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook font;

2. The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 29(b)(4), because it contains 2,536 words, excluding those parts of the brief excluded by Fed. R. App. R. 32(f), as calculated using the word count function on Microsoft Word software;

3. The text of the electronic and hard copies of this brief are identical; and

4. A virus scan was run on the electronic copy of this brief using Trend Micro OfficeScan and no viruses were detected.


Respectfully submitted this 6th day of June, 2025.

/s/ Andrew Zimmitti

_____

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, the foregoing brief was filed via CM/ECF. Service was accomplished on all parties or their counsel of record via CM/ECF.

Respectfully submitted this 6th day of June, 2025.

*/s/ Andrew Zimmitti*

_____